1                UNITED STATES DISTRICT COURT
                     DISTRICT OF NEVADA
2      BEFORE THE HONORABLE ROBERT C. JONES, SENIOR DISTRICT JUDGE
                        ---o0o---
3

4      MICHAEL ERWINE, an              :
       individual,                     :
5                                      :
                   Plaintiff,          :  No. 3:18-cv-461-RCJ-WGC
6                                      :
              -vs-                     :  May 14, 2019
7                                      :
       CHURCHILL COUNTY, a             :  Reno, Nevada
8      political subdivision of        :
       the State of Nevada; et         :
9      al.,                            :
                                       :
10                 Defendants.         :
       _____     :
11

12

13                TRANSCRIPT OF MOTION HEARING

14     APPEARANCES:

15     FOR THE PLAINTIFF:         LUKE ANDREW BUSBY
                                  Attorney at Law
16                                Reno, Nevada

17

18     FOR THE DEFENDANTS:        KATHERINE F. Parks
                                  Attorney at Law
19                                Reno, Nevada

20

21

22     Reported by:              Margaret E. Griener, CCR #3, FCRR
                                  Official Reporter
23                                400 South Virginia Street
                                  Reno, Nevada 89501
24

25

1              RENO, NEVADA, TUESDAY, MAY 14, 2019, 1:50 P.M.

2                            ---o0o---

3

4              THE COURT:  Our last item is Erwin versus

5    Churchill County.  Thank you, counsel.

6              Your appearances, please.  For plaintiff?

7              MR. BUSBY:  Good afternoon, your Honor.  Luke

8    Busby appearing on behalf of plaintiff Michael Erwine who is

9    with me in the courtroom today.

10             MS. PARKS:  And good afternoon, your Honor.

11   Katherine Parks on behalf of Churchill County.

12             THE COURT:  Thank you.

13             This is motion to enforce and motion for leave

14   and to unseal.  I'll let you add additional comments.  I've

15   reviewed your briefs.  Please.

16             MS. PARKS:  Thank you, your Honor.  Katherine

17   Parks on behalf of Churchill County.

18             Judge, I'm not sure there's too much more that I

19   can add other than what is in our brief.

20             THE COURT:  Okay.

21             MS. PARKS:  The Court has seen the briefs.  The

22   Court has clearly seen the transcript of the ENE, and it's the

23   position of the county that the settlement was reached at the

24   ENE, and that that settlement is enforceable, and that the

25   only condition to the settlement was Churchill County's

1   agreement to remove certain documents from Mr. Erwine's

2   personnel file and that we have done so.

3             THE COURT:  He listed them, you've agreed.

4             MS. PARKS:  Right.  Every one, in fact, and that

5   was something that Mr. Erwine's former counsel stated on the

6   record before Judge Carry in April at a status conference we

7   had.

8             THE COURT:  Okay.

9             MS. PARKS:  So that's the position of the

10  county.  And we're good to go, we're ready to move forward

11  with the settlement that we believe is binding.

12            THE COURT:  Thank you.

13            MR. BUSBY:  Thank you, your Honor.

14            As a preliminary matter, I will be asking to

15  show some documents that were filed under seal and have not

16  yet been unsealed by the Court.  We did file a motion to

17  unseal the entire proceeding, and if the Court so grants we

18  can just show everything.

19            THE COURT:  Not yet.

20            I want you to tell me what you're talking about

21  and why that would alter what I perceive, too, to be reaching

22  of a settlement in front of a judge who approved.

23            MR. BUSBY:  Your Honor, I would like to show you

24  some terms in the mutual release of all claims, and because of

25  this proceeding, insofar as it's open to the public, this

1    document was filed under seal, and it hasn't been unsealed, so

2    I wanted to bring that to the Court's attention before I

3    showed it to everybody in open court.

4                    THE COURT:  Does the County object?

5                    MS. PARKS:  I'm not sure what we're talking

6    about.

7                    THE COURT:  I'm not sure either.  I don't know

8    what he's talking about.

9                    MR. BUSBY:  Your Honor, I have a copy here of

10   the mutual release of all claims.

11                   This document was filed confidentially under

12   seal by the County in its motion, and I'd like to address some

13   terms in this document for the Court today, but we're in open

14   proceedings today so I wanted to seek leave from the Court do

15   that, to unseal this before I showed it to you on the record

16   today.

17                   THE COURT:  You're not going to present it as an

18   exhibit, right?

19                   MR. BUSBY:  No, I just wanted to point out some

20   terms --

21                   THE COURT:  Sealed documents -- I'm the judge,

22   I'm certainly able to review sealed documents.

23                   MR. BUSBY:  Indeed, your Honor.

24                   THE COURT:  So you're not going to submit it as

25   an exhibit.

1                    Any objection to him referring to items or

2      matters within that sealed document?

3                    MS. PARKS:  None at all, thank you.

4                    THE COURT:  You may do so.

5                    MR. BUSBY:  Thank you, your Honor.

6                    I'd like to go through four basic points to

7      explain our position here today, your Honor.

8                    Number one --

9                    THE COURT:  What is your position?

10                   MR. BUSBY:  Our position is that there was a

11     potential compromise reached at the ENE, but it was

12     nonbinding, and I can explain that position thoroughly, your

13     Honor.

14                   At the hearing several specific terms were

15     agreed to, but two specific items were left out, number one,

16     what documents to be removed from Mr. Erwine's employment

17     file, and number two, the obligations under NRS 239B.020, and

18     that's really the sticking point as to why my client doesn't

19     want to enter into what was described to him as a nonbinding

20     settlement agreement at the ENE.

21                   Now --

22                   THE COURT:  Is there anyplace you can point to

23     in the transcript where the judge said this isn't binding?

24                   MR. BUSBY:  Oh, absolutely, your Honor.

25                   In our motion, if I may, I think the word

1   nonbinding was mentioned four times in total.

2                THE COURT:  Why didn't she ask for the agreement

3   of your client and of yourself?  Why did she ask for consent

4   to the agreement?

5                MR. BUSBY:  Because there were several terms,

6   underlying terms, that were agreed to, but the -- the

7   agreement was that the nonbinding terms as of today as it was

8   described by the Court would be brought back once the

9   documents were agreed on and what the obligations were under

10  this particular statute were agreed on as well, and that's at

11  the transcript at page 4, line 16.

12               THE COURT:  What does it say?

13               MR. BUSBY:  And at page 3, line 19.  It was

14  specifically stated at the outset that the agreement was

15  nonbinding as of today.

16               THE COURT:  What does the transcript say?  Not

17  what you say, what does the transcript say?

18               MR. BUSBY:  Your Honor, may I pull up the

19  transcript?

20               THE COURT:  Sure.

21               MR. BUSBY:  We did attach the transcript as

22  Exhibit 1 to the -- our response in opposition to the

23  defendant's motion, and at page 3, line 16, the Court

24  states -- this is at the outset of the recitation of the terms

25  of the agreement after the ENE.

7

1          "Good afternoon, everyone.  We're back on the

2     record having concluded our early neutral evaluation,

3     and I'm happy to report that we do have a settlement

4     which will be nonbinding as of today, and we will be

5     putting those material terms on the record."

6          And so my client, when he heard that, this is

7 going to be nonbinding today, I've got -- there's some things

8 I need to consider as to whether, you know, entering into this

9 agreement is appropriate.

10          He did consider those things, and based on the

11 contents of the statute at issue and the terms of the

12 settlement, the mutual release of all claims as proposed by

13 the County, at the end of the day my client's problem, the

14 reason why he brought the lawsuit isn't resolved by the

15 settlement.

16          I'll be glad to explain that, but --

17          THE COURT:  Churchill's counsel will be

18 prepared, please, to cite other parts of the transcript that

19 tell me that it was final.

20          MR. BUSBY:  Thank you, your Honor.

21          If I may, I'd like to present to the Court a

22 copy of the statute at issue, and I just want to highlight

23 some provisions.

24          (Discussion held off the record.)

25          MR. BUSBY:  Continuing on, your Honor, this is a

1    copy of Nevada Revised Statute 239B.020, and what the statute

2    deals with is what a public safety agency is, which is a law

3    enforcement agency, is required to disclose in response to a

4    request for information about a previous employee.

5              And the rationale behind the statute is

6    self-evident.  Law enforcement agencies need to know with a

7    reasonable degree of certainty the background of the people

8    they're considering hiring.

9              And the statute explicitly states that upon

10   request, the agency shall provide information, including

11   information under sub 2 which states the information that a

12   public agency may request pursuant to subsection 1 includes,

13   and if we turn to the applicable provisions here under G and

14   H, a statement regarding whether the employer would rehire the

15   applicant, and, if the employer would not rehire the

16   applicant, the reasons therefor, and, if applicable, a record

17   setting forth the reason the employment of the applicant was

18   terminated and whether the termination was voluntary or

19   involuntary.

20             Now, our reading of this statute is that this is

21   an affirmative duty that's placed on a law enforcement agency

22   when it receives a request for information.  Therefore, in

23   response to such a request, a public safety agency such as the

24   Churchill County sheriff's office is required by the law to

25   produce this information.

1        And it doesn't say what form it has to be

2   produced in, it just says they have to tell them why, why the

3   guy doesn't work here any more and whether you would rehire

4   him and what caused him not to work there any more.

5        Now, the mutual release does attempt to address

6   this issue by inserting specific provisions stating what

7   Churchill County would say in response to certain kinds of

8   requests for information from other law enforcement agencies,

9   but on page 4 of 6 it does state that all the terms in this

10  agreement are subject to other requirements under law or by

11  legal process.

12       Now, Churchill County can't waive its statutory

13  obligation to reveal information about a former employee by

14  signing a settlement agreement.  It can't change the terms of

15  the statute under a settlement agreement.  That's the primary

16  issue that Mr. Erwine has with this, but there are --

17            THE COURT:  It can if I order them to.

18            MR. BUSBY:  Um --

19            THE COURT:  I can order them, in compliance with

20  a case filed in this court, and for reasons -- for purposes of

21  settlement I can order them to -- I can order them to jump

22  through hoops.

23            MR. BUSBY:  Your Honor, that brings up the

24  second problem that we have with this agreement which is, when

25  you apply for a law enforcement position in the state of

1    Nevada, you sign something that looks like this, and this is

2    attached to our complaint as Exhibit 8.  It's a document --

3    document 1-8 in the court's record, and this is not

4    confidential, this is filed publicly.

5              And whenever you apply for a law enforcement

6    position, you have to sign one of these, and what this says is

7    that we're going to do an investigation of your background,

8    and you waive any right you have to discover any of the

9    information that we obtain in the course of that

10   investigation.

11             So Mr. Erwine can't really ask the question,

12   okay, well, why didn't you hire me in the circumstance, why

13   did my background cause you to make the decision not to hire

14   me.

15             And at the end of the day after the application

16   process is complete, what you receive is something that looks

17   like this, and this is document number 1-13 in the court's

18   record attached to our complaint as well.

19             This is a rejection letter that Mr. Erwine

20   received from the North Las Vegas Police Department, and it is

21   a letter to Mr. Erwine, and it cites why -- basically vaguely

22   why they rejected him, and they say here character issues.

23             Well, Mr. Erwine is quite convinced that the

24   character issues that they're describing in this letter relate

25   to what happened to him at Churchill County, but he can never

1    discover whether that's the case or not because of the waiver

2    he's required to sign when he applies for these jobs.

3            So Mr. Erwine enters into this agreement.  He

4    applies for another law enforcement position.  He signs a

5    waiver because he's required to do it as a prerequisite to

6    applying.  He gets a rejection letter from the other

7    department in the state, and they cite issues that he's

8    convinced have something to do with Churchill County, but

9    because he's required to sign the waiver, he can never

10   determine whether that's the case or not.

11           Therefore -- and that's why I think in the ENE

12   the door was left open for Mr. Erwine to explore the

13   obligations under the statute.  That's the term that was used

14   by the Court in describing --

15           THE COURT:  You may not be able to discover from

16   North Las Vegas Police Department, but surely, under your case

17   heading, in your settlement and a final order of dismissal,

18   you can make that discovery in this case, can you not?

19           MR. BUSBY:  As long as the case --

20           THE COURT:  Did you violate our settlement

21   agreement.

22           MR. BUSBY:  As long as the case is open, your

23   Honor, but by other terms in the settlement, he's waiving all

24   past and future claims.  So he could -- he would not --

25   there's no way in any possible universe that he could discover

1   whether Churchill County was actually abiding by the terms of

2   the settlement.

3               THE COURT:  I don't understand your answer to

4   that.  Even if the case is closed, he can move to reopen it

5   for failure of Churchill County to comply with the settlement.

6               MR. BUSBY:  He'd never have grounds, your Honor,

7   because he would have to -- in order to do that, make an

8   affirmative showing of some fact, not just a rejection letter

9   from another department, of some fact that indicates that the

10  information from that department came from Churchill County,

11  and because of the waiver he's required to sign when

12  applying --

13              THE COURT:  Can't he discover and submit to

14  Churchill County "give me any and all referrals or references

15  or responses to references requests that you have made," and,

16  in particular, to the North Las Vegas Police Department?

17              MR. BUSBY:  I think in order to do that, your

18  Honor, we'd have to have some basis for asserting a breach of

19  the settlement agreement itself.

20              THE COURT:  I would say so, too, but here's a

21  rejection letter.

22              MR. BUSBY:  I don't believe that would be

23  sufficient, your Honor, and --

24              THE COURT:  Why don't you ask me if it's

25  sufficient.

1           MR. BUSBY:  I would envision bringing something

2    like a breach of contract claim in the future, your Honor.

3           THE COURT:  Right.

4           MR. BUSBY:  It would be something similar to a

5    breach of settlement claim in the future.

6           THE COURT:  Right.

7           MR. BUSBY:  That's what he would be required to

8    bring.  And when I put myself in the position of actually

9    filing that, and filing something that would pass Rule 12

10   muster, I would have to make -- and Rule 8 muster, Federal

11   Rule of Civil Procedure 12 and 8, I would have to make some

12   kind of affirmative showing of an actual breach by Churchill

13   County of the settlement agreement.  But it would be

14   impossible for me to make that, your Honor, because I would

15   never have a fact tying something like this to Churchill

16   County, or I'm left in a position --

17          THE COURT:  You know, what strikes me, sir, is

18   that you reached a settlement in front of the magistrate judge

19   on the record, we got consent of all parties, and now your

20   client wants something more.

21          He wants an admission from Churchill that they

22   terminated him for illegal reasons, and that's what you're

23   searching for so that you get a court judgment that that --

24   that it's illegal.

25          You reached a settlement, you listed the

-14-

1    documents you wanted deleted, they agreed.  The only other

2    issue, as you said, was compliance with the Nevada statutes,

3    but you get that if you get a judgment of the Court, even if

4    the settlement isn't incorporated into the judgment.  As long

5    as the order confirms the judgment, the settlement, you've got

6    grounds to reopen the case and say they haven't complied

7    either under contempt or breach of contract.

8                    So I'm not quite sure I understand what you're

9    really asking me for.  You just don't want enforcement, and

10   what I'm leaning towards is because you don't like the

11   settlement you reached, you want more money or you want

12   admission by Churchill County that they were in the wrong --

13                    MR. BUSBY:  Well, at the end of the day, your

14   Honor, vindication is what my client is ultimately after in

15   this case, and, if I may, your Honor, vindication is an

16   acknowledgment that he didn't do anything wrong when he worked

17   for Churchill County, and what he was accused of doing is not

18   the truth, and that has interfered --

19                    THE COURT:  Is that what he demanded in the

20   settlement discussion before Judge Carry?

21                    MR. BUSBY:  Your Honor, unfortunately, I

22   wasn't --

23                    THE COURT:  "I want vindication, I want

24   acknowledgment that Churchill County was in the wrong," did he

25   demand that?

1          MR. BUSBY:  I believe so, your Honor, but this
2    statute doesn't permit --
3          THE COURT:  Why did Judge Carry conclude the
4    settlement, the ENE then?  Why didn't they keep going on with
5    the ENE and asking against Churchill, "Can you give that"?
6          MR. BUSBY:  Well, I believe the way it was left
7    was there were some material terms that were agreed to.
8          THE COURT:  "We're coming back for another ENE"?
9          MR. BUSBY:  That's possible, your Honor, but --
10          THE COURT:  No, no.  Is that what Judge Carry
11    said, "You can come back for another ENE"?
12          MR. BUSBY:  The way Judge Carry framed it was
13    there was supposed to be a negotiation between parties to take
14    place within 30 days.
15          THE COURT:  Outside her presence.
16          MR. BUSBY:  Yes, your Honor.
17          And there was supposed to be a status report
18    filed within 14 days of that expiration of that 30-day period
19    indicating what was going on, but that was never filed, and --
20          THE COURT:  Okay.  Let me let you finish.
21          MR. BUSBY:  That was before I appeared in the
22    case.
23          But the problem is the terms of the agreement
24    itself also give Churchill County adequate wiggle room to
25    state orally, in compliance with the statute, what really

1    happened with Mr. Erwine at Churchill County, and there's no

2    way he could ever discover or affirmatively show a Court that

3    that had actually occurred because of the waiver he was

4    required to sign when applying for employment, which I believe

5    is why the settlement was nonbinding.

6         He needed to look into this and think about it,

7    and when he reviewed the terms of the proposed settlement

8    agreement and reviewed the statute and consulted with counsel,

9    yeah, there's some issues with this that aren't going to solve

10   the problem in the case.  That's why, in his mind, and the

11   plain language of the Court, the agreement at the ENE is

12   nonbinding.

13        Just addressing the two major cases on point,

14   the *Pamplin* is a conditional settlement case, you know, if you

15   pay me $10, we'll settle the case.  The $10 is paid, the guy

16   refuses to settle the case.  That's pretty open and shut.

17   That's not what's going on here.

18        This wasn't just a condition, this was further

19   negotiations and determinations to be made in these two

20   categories what documents were to be provided and obligations

21   under the statute.

22        The *Doi* case basically just stands for the

23   proposition that a complete settlement that's entered into the

24   record orally by the Court is binding on the parties.  That's

25   not what happened here.  If the Court says multiple times on

—17—

1    the record that the settlement is nonbinding, it can't be

2    complete.

3              With that, your Honor, I'd glad to answer any

4    questions you may have.  Thank you for your time.

5              THE COURT:  Thank you.

6              Please, from the County, be sure to cite to me

7    portions of the transcript that suggest this is final and not

8    just simply a nonbinding --

9              MS. PARKS:  Absolutely, your Honor.

10             And I would say, too, before I move on from

11   counsel's argument, in fact, the *Pamplin* decision that we

12   cited in our brief, and it's attached as an exhibit, is

13   exactly on point.

14             If you look at the transcript of the post ENE

15   proceedings, and specifically at page 5, Judge Carry goes into

16   a discussion about what the terms of the settlement were to

17   be, and she says the following:

18             "And in this particular case, as I stated,

19        this is a nonbinding settlement that is contingent on

20        the following, that your attorneys, Mr. Guinasso and

21        Ms. Parks, will meet within the next 30 days to

22        determine which records shall be scrubbed or removed

23        from your employment record and to discuss the

24        specific obligations for the information that can be

25        provided pursuant to NRS 239B.202.  Do you understand

1     that, sir?

2              "MR. ERWINE:  Yes.

3              "And that if they are unable to agree on any

4     of those particular conditions or documents, that

5     your attorney, as well as Ms. Parks, will file a

6     joint status report under seal with the Court within

7     14 days of that particular meeting, and, together

8     with that document, they will also file under seal

9     any disputed documents to be presented to the Court.

10    Do you understand that?"

11             "Yes.

12             "From that point the Court will then hold a

13    hearing to determine whether or not the parties can

14    reach agreement on the disputed documents.  Do you

15    understand that?

16             "MR. ERWINE:  Yes.

17             "And, finally, if the parties and the Court

18    are not able to agree, and the parties reach an

19    impasse as to those particular documents that can and

20    should be removed, or any of the requirements under

21    the statute, that you will have the right, as will

22    the defendant have the right, to withdraw from this

23    settlement.  Do you understand that, sir?"

24             And the Court goes on to set forth additional

25    material terms that were agreed upon by all of the parties and

1    in open court.

2              So the only thing that was -- that made that

3    settlement nonbinding on that particular day, your Honor, was

4    the fact that there had to be an agreement over the documents

5    to be removed, and there was no dispute.

6              Churchill County received a copy of the

7    documents from prior counsel, "These are the ones we want

8    scrubbed from the file," and we said, "Fine."

9              We provided a release of all claims that the

10   Court I know has had an opportunity to review in draft form

11   and said, "Here's the mutual release."

12             As I stand here, I believe that the mutual

13   release complies with all of the material terms that were

14   reached at the ENE.  More to the point, your Honor, no one,

15   not Mr. Erwine nor either of his lawyers, has ever said, "We'd

16   like you to consider revisions to the mutual release of all

17   claims to say the following."

18             So this settlement was binding.  It was

19   contingent upon the happening of an event.  Churchill County

20   satisfied the condition when we said, "Absolutely, we'll

21   remove all of the documents requested from the file."

22             THE COURT:  So what is this dispute about,

23   please?  What -- I don't want you to tell me what you believe

24   occurred, but what do you believe plaintiff contends occurred

25   constituting an unlawful termination, and what he wants

1    excluded, and whether or not Churchill County has bound itself

2    to not disclose such?

3                    MS. PARKS:  Well, and I think, your Honor, if

4    I'm -- if I'm --

5                    THE COURT:  The settlement provided for

6    $10,000 --

7                    MS. PARKS:  Correct.

8                    THE COURT:  -- from Churchill to plaintiff,

9    right?

10                   MS. PARKS:  That's correct.

11                   THE COURT:  And, of course, certain

12   nondisclosures and scrubbing records.

13                   MS. PARKS:  That's absolutely correct, your

14   Honor.

15                   What came up during the ENE with respect to

16   Chapter 239B.020 is the fact, as pointed out by counsel, that

17   there is a statute that says if an employer such as Churchill

18   County receives a request from a law enforcement agency about

19   the background of a candidate, what the statute actually says

20   in paragraph 1, which I think is very applicable here, it

21   says,

22                   "Upon the request of a public safety agency,

23        an employer shall provide to the public service

24        agency" -- public safety agency, excuse me --

25        "information if available about an employee on

1          subject matters A through G."  Excuse me, A through

2          H.

3                    In this case, Churchill County agreed to the

4          removal of every document requested by Mr. Erwine from his

5          personnel file.

6                    We also agreed on each and every way Churchill

7          County would respond to subsection 2 of that statute and the

8          information that would be provided to a prospective employer.

9                    THE COURT:  Delineate that a little bit.  Give

10         me an example of a document or harmful document that was to be

11         scrubbed, and, number two, most importantly, tell me what

12         Churchill County committed themselves to by way of

13         nondisclosure.

14                   MS. PARKS:  Absolutely.  The documents that were

15         primarily in dispute, I believe, your Honor, although no

16         discovery was done when we did the ENE, are documents of this

17         nature.  Mr. Erwine had notes, Mr. Erwine had -- there were

18         documents in the file about Mr. Erwine conducting a

19         semi-investigation of alleged wrongful conduct on the part of

20         his fellow deputies, there were some documents in the file

21         that related to that.

22                   There was a memorandum in the file that related

23         to his termination.  He was allowed to voluntarily resign so

24         there was a memorandum in the file about what led to his

25         separation from employment.

1               Those documents were removed.  Those documents

2    will no longer exist.  They won't exist to share with

3    prospective law enforcement employers, and they will not be

4    there.

5               So what -- in fact, Churchill County is

6    committing itself to be very, very careful and putting itself

7    out there to comply with this statute while entering into this

8    settlement agreement.

9               There is not going to be negative information

10   that remains in Mr. Erwine's personnel file to ever be shared

11   with a prospective employer.

12              THE COURT:  You committed yourself in the

13   agreement to not disclose that to another agency.

14              MS. PARKS:  That is correct.

15              THE COURT:  And how and where?

16              MS. PARKS:  Your Honor, that entire section is

17   addressed at the very bottom of page 1 and the top of page 2

18   of the mutual release of all claims where it indicates that

19   Churchill County would give a neutral recommendation to a

20   prospective employer that would include the date on which

21   employment began, the date on which it ended, compensation,

22   and these terms are what is required by the statute to be

23   provided, a list of the compensation Mr. Erwine was provided,

24   a copy of Mr. Erwine's application for employment which

25   Mr. Erwine submitted to the county and did not request be

1   removed.

2                   THE COURT:  Are you allowed to provide an answer

3   to the question whether he was terminated or resigned?

4                   MS. PARKS:  Well, what we intend to say is

5   addressed there, and what we -- at the top of page 3, in the

6   event a public safety agency requests information concerning

7   the reason why Mr. Erwine was terminated, the county will

8   advise that Mr. Erwine's termination from employment was

9   voluntary.  That is what will be said, and that is all.

10                  THE COURT:  And you believe you're committed to

11  that.

12                  MS. PARKS:  Absolutely, absolutely.

13                  THE COURT:  And do you acknowledge that he would

14  have the right to seek contempt or breach if you violated

15  that?

16                  MS. PARKS:  Absolutely.  I think if either party

17  were to violate any terms of this mutual release, litigation

18  could ensue, absolutely.

19                  You know, if there are specific problems with

20  respect to the mutual release language --

21                  THE COURT:  I need to ask counsel about that,

22  whether that satisfies him in light of your acknowledgment.

23                  MS. PARKS:  Right.

24                  THE COURT:  But, more importantly, answer my

25  first question -- well, I guess you've answered it.  You've

1      given me your answer as to whether Judge Carry said this is a

2      final settlement.

3                      MS. PARKS:  Absolutely.  And I didn't read the

4      entire transcript, your Honor, it's not long, but each and

5      every one of the terms of the agreement were gone over by

6      Judge Carry, not only with Mr. Erwine, but with my clients as

7      well, and --

8                      THE COURT:  But she said nonbinding.

9                      MS. PARKS:  She said nonbinding contingent upon

10     this event, and in the event the parties were unable to reach

11     an agreement about the documents --

12                     THE COURT:  They were supposed to come back.

13                     MS. PARKS:  -- we were supposed to come back.

14                     THE COURT:  And we didn't.

15                     MS. PARKS:  And we didn't.

16                     And with respect to the idea, you know, that the

17     parties were required to file some sort of status report that

18     didn't happen within 14 days, that's because as far as

19     Churchill County knew, there was never a disagreement.

20                     But one of the other things that I find

21     troubling about the fact that we are here talking about this

22     motion to enforce settlement, trying to answer questions

23     about, you know, what does Mr. Erwine really want here, also,

24     your Honor, is that last week Mr. Erwine, through his

25     attorney, filed a motion for leave to amend to add new claims

1  and a new party.

2            I filed a separate motion requesting additional

3  time to respond to that which I'd like to raise at some point,

4  but I think what's going on here is just Mr. Erwine has

5  changed counsel and changed his mind.

6            THE COURT:  Thank you.

7            Reply?  The first question, I guess, is doesn't

8  that satisfy you?

9            She's just acknowledged on the record that you

10  can bring contempt or breach actions if she violates, and

11  that's what she's committed to.  She will not, in light of the

12  statute and in light of the order, the final judgment order,

13  she's acknowledged and committed on behalf of the county that

14  you can bring an action if they violate.

15            MR. BUSBY:  And, your Honor, we certainly

16  appreciate that representation, but it reminds me of one of my

17  favorite sayings in the law, which is theory and practice are

18  the same in theory but not in practice.  It's a great

19  theoretical.

20            THE COURT:  But you're here, you practice,

21  you're here, you're in the real world, you're here.

22            MR. BUSBY:  We are, your Honor.

23            THE COURT:  In front of the person that would

24  impose contempt.

25            MR. BUSBY:  And we appreciate that, most

1    certainly, your Honor, and we appreciate the Court's power,

2    inherent power, to enforce agreements like this.

3              But we have to place ourselves in Mr. Erwine's

4    position in the future when he's stuck with another rejection

5    letter that says that he has, you know, essentially ethical

6    issues, and he has to, in order to bring a contempt action,

7    figure out if it was Churchill County that created the record

8    that led to that finding by another police agency.

9              And because of the structure of the statute --

10   it's an unusual statute, as you often find in the context of

11   the rules applying to employment of peace officers, is that it

12   doesn't allow him to do that.  There's no way he could have

13   the evidence in order to support a claim for such a finding by

14   the Court.  So he's kind of stuck in this *Catch 22* by virtue

15   of signing this agreement.

16             And another thing that really is problematic for

17   him is that the settlement agreement contains a provision that

18   says that if they're compelled by legal process to provide

19   answers, they can.  That undermines the whole premise that

20   they won't otherwise answer questions about him, and there's a

21   mutual nondisparagement agreement.

22             Now, the allegations in Mr. Erwine's complaint

23   are quite serious.  He was --

24             THE COURT:  It's a whistle blower complaint.

25             MR. BUSBY:  In essence, your Honor, yeah.

1              And after he was fired there were extremely

2      damaging materials inserted into his employment record that

3      have already been shared with at least eight other law

4      enforcement agencies, materials that he was never given a

5      chance to dispute or review before they were placed in his

6      file.

7              He only found out about them after he was

8      applying for these other jobs and kept receiving these

9      rejection notices with things like, hey, character issues?

10     What does that mean?

11             So the level of, you know, settlement agreement

12     not only by its terms requires a certain level of trust that

13     it's going to be followed through with, and if Mr. Erwine

14     doesn't have the means, the practical means, to enforce this

15     in the future, it's not worth anything to him.  It doesn't

16     solve his problem for bringing the suit.

17             On the record over and over again at the ENE it

18     was stated that the agreement was nonbinding.  A layperson

19     hearing that over and over again stated by a judge is going to

20     believe it's true.

21             The reasons for rejection are highly technical,

22     legal, they involve the interaction of the statute on

23     provisions of law related to the enforcement of settlement

24     agreements, the terms of the settlement agreement itself, and

25     when he had questions about it, they weren't satisfactorily

1    answered.

2                  But his concerns about this are quite

3    legitimate, and the Court --

4                  THE COURT:  Tell me what your position would be

5    in filing of a motion for contempt or a breach, a complaint

6    for breach, with respect to disclosures made by Churchill in

7    response to reference requests before the settlement was

8    reached?  What would be your position on a motion for

9    contempt?

10                  MR. BUSBY:  Well, our position --

11                  THE COURT:  In other words, if they sent

12   portions of the record to other employment agencies, police

13   agencies, what would be your position in the request for

14   contempt?  Do you have a remedy there?

15                  MR. BUSBY:  Well, that they violated the promise

16   in the mutual release that they would remove the materials

17   from his record and they wouldn't share disparaging

18   information about him.

19                  But there's no way he's ever going to know

20   whether that happened.  He doesn't have an open case in which

21   he can issue a subpoena to Churchill County.  He, by virtue of

22   applying for a job like this, has to sign a waiver that says

23   he can't get that information from these third-party law

24   enforcement agencies.

25                  And, in fact, during the course of this case I

1      think subpoenas have been issued to six or seven of them, and

2      there may be an issue we might be bringing before the Court,

3      but they have -- you know, it's going to be a lot of work.

4                     There's a lot of barriers there to seeking

5      disclosure of that information in the context of a law

6      enforcement agency, and there's perfectly good legislative

7      policy rationale for those being in place, and a law

8      enforcement agency needs to have really wide discretion, they

9      need to know who they're dealing with, but Mr. Erwine needs to

10     be able to defend himself as well, your Honor.

11                    THE COURT:  Okay.  I'll take it under

12     submission.  I'll issue an order forthwith.

13                    MR. BUSBY:  Thank you.

14                    MS. PARKS:  Your Honor, may I be heard on one

15     other issue?

16                    THE COURT:  What other issue?

17                    MS. PARKS:  As I indicated, last week counsel

18     filed a motion for leave to amend his complaint to add an

19     additional -- an additional party and additional causes of

20     action.  Our opposition or response to that motion would be

21     due tomorrow.

22                    Yesterday -- and I haven't had a chance to talk

23     with counsel about this, I filed a motion requesting an

24     extension of time for us to respond to that for a period of

25     14 days after the Court decides this pending motion.  I'd like

1    to save my clients the expense of having to respond to that

2    before the Court makes a decision on the motion.

3                    THE COURT:  Well, that motion goes to Judge

4    Carry, right?

5                    MS. PARKS:  Oh, I suppose.

6                    MR. BUSBY:  I believe it goes to Judge Cobb,

7    your Honor, but I'll represent --

8                    THE COURT:  Judge Cobb.

9                    MR. BUSBY:  I'll represent today, your Honor,

10   that we have no objection to stipulating to the request.

11                   THE COURT:  Okay.

12                   MS. PARKS:  Very good.  Thank you, counsel.

13                   THE COURT:  Thank you so much.

14                   The Court will issue an order, and thank you for

15   your attendance.

16                                 -oOo-

17

18            I certify that the foregoing is a correct
              transcript from the record of proceedings
19            in the above-entitled matter.

20            /s/Margaret E. Griener          7/16/2019
               Margaret E. Griener, CCR #3, FCRR
21             Official Reporter

22

23

24

25