```
Katherine F. Parks, Esq. - State Bar No. 6227
Ryan J. McElhinney, Esq. – State Bar No. 12039
Thorndal Armstrong Delk Balkenbush & Eisinger
6590 S. McCarran Blvd., Suite B
Reno, Nevada 89509
(775) 786-2882
kfp@thorndal.com
rjm@thorndal.com
Attorneys for Defendants
CHURCHILL COUNTY AND
BENJAMIN TROTTER
```

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL ERWINE,<br><br>                Plaintiff,<br><br>vs.<br><br>CHURCHILL COUNTY, a political subdivision of the State of Nevada; CHURCHILL COUNTY SHERIFF BENJAMIN TROTTER; and DOES 1 through 10 inclusive,<br><br>                Defendants. | CASE NO. 3:18-cv-00461-RCJ-WGC<br><br>**OPPOSITION TO PLAINTIFF'S MOTION FOR PRESUMPTION AND ADVERSE JURY INSTRUCTION DUE TO SPOILATION OF EVIDENCE, OR IN THE ALTERNATIVE, DISMISSAL AND DEFAULT JUDGMENT** |

    COME NOW Defendants, CHURCHILL COUNTY and BENJAMIN TROTTER, by and through their attorneys of record, Thorndal Armstrong Delk Balkenbush & Eisinger, and hereby file their opposition to Plaintiff's Motion for Presumption and Adverse Jury Instruction Due to the Spoilation of Evidence, or in the alternative, Dismissal and Default Judgment. This motion is made and based upon the Memorandum of Points and Authorities set forth below and all pleadings and papers on file herein.

///

///

///

I

## INTRODUCTION

On December 22, 2020, Plaintiff Michael Erwine filed a Motion for Presumption and Adverse Jury Instruction, the opposition to which is set forth herein.

II

## FACTUAL ISSUES

This lawsuit arises out of Plaintiff Michael Erwine's separation from employment with the Churchill County Sheriff's Office ("CCSO") as a probationary Sheriff's Deputy on October 10, 2016. In his motion for presumption and adverse jury instruction, Plaintiff contends that an allegedly defamatory memorandum was placed into his personnel file that was then shared with the Washoe County Sheriff's Department which prevented him from gaining employment with that, and other, law enforcement agencies.

The Plaintiff further asserts that he was witness to unconstitutional treatment of inmates by other employees of the CCSO and, at the time, chose to conduct his own unilateral investigation regarding this alleged treatment. Part of the Plaintiff's investigation was a review of surveillance footage of the graveyard shift's treatment of one particular inmate, Andrew Beaulieu. *See* Motion 4:18-27. The Plaintiff alleges that, upon review of the surveillance footage, Beaulieu had been denied water and was, therefore, being mistreated while housed in the security cell. Another incident involving an inmate named Michael Maes is also at issue in Plaintiff's Motion. The Plaintiff asserts that, while in the "cage" with inmate Maes, he found himself in an uncomfortable position between the inmate and the control panel, at which point he removed his taser from his holster and pointed it at the ground. He further states that he only removed the cartridge of the taser due to the inmate's close proximity to himself and another deputy. Motion 5:12-18. With respect to the Plaintiff's job performance, generally, former Churchill County Sheriff Ben Trotter had a counseling session with Erwine on or around October 7, 2016, during which Erwine stated his primary goal was to get through his probationary period which ended in December of 2016. *See* Trotter Memo attached to this Opposition as Exhibit 1. Sheriff Trotter responded by saying that there were three areas that

needed improvement with regard to Erwine's employment: demonstration of professional attitude and actions, hard work and being a team player. The memo also makes mention to some "friction" between Sergeant Sean Summers and Erwine, but also indicates Sheriff Trotter believed Erwine would get a "fresh start" under new supervisor, Sergeant Jesse Nuckolls. *Id.* Concerns about Erwine's job performance were also commented upon by former Churchill County Sheriff's Office Captain Michael Matheson, who stated in a memo dated August 11, 2016, that, "Deputy Erwine needs to focus on and master his duties and functions in the detention center before being distracted by other opportunities," and "I told Deputy Erwine that to this time he had earned a reputation with his co workers as an unmotivated and underperforming deputy . . . I strongly encouraged him to re focus and motivate himself to perform at a higher level." *See* Exhibit 3, Matheson Memo.

The memorandum returned in October 10, 2016, are reports from Deputy Thompson (attached to the Plaintiff's Motion as Exhibit 4), who witnessed the Beaulieu incident, and Sergeant Summers (attached to Plaintiff's Motion as Exhibit 5) to whom Deputy Thompson took his concerns about the way the Plaintiff handled the Beaulieu incident. Deputy Thompson's report makes reference to video footage that the Plaintiff had reviewed an action to which Sergeant Summers suggested Erwine had no authority to do.

Plaintiff does not attempt to establish in his Motion that he, or anyone at the CCSO or Churchill County, was on notice of a potential lawsuit involving his termination from employment as a probationary employee. Rather, Plaintiff argues that notice of potential litigation by Beaulieu and Maes inmates is relevant and somehow warrants sanctions against the Defendants. *See* Motion, 6:18-26. The Plaintiff's arguments in this regard lack merit and Plaintiff has no standing to support the same.

Plaintiff alleges that the video surveillance associated with these incidents should have been preserved because the CCSO was on notice of potential litigation involving these inmates, but fails to establish that Churchill County and/or CCSO were on notice of potential litigation involving Erwine. Despite his claim that the only rational explanation for the deletion of the videos was that they could be used as evidence, "against Churchill County in litigation,"

Sergeant Jesse Nuckolls whose job duties include IT, demonstrates that, as an automated function of the digital surveillance system, videos were deleted from the system every thirty (30) days and the drive overwritten by subsequent recordings. *See* Affidavit of Sergeant Jesse Nuckolls attached hereto as Exhibit 5. The Department also changed physical locations in December of 2017, and is currently utilizing a new detention facility security system. *Id.* The utilization of the new security system predated the Plaintiff's lawsuit by approximately ten (10) months but, as stated, the videos in question were automatically overwritten by the system thirty (30) days after recordation. *Id.* The Plaintiff's argument that the Defendants deliberately spoilated evidence to prevent it from being used against it in potential civil rights litigation does not support his request for sanctions. It is undisputed that neither of the inmates referred to in Plaintiff's Motion ever brought suit against Churchill County. Further, and more importantly, Plaintiff cannot use alleged notice on the part of the Defendant's possible litigation by others to support an award of sanctions in this lawsuit. *See Stanfill v. Talton*, 851 F. Supp. 2d 1346, 1365-66 (M.D. Ga. 2012).

## II

## LEGAL ANALYSIS

The inferences courts are permitted to draw from the loss or destruction of evidence are well settled. The adverse inference is based on two grounds, one evidentiary and one not. In the evidentiary context, where the contents of a document or, in this case, a surveillance video, are relevant to an emergent issue in litigation and the owner or controller of the video is on notice of potential litigation, the court may construe the non-production or destruction of said video as evidence that the party who lost or destroyed the video did so out of a fear that the contents of the video would harm him. *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991). The second prong of the analysis is punitive in nature and, "presumably deters parties from destroying relevant evidence before it can be introduced at trial." *Nation-Wide Check Corp. v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 217 (1st Cir. 1982). Sanctions may be imposed by the Court against a party who has destroyed or lost videos if that party was on notice that the video was relevant to potential litigation or was reasonably calculated to lead to the discovery

of admissible evidence. *Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984). However, as a threshold issue, the party alleging spoliation must first establish that the evidence was destroyed wrongfully and must also make a *de minimus* showing of relevancy. *See, Akiona*, 938 F.2d 158 at 161; *see also, Nichols v. State Farm Fare and Casualty Co.,* 6 P.3d 300, 304 (Alaska 2000).

### Notice and Duty to Preserve

In order to establish spoliation, one must first establish that a party had notice of potential litigation. *Leon v. IDX Sys. Corp.,* 464 F.3d 951, 958 (9th Cir. 2006). A party should only be penalized for destroying documents if it was wrong to do so and that requires, at a minimum, some notice that the documents are potentially relevant. *Akiona* 938 F.2d at 161. The inference depends on a showing that the party had notice that the documents were relevant . . . (indicating that this minimum link of relevance is required before deterrence rationale would justify shifting burden of proof). *Id.* The Plaintiff's argument is strained because the Defendants had no notice of the instant lawsuit at the time the videos were purged by the automated system. Indeed, the Plaintiff cannot prove a deliberate or negligent act by the Defendants as the deletion was the result of an automated process. The Plaintiff's motion puts the cart before the horse in so far as he assumes the prerequisite factors for spoliation (e.g. notice) are present here, which they are not. The Plaintiff was separated from the CCSO while he was still a probationary employee for a number of reasons, only one of which included his failure to follow the proper chain of command with regard to the Beaulieu incident. The Defendants had no notice of the instant lawsuit in October of 2016. In fact, the Plaintiff did not file his Complaint until September of 2018, nearly two years after his separation. Plaintiff's argument that the Defendants should be sanctioned in this case because they were on notice of the possibility of litigation by *some other* parties, who never in-fact filed suit against these Defendants, is without merit. Plaintiff asks this court to shift the duty allegedly owed to inmates Beaulieu and Maes to himself which is improper. In *Stanfill v. Talton*, 851 F. Supp. 2d 1346, the Plaintiff was the father of an inmate who died while in the custody of a county law enforcement agency. He argued therein that the law enforcement agency defendants owed *him*

a duty with regard to preservation of video evidence. The Court disagreed:

> The mere investigation into Stanfill's death, which apparently is routine procedure following an in-custody death, does not necessarily mean that Holt should have at that time anticipated litigation with the Plaintiff, nor does it mean that the Plaintiff can take advantage of the duty to preserve evidence, if there was one, Holt owed to the GBI (the agency investigating the incident). The Court is not aware of any decision by a court in this circuit adopting the "shifting duty" argument urged by the Plaintiff, and on the facts here, this Court declines the opportunity to be the first. *Stanfill v. Talton*, 851 F. Supp. 2d 1346, 1365–66 (M.D. Ga. 2012).

Comparable to the facts in *Akiona*, there is no indication in the record, or in the Plaintiff's Motion, which would suggest the Defendants destroyed any surveillance video with the intent of covering up information related, or relevant to, his separation from employment. CCSO had no notice of the instant lawsuit which would have triggered the duty to preserve the evidence. A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were potentially relevant to the litigation before they were destroyed. *Leon* 464 F.3d 951 959. The duty to preserve documents attaches when a party should have known that evidence may be relevant to future litigation. The future litigation must be "probable," which has been held to mean "more than a possibility." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1068 (N.D. Cal. 2006). The instant matter did not even rise to the level of a "possibility" in the mind of any party hereto at or near the time of Erwine's separation from the CCSO during his probationary period. Neither CCSO or Churchill county had actual or constructive notice of the instant lawsuit until it was filed on September 28, 2018, nor any other notice or knowledge which would have triggered a duty to preserve the video.

### Dismissal is an overly harsh remedy

As an alternative to adverse inferences and special jury instructions, the Plaintiff prays that this Court enter default judgment in his favor and dismiss the case. This is an extreme remedy reserved for only the most egregious of spoliation cases. Dismissal is a particularly severe sanction warranted only for outrageous destruction of evidence. *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060 at 1066. Dismissal is an available sanction when, "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial

- 6 -

proceedings because courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice. *Leon* 464 F.3d 951 at 958.

The facts in *Leon* are demonstrative of the type of spoliation that has been formed to warrant dismissal and such facts are not present here. In *Leon,* the Plaintiff was found to have willfully spoliated evidence on his laptop knowing he had a duty to preserve evidence therein. The plaintiff admitted he intended to destroy evidence, including pornographic files, subsequently running a wiping program on his laptop eliminating thousands of files and any remnants of the same. *Id.* at 959. Erwine does not present facts sufficient to establish a negligent destruction of evidence, much less willful destruction with the intent to deceive or otherwise mislead. As discussed above, the deletions were the result of an automated process in which surveillance video in the detention center was overwritten every 30 days. Because the Defendants were not on notice of potential litigation by Erwine, they had no duty to preserve this evidence. As such, Plaintiff's request that the Court dismiss the case and enter judgment against the Defendant's must be rejected.

**The Evidence at Issue is not Relevant to the Instant Lawsuit**

In addition, and importantly, the evidence Plaintiff contends was spoliated by the Defendants is not relevant to any legal issue set forth in Plaintiff's complaint. Plaintiff claims in this case that he was forced to resign from employment with the CCSO in a manner which violated his Fourteenth Amendment right to due process. More specifically, Plaintiff's primary contention in this case is that former Sheriff Ben Trotter violated his due process rights by failing to follow the mandates of Chapter 289 of the Nevada Revised Statutes, known as the Peace Officers Bill of Rights. Plaintiff further contends that his Fourteenth Amendment liberty interests were violated due to the placement of "stigmatizing information" in his personnel file in the form of the October 10, 2016, memorandum. Under this species of constitutional tort, a plaintiff must show: (1) that his or her government employer made stigmatizing statements that call into question the plaintiff's good name, reputation, honor or integrity; (2) that the stigmatizing statements were made public; and (3) that the stigmatizing statements were made

concurrently with, or in close temporal relationship to, the plaintiff's dismissal from governmental employment. See, *Cox v. Roskelley*, 359 F.3d 1105, 1112 (9th Cir. 2004).

Plaintiff's claim that the actions of the Defendants violated the Nevada Constitution is based upon the same arguments pertaining to Chapter 289 of the Nevada Revised Statutes as is his state tort claim for tortious discharge. Plaintiff's defamation claim is premised upon the argument that former Sheriff Trotter made false statements to the effect that Plaintiff "clearly violated" CCSO policy on use of force and "behavior standards."

The surveillance video in question in not relevant to the legal issue of whether the Plaintiff was given adequate procedural due process in connection with his separation from employment with the CCSO. Whether or not surveillance video pertaining to Mr. Beaulieu shows that he was, or was not, given water at an appropriate time by graveyard shift deputies of the CCSO is not relevant to the Plaintiff's claims. Mr. Trotter did not base his decision to separate Erwine from employment because the allegations regarding Mr. Beaulieu proved to be true or not true. Rather, the issue of concern to Mr. Trotter, as described in his memorandum, was the actions of the Plaintiff in taking it upon himself to investigate the incident before he reported the alleged mistreatment of Beaulieu to a superior officer. *See* Trotter Memo, attached to Plaintiff's Motion as Exhibit 1. While surveillance video pertaining to the Beaulieu incident would arguably have been relevant to a lawsuit filed against the CCSO by Mr. Beaulieu, it is not relevant to the Plaintiff's legal claims nor was the CCSO on notice to preserve this video as it relates to the Plaintiff's lawsuit. It is undisputed that Mr. Beaulieu never brought suit against Churchill County as it relates to anything that occurred at the Churchill County Sheriff's Office detention center in October of 2016. There are no facts whatsoever to support any contention that Churchill County failed to preserve video related to the Beaulieu incident due to a fear that the contents of the video would benefit Erwine in a civil lawsuit (which was filed on September 28, 2018, almost two years after Erwine's separation from employment with CCSO).

Nor should the Court entertain Plaintiff's request for an adverse presumption, let alone entry of default judgment against the Defendants, based upon the Maes video. As noted in Mr. Trotter's memorandum, after he received a call from Deputy Jabines regarding the Maes

incident, he requested that another deputy review surveillance video of the incident. *See* Trotter Memo, attached to Plaintiff's Motion as Exhibit 1. Thereafter, Deputy Mike Davis reviewed video footage and noted that it showed Erwine "light up his Taser," but did not show whether or not it was discharged. *Id.* Further investigation included having data downloaded from the taser itself which provided additional information, including that one of the tasers assigned to the jail was fired for one second at the time of the incident at issue. *Id.*

Here, the surveillance video, which did not show whether or not the taser had been fired by Erwine, is not relevant to the issue of whether the Plaintiff's due process rights were violated in connection with his termination. The Maes incident provided only one of the bases for the decision made by Mr. Trotter to terminate the Plaintiff's probationary employment. The Defendants were not, and should not have been, on notice that any surveillance video related to the Maes incident would be relevant to a lawsuit brought by Erwine. It is not relevant to whether or not Erwine was provided adequate due process in connection with his separation from employment. As is the case with the Beaulieu incident, Maes never filed suit against Churchill County, nor made a complaint of excessive force such as would have, triggered an obligation on the part of the County to have preserved such video depending upon when such a complaint had been made, which it was not. Moreover, the Plaintiff has the available testimony of both inmates Beaulieu and Maes as alternatives to the videos. When a proponent cannot produce original evidence of a fact because of the inadvertent loss of the evidence, proof by secondary evidence is permissible. *Med. Lab. Mgmt. Consultants v. Am. Broad. Companies, Inc.*, 306 F.3d 806, 825 (9th Cir. 2002); *see also* Fed.R.Evid. 1004(1). Accordingly, Plaintiff's motion seeking sanctions against the Defendants as related to this video must be denied.

///
///
///
///
///
///

## IV

## CONCLUSION

Based upon all the foregoing, the Defendant's respectfully request that the Plaintiff's motion be dismissed.

DATED this 15th day of January, 2021.

> THORNDAL ARMSTRONG
> DELK BALKENBUSH & EISINGER
>
> By: /s/ Ryan J. McElhinney
> Katherine F. Parks, Esq.
> State Bar No. 6227
> Ryan J. McElhinney, Esq.
> State Bar No. 12039
> 6590 S. McCarran Blvd., Suite B
> Reno, Nevada 89509
> (775) 786-2882
> kfp@thorndal.com
> rjm@thorndal.com
> Attorneys for Defendants
> Churchill County and
> Benjamin Trotter

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of THORNDAL ARMSTRONG DELK BALKENBUSH & EISINGER, and that on this date I caused the foregoing **OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF DEFENDANTS' EXPERT** to be served on all parties to this action by:

\_\_\_\_ placing an original or true copy thereof in a sealed, postage prepaid, envelope in the United States mail at Reno, Nevada.

✓ United States District Court, District of Nevada CM/ ECF (Electronic Case Filing)

\_\_\_\_ personal delivery

\_\_\_\_ facsimile (fax)

\_\_\_\_ Federal Express/UPS or other overnight delivery

fully addressed as follows:

**Luke Busby, Esq.**
**316 California Ave., #82**
**Reno, NV 89509**
*Attorney for Plaintiff*

DATED this 15th day of January, 2021.

*/s/ Jennifer Livermore*
An employee of THORNDAL ARMSTRONG DELK BALKENBUSH & EISINGER

- 11 -

## INDEX OF EXHIBITS

| EXHIBIT | DESCRIPTION | NO. OF PAGES |
|---|---|---|
| 1. | Trotter Memo | 1 |
| 2. | Affidavit of Ben Trotter in Support of Defendant's Opposition to Motion for Presumption and Adverse Jury Instruction Due to Spoilation of Evidence | 2 |
| 3. | Matheson Memo | 1 |
| 4. | Declaration of Michael Matheson in Support of Defendant's Opposition to Motion for Presumption and Adverse Jury Insrtuction Due to Spoilation of Evidence | 2 |
| 5. | Affidavit of Sergeant Jesse Nuckolls in Support of Defendant's Opposition to Motion for Presumption and Adverse Jury Instruction Due to Spoilation of Evidence | 2 |