```
1  LUKE A. BUSBY, ESQ
   Nevada Bar No. 10319
2  LUKE ANDREW BUSBY, LTD.
   316 California Ave. 82
3  Reno, Nevada 89509
   775-453-0112
4  luke@lukeandrewbusbyltd.com
   Attorney for the Plaintiff
5
```

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| MICHAEL ERWINE,<br><br>          Plaintiff,<br>vs.<br><br>CHURCHILL COUNTY, a political subdivision of the State of Nevada, CHURCHILL COUNTY SHERIFF BENJAMIN TROTTER, and DOES 1 through 10 inclusive;<br><br>          Defendants.<br>_____/ | Case No.: 3:18-cv-00461-RCJ WGC<br><br>**SECOND MOTION FOR PRESUMPTION AND ADVERSE JURY INSTRUCTION DUE TO SPOLIATION OF EVIDENCE, OR IN THE ALTERNATIVE, DISMISSAL AND DEFAULT JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED** |

COMES NOW, Plaintiff, MICHAEL ERWINE, by and through the undersigned counsel, and hereby respectfully moves that the Court presume that the lost and/or non disclosed information was unfavorable to the Defendants and give an adverse instruction to the Jury in this matter, or in the alternative, dismiss this matter and enter default judgment against CHURCHILL COUNTY and CHURCHILL COUNTY SHERIFF BENJAMIN TROTTER's (collectively, "Churchill County" or "Defendants") due to the spoliation of critical evidence. This is the second such Motion filed by the Plaintiff in this matter seeking sanctions for the destruction of and/or failure to disclose evidence in this matter. At the time of filing, the Plaintiff first motion (ECF #84) is pending before the Court.

1

This Motion is made and based upon all of the pleadings and records on file for these proceedings together with every exhibit that is mentioned herein or attached hereto (each of which is incorporated by this reference as though it were set forth hereat in haec verba), if any there be, as well as the points and authorities set forth directly hereinafter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Mr. Erwine is a former Deputy Sheriff for Churchill County. Between December 9, 2015 and October 10, 2016, Churchill County employed Erwine in the capacity of Detention Deputy at the County Jail. From the commencement of Erwine's employment with Churchill County, Erwine witnessed Churchill County sheriff's deputies blatantly disregarding basic Constitutional rights of inmates at the jail, and further disregarding the essential duties of a Detention Deputy. Erwine was constructively discharged contrary to law by Churchill County and Sheriff Trotter in response to his documentation of the misconduct of his fellow employees at the Churchill County Jail.

***Standard of Review***

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2nd Cir. 1999). The Court may sanction a party for spoliation of evidence under its inherent authority or Rule 37. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Federal courts apply federal law when addressing issues of spoliation of evidence. See *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (applying federal law when addressing spoliation in diversity litigation).

The Court has "inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Id.* at 1329. The adverse inference sanction seeks to deter a party who has notice of an item's relevance to litigation from destroying it. *Akiona v. United States*, 938 F.2d 158, 161

(9th Cir. 1991). The duty to preserve is triggered when a party reasonably should have known that the evidence is relevant to anticipated litigation. *In re Napster*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006). In the 9th Circuit, a finding of bad faith is not a prerequisite for an adverse inference instruction. *Glover*, 6 F.3d at 1329.

Pursuant to FRCP 37(e)(1), if electronically stored information that should have been preserved is lost because a party failed to take reasonable steps to preserve it the court, upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice.  If the Court finds that Churchill County acted with the intent to deprive "another party" of the information's use in the litigation, under FRCP 37(e)(2) the Court may: "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment."

**Facts**

Subsequent to Mr. Erwine's constructive discharge and unbeknownst to Mr. Erwine, Sheriff Trotter placed a defamatory memorandum in Mr. Erwine's file, dated October 10, 2016, which was subsequently distributed to at least one law enforcement agency in Nevada with whom Erwine had filed applications for employment.  *See* Exhibit 1.  The Defendants have admitted that Erwine was not shown the October 10, 2016 Memorandum before it was placed in his personnel file.  See Exhibit 2, Response to Request for Admission No. 8. Despite initially denying that the October 10, 2016 Memorandum was shared with any outside law enforcement agency See Doc. #71 at 9, the Defendants later admitted that the October 10, 2016 Memorandum was shared with the Washoe County Sheriff's Office. *Id.* at Response to Request for Admission No. 15. Erwine has filed claims against Churchill County and Sheriff Trotter herein for violation of his due process rights under the Nevada and US Constitutions, tortious discharge, defamation, defamation per se, and intentional interference with prospective employment.

In the Plaintiff's Declaration in Exhibit 3, the Plaintiff states that on October 8, 2016, he went into day shift and began checking cells. Erwine was informed that an inmate, Andrew Beaulieu ("Beaulieu") was in the security cell and needed to be booked. When Erwine arrived at Beaulieu's security cell he noticed blood on the walls and asked the grave shift deputy what the blood was from. The grave shift deputy informed Erwine that Beaulieu had come in with a cut on his hand and that it ripped open while in the cell. After investigating the circumstances, Erwine discovered Beaulieu had been requesting water for hours. Erwine was informed by the inmate and later confirmed during review of surveillance footage that every time Beaulieu would request water, the grave shift deputy would flush the drain in Beaulieu's cell making Beaulieu's request inaudible over the flushing noise. Erwine provided Beaulieu with water pursuant to his essential job functions to provide inmates with food and explained to Beaulieu what the rest of the booking process would look like. During this time, Beaulieu expressed to Erwine that the grave shift deputies were "assholes" and he would be filing a lawsuit against them. In accordance with Erwine's essential job functions, Erwine continued to conduct his rounds in the jail. While Erwine was conducting his rounds, other inmates asked Erwine what had happened to the "guy in the security cell" the previous night and explained what the grave shift did "was messed up." Inmate Zachary White even filed a grievance request to Captain Matheson regarding the treatment of Beaulieu. As previously stated, Erwine did go back and review surveillance footage of the grave shift's interaction with Beaulieu before he removed him for booking, mainly to be aware of any safety concerns with Beaulieu before removing him from the security cell. Erwine did not note any alarming actions by Beaulieu wherein Erwine would need to be concerned, however, he did note concerning inappropriate acts of the grave shift deputy that he believed needed to be brought to his sergeant's attention. Since the concerns were not an immediate threat, and the sergeant did not work on weekends, Erwine chose to log the events

on his computer, so he could follow up with his sergeant on Monday, October 10, 2016, when his sergeant returned to work.

In the Plaintiff's Declaration in Exhibit 3 the Plaintiff also states that on Sunday, October 9, 2016, during Erwine's dayshift, Deputy Jabines had dropped a container of miscellaneous tools and other items inside of a booking cage. Included in these items were screwdrivers and other sharp instruments. Deputy Jabines did not want to pick up the items herself so she asked an inmate to come into the booking cage and pick them up for her. Bringing in an inmate to pick up the sharp inmates created a dangerous situation for everyone involved. Erwine did not feel it was appropriate for Deputy Jabines to have an inmate, Matthew Maes, come into the booking cage to pick up items which could be easily used as weapons. Erwine questioned Deputy Jabines about this but her only response was "Senior Deputy" which Erwine understood as to mean he did not have a say in the matter.

When the Matthew Maes ("Maes") came into the cage, Erwine positioned himself between Maes and the control panel of the facility. Erwine was in an uncomfortable position with Maes being only a few feet away from Erwine and backed into a corner. Erwine removed his taser from its holster and held it in his hand with the taser pointed to the ground. Erwine chose to remove the cartridge from the taser due to the close proximity of inmate Maes to both Erwine and Deputy Jabines. Maes cleaned up the items and left the cage without incident.

Near the end of Erwine's shift on October 10, 2016, Erwine confronted by Captain Matheson and Sheriff Trotter. Sheriff Trotter informed Erwine that he was aware of the booking that took place over the weekend with Beaulieu and that Erwine's concerns were intentional to harm the Department. Erwine began to speak about the Beaulieu Incident as he had originally intended to do from the beginning of his shift that day, however, Erwine was not afforded any opportunity to explain what he had witnessed or discovered.  Instead, Trotter stated Erwine had two choices: 1) he could resign, or 2) the Department would terminate his employment effective immediately.

Either way, Erwine was informed his employment was not continuing after the current meeting he was present in. Erwine signed a Letter of Separation on October 10, 2016.

Also included in Mr. Erwine's personal file, unbeknownst to him, were statements from Churchill County Sheriff's Office employees Deputy Thompson and Sergeant Summers describing the Beaulieu incident (*See* Exhibits 4 and 5), and a statement from Deputy Jabines describing the Meas incident. *See* Exhibit 6. In the statements in Exhibits 4 and 5, express reference is made to the video of the Beaulieu incident. Sergeant Summers' statement in Exhibit 5 indicates that he believed that Beaulieu had spoken to Mr. Erwine about a lawsuit. Deputy Jabines' statement in Exhibit 6 also expressly mentions a "possible lawsuit" involving Maes against the Churchill County Sheriff's Office.

In the Plaintiff's Amended Complaint (Doc. # 63), Mr. Erwine made the following allegations related to Sammy Davis: During a separate occasion, an inmate, Samuel Davis, was transported to the jail by Officer Zamora of the Fallon Police Department. Sergeant Summers and Erwine met with Officer Zamora outside of her patrol car. When Sergeant Summers opened the door to the patrol car Mr. Davis began to shout obscenities at Summers. Sergeant Summers dragged the Mr. Davis out of the patrol car, grabbed him by his throat, and slammed him against the side of the car. Sergeant Summers held Mr. Davis by his throat and asked him about the comments he made. After booking Mr. Davis into jail Sergeant Summers told Erwine to write his use of force report for him and be sure to include that it was because of the inmate's "physically aggressive nature" that he used the force he did. A few days later, Sergeant Summers called Erwine into his office to discuss the Mr. Davis' booking. He also told Erwine to "watch out for that bitch" (referencing Officer Zamora of the Fallon Police Department) because she reported him for excessive force against the inmate. Just a few days later, Captain Matheson talked to Erwine about Sergeant Summers in relation to Mr. Davis' booking. Shortly after talking to Captain Matheson, Sergeant Summers yelled, "Did you rat me out?" while walking past Erwine in the hallway

Sheriff Trotter's Memorandum confirms that he was concerned about a civil action arising out of the Beaulieu and Maes incidents: "It is as if Erwine is siding with the inmate against his own agency or, possibly, encouraging civil action against his own agency." Exhibit 1 at 2. "This creates liability for this agency now or for some time into the future should Inmate Maes elect to pursue civil action." *Id.*

**The Plaintiff's Second Request for Production**

In the January 6, 2021 responses to the Plaintiff's December 1, 2020 Second Request for Production to the Defendants, attached hereto as Exhibit 7, the Defendants failed to produce several key pieces of evidence as described below:

> *REQUEST FOR PRODUCTION NO. 5:*
> *Please produce the investigative file for the allegations by Fallon Police Officer Jessica Zamora against St. Summers regarding the treatment of Samuel Davis.*
> *RESPONSE TO REQUEST FOR PRODUCTION NO. 5: Defendants object to Request for Production No. 5 on the grounds that it seeks documents which are neither relevant nor proportional to the needs of the present lawsuit. The alleged incident pertaining to Samuel Davis on or about July 16, 2016, has no relevance to whether or not Michael Erwine's separation from employment with the Churchill County Sheriff's Office on or about October 10, 2016, was in contravention of any right guaranteed to Plaintiff by the United States Constitution, Nevada Constitution, or other state or federal law. The alleged incident pertaining to Samuel Davis on or about July 16, 2016, is not referenced in the memorandum of October 10, 2016, authored by former Sheriff Benjamin Trotter and documents related to the alleged incident involving Samuel Davis have no tendency to make any fact as related to Plaintiffs separation from employment with Churchill County more or less probable than it would be without the evidence and facts pertaining to the alleged incident involving Samuel Davis is of no consequence in determining any legal matter at issue in this lawsuit. As such, documentation pertaining to this incident is not relevant under Federal Rule of Evidence 401. Defendants further object to Request for Production No. 5 on the grounds that it is duplicative of requests for production previously made by the Plaintiff and, specifically. Request for Production No. 9 as set forth in Plaintiffs First Set of Requests for Production of Documents to Defendants. Notwithstanding said objections, Defendants respond as follows: Defendants are not in possession of any documents responsive to Request for Production No. 5.*

Evidence involving the incident with Mr. Davis is relevant to Mr. Erwine's claims because it shows that Mr. Erwine had valid concerns regarding how inmates were treated at the Churchill County Jail – and that Mr. Erwine took steps to try and address issues involving maltreatment of inmates and was defamed and fired in violation of the law for doing so.  Evidence disclosed during the course of this case shows that documents responsive to Request for Production No. 5 are in, or were in, Churchill County's possession but were not disclosed or were destroyed.  At Sheriff Trotter's deposition in Exhibit 8 at page 104 line 4, Sheriff Trotter indicates that a "Fact Check" was conducted on the incident involving Mr. Davis. On line 13 of that same page Trotter goes into detail about the incident. The information would have been included in the investigatory file of the incident involving Mr. Davis. On page 38 line 23, Sheriff Trotter unequivocally stated that records are kept of alleged mistreatment of inmates at the Churchill County Jail:

> On Page 104 Line 2-4 of Sheriff Trotter's Deposition, he testified:
> Q:· Okay.· So was an investigation conducted of this complaint against Sergeant Summers
> A:· A fact check was, yes.
>
> On Page 104 Line 10-17 of Sheriff Trotter's Deposition, he testified:
> Q:· Okay.· Do you recall whether there were any findings or conclusions that were reached about how Sammy Davis was treated by Sergeant Summers?
> A:· Not the specifics.· Um, I do have an impression that it was found that it couldn't be verified what the noise was that she was hearing.· And that it could've been the seat belt, um, hitting the -- they had hard plastic seats in the back of their cars.· Um, I don't really know.· Uh —
>
> Page 30 Line 17-23 of Sheriff Trotter's Deposition, he testified:
> Q:· So it's -- an inmate claims he's mistreated at the jail.· The Churchill County Sheriff's Office keeps records so it can show that it complied with appli- -- applicable rules and regulations of how inmates are -- are supposed to be treated; is that right?
> A:· Yes.

Yet, in response to Request for Production No. 5, the Defendant maintain that they have no records of the incident involving Mr. Davis. In addition to the testimony of Sheriff Trotter, in response to a subpoena issued to the Fallon Police Department the Plaintiff also obtained and email from Officer Zamora, attached hereto as Exhibit 9, the Fallon Police Officer who reported Sergeant Summers for how Sergeant Summers handles the incident with Mr. Davis. Officer Zamora indicated that she saw Sergeant Summers grab Mr. Davis by the back of the neck and the throat.

The Plaintiff also disclosed a recording of Sergeant Summers made by Mr Erwine where Sergeant Summers can be heard threatening Mr. Erwine that he would "beat your ass" if he heard that Erwine relayed the conversation to others, and reporting that Officer Zamora "dimed me off" because of the way Sergeant Summers treated Mr. Davis. *See* Declaration of Michael Erwine at Exhibit 10 describing the incident with Mr. Davis and the associated recording of Sergeant Summers threatening Mr. Erwine over the incident involving Mr. Davis.

In Request for Production No. 7 to the Plaintiff's second set of requests for production in Exhibit 7, the Plaintiff sought the investigative file for the incident involving Mr. Beaulieu, which the Plaintiff's claim does not exist:

> REQUEST FOR PRODUCTION NO. 7:
> Please produce the investigative file for the October 8, 2016 incident at the Churchill County Jail involving Andrew Beaulieu.
> RESPONSE TO REQUEST FOR PRODUCTION NO. 7: Defendants object to Request for Production No. 7 on the grounds that it is overbroad and unduly burdensome and, specifically, because Request for Production No. 7 is duplicative of requests for production previously made by the Plaintiff and, specifically, Request for Production No. 11. Those documents in possession of the Defendants as related to Inmate Andrew Beaulieu have been produced by Defendants in accordance with FRCP 26 and specifically include those documents bate-stamp numbered DEF00147-DEF00155.

Again, at Sheriff Trotter's deposition in Exhibit 8, Sheriff Trotter made clear that an investigation into the incident occurred and that records of that investigation exist (or existed):

9

On page 36 lines 3-10, Sheriff Trotter stated:
Q: Okay. Did you ever conduct an investigation as to what happened with Mr. Beaulieu on, you know, October 8th, 2016 at the jail?
A: We did verify or verified the facts and the information on the next exhibit, um, about checking the, uh, inmate. Well, not the next exhibit. It was Exhibit 9. Um, I did not do that. But yes, um, the inf- -- the allegations were looked into.

On page 38 lines 17-23, Sheriff Trotter stated:
Q: So it's -- an inmate claims he's mistreated at the jail. The Churchill County Sheriff's Office keeps records so it can show that it complied with appli- -- applicable rules and regulations of how inmates are -- are supposed to be treated; is that right?
A: Yes.

On page 83 beginning at line 21, Sheriff Trotter stated:
Q: Okay. So did you conduct an investigation of what happened with Mr. Beaulieu?
A: I did not conduct an investigation.
Q: Did anyone else at the sheriff's office conduct an investigation, to your knowledge?
A: Captain Matheson would have been the one to conduct that investigation.
Q: Okay. So do you -- are you aware of whether he conducted that investigation?
A: I am -- I believe, I remember, but I would have to just guess that I got information back that it had been done. And I don't know what that information was.

On page 85 lines 3-9, Sheriff Trotter stated:
Q: Oh, I'm sorry. In this document you're saying that an investigation of what occurred with Mr. Beaulieu would take place?
A: Yes.
Q: Did you order Matheson to conduct such an investigation?
A: Quite certain I did.

On page 90 lines 3-9, Sheriff Trotter stated:
Q: Okay. How about for Mr. Beaulieu? Were you -- well, were you concerned about potential liability for the agency and that Mr. Beaulieu might elect to pursue civil action?
A: After the, um, investigation into what actually occurred, I was not concerned about the civil liability but that you could still face civil action whether you end up liable or not.

///

**The Plaintiff's First Request for Production**

In addition to the failure to preserve and/or disclose the information described above, the Defendants have also failed to disclose Mr. Erwine's nine-month employee evaluation. In Request for Production No. 14 in the Plaintiff's First Requests for production attached hereto as Exhibit 11, the Plaintiff requested a copy of his nine-month employee evaluation:

> REQUEST FOR PRODUCTION NO. 14:
> Please produce Mr. Erwine's nine-month employee evaluation required to be conducted by Churchill County Sheriff's Office Policy Administration policy 1.200 (ERW101).
> RESPONSE TO REQUEST FOR PRODUCTION NO. 14: Defendants object to Request for Production No. 14 on the grounds that it is argumentative and makes an incorrect assumption of fact. Defendants further object to Request No. 14 on the grounds that it seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence nor proportional to the issues presented in this case. Notwithstanding said objections, Defendants respond as follows: All employee evaluations of Plaintiff have been produced by Defendants in connection with their FRCP 26 disclosure of documents and are contained within Plaintiff's personnel file.

According to the Declaration of Mr. Erwine in Exhibit 10, Mr. Erwine's nine-month evaluation was completed, was signed by his supervisor Sergeant Nuckolls, but was never returned to him. Further, according to Mr. Erwine, the missing nine-month evaluation contained a favorable rating of his performance. Attached hereto as Exhibit 12 is Churchill County's Administration Policy, which clearly indicates in Policy 1.200 "Performance Evaluations" that, "New Hire Probationary Employees: Shall be evaluated in the third and ninth month of their probation." Mr. Erwine's employment with Churchill County began on December 9, 2015 and he was terminated in October of 2016. As such, per the policy, his employment evaluation was in fact conducted in September of 2016, a few weeks before his employment was terminated by Sheriff Trotter in October 10, 2016. At Sheriff Trotter's Deposition, Sheriff Trotter testified that when an employee left the Sheriff's Office, he would make

an electronic copy of an employee's personal file and send the hard copy to the human resources at Churchill County. See Exhibit 8 at page 24 beginning at 3. As such, Mr. Erwine's nine-month employee evaluation should have been preserved in either the paper copy of his file at Churchill County's human resources department or in electronic format at the Sheriff's Office.

**Argument**

In Churchill County's January 15, 2021 Opposition to Mr. Erwine's first spoliation motion, Churchill County cited several examples of notes in Mr. Erwine's file related to his performance that were unfavorable, such as noted from Captain Matheson and Sheriff Trotter. (See ECF Doc. #93 at 2-3). Further, in Churchill County's Answer to Mr. Erwine's Amended Complaint (ECF. #71), Churchill County plead the affirmative defense that, "the negligence, misconduct, and fault of Plaintiff exceeds that of Defendants, if any, and Plaintiff is thereby barred from any recovery against Defendants." By destroying the files above, in addition to Mr. Erwine's non-month evaluation, Churchill County has in effect preserved evidence that is unfavorable to Mr. Erwine and deprived him of the opportunity to present the entirety of the facts surrounding his employment to the Court, and to dispute the Defendant'.

Sheriff Trotter's October 10, 2016 Memorandum is riddled with unfounded and defamatory allegations against Mr. Erwine. If preserved, the files from the incidents involving Mr. Davis and Mr. Beaulieu would show that Mr. Erwine did not engage in conduct that was a "failure to follow proper chain of command," "conduct unbecoming a deputy and unjustifiable use of force," created "liability" for the agency, was "unprofessional," or violated the "taser and use of force" policy as well as "behavioral standards," all of which were alleged in the October 10, 2016 Memorandum in Exhibit 1. More specifically, the files and the nine-month evaluation would enable Mr. Erwine to further support his case that he was defamed and fired for attempting to raise issues related to how inmates were treated at Churchill County - In the words of St. Summers, Mr. Erwine was a "rat."

There is no reasonable dispute that Churchill County and Sheriff Trotter had notice that the files of the Beaulieu and Davis incidents were relevant to and could be used as evidence in litigation before they were destroyed. *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002). The incidents with Mr. Beaulieu and Mr. Davis were serious enough that they were investigated by the Sheriff's Office. It is highly implausible that no record of this investigation was created or retained when the evidence is irrefutable that the investigations took place.

The only rational explanation for the failure to preserve the files in question is that they were not disclosed with the intent to deprive Mr. Erwine of the ability to use the documents as evidence against Churchill County in litigation – effectively denying Mr. Erwine the most effective means to challenge the facts related to the circumstances surrounding his departure from employment with Churchill County and the accusations against him. The only rational explanation for the failure to preserve and/or disclose Mr. Erwine's nine-month evaluation is the same.

According to the Notes of the Advisory Committee on the 2015 Amendments to the FRPP, where the current version of FRCP 37(e) was adopted, "The remedy should fit the wrong, and the severe measures authorized by this subdivision should not be used when the information lost was relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss." Here, the videos at issue were not "relatively unimportant." The investigatory files at issue, if preserved, would have been a key piece of evidence in this case that could have conclusively resolved most of the disputed issues of fact related to what occurred with Mr. Erwine's employment at the Churchill County Jail, which led to Mr. Erwine being fired by Sheriff Trotter.

Based on the destruction of relevant and probative evidence in this matter, the Plaintiff believes the Court should presume that the lost information was unfavorable to the Defendants and issue jury instructions adverse to the Defendants under FRCP 37(e)(2). The Plaintiff requests that the instructions read as follows:

> The Defendants at one time possessed investigatory files of the Beaulieu and Davis incidents. The Court has found that the Defendants failed to preserve these files and/or destroyed the files despite having a duty to under the law to preserve the files. Because this evidence was wrongfully destroyed by the Defendants, the Plaintiff is entitled to a presumption that the destroyed files would support the Plaintiff's version of events. In assessing the facts of this case you must assume that the evidence in the missing files would have been unfavorable to the Defendants.
>
> The Defendants at one time possessed a nine-month employee evaluation of the Plaintiff. The Court has found that the Defendants failed to preserve this evaluation and/or destroyed the evaluation despite having a duty to under the law to preserve the evaluation. Because this evidence was wrongfully destroyed by the Defendants, the Plaintiff is entitled to a presumption that the destroyed evaluation would support the Plaintiff's version of events. In assessing the facts of this case you must assume that the evidence in the missing evaluation would have been unfavorable to the Defendants.

However, as destruction of the files at issue and Mr. Erwine's nine-month evaluation has deprived the Court and Mr. Erwine of what can only be described as the key pieces of evidence in this case and prejudiced Mr. Erwine's case in an irrevocable way, the Court, under FRCP 37(e)(2)(C) may also dismiss this action and enter default judgment in favor of Mr. Erwine if it finds such a remedy appropriate given the gravity of the situation. This remedy is appropriate given that the Defendants have destroyed several key pieces of evidence in this case.

In accordance with LR 26-6, as indicated in the Declaration from the undersigned counsel in Exhibit 13, the undersigned counsel wrote in an attempt to obtain the information in the evidence in question before seeking Court intervention and the undersigned counsel and counsel for the Defendants also met and conferred telephonically in an attempt to obtain the evidence that is the subject of this Motion.

WHEREFORE, the Plaintiff respectfully requests that the Court grant this Motion and provide an appropriate remedy available under FRCP 37(e).

**DATED** this Saturday, February 6, 2021

By: /s/ Luke A. Busby
LUKE BUSBY, ESQ.
NEVADA STATE BAR NO. 10319
316 CALIFORNIA AVE. #82
RENO, NV 89509
775-453-0112
LUKE@LUKEANDREWBUSBYLTD.COM
*ATTORNEY FOR PLAINTIFF*

**EXHIBITS**

1. OCTOBER 10, 2016 MEMORANDUM
2. RESPONSE TO PLAINTIFF'S SECOND REQUESTS FOR ADMISSION
3. DECLARATION OF MICHAEL ERWINE
4. DEPUTY THOMPSON STATEMENT
5. SERGEANT SUMMERS STATEMENT
6. DEPUTY JABINES STATEMENT
7. RESPONSE TO PLAINTIFFS SECOND REQUEST FOR PRODUCTION
8. TROTTER DEPOSITION
9. ZAMORA EMAIL
10. DECLARATION OF ERWINE NO. 3
    A. SUMMERS AUDIO RECORDING (MANUALLY FILED)
11. RESPONSE TO PLAINTIFF'S FIRST REQUESTS FOR ADMISSION
12. EVALUATION POLICY
13. DECLARATION OF LUKE BUSBY, ESQ.

# CERTIFICATE OF SERVICE

Pursuant to FRCP 5, I certify that on the date shown below, I caused service to be completed of a true and correct copy of the foregoing pleading by:

_____ personally delivering;

_____ delivery via Reno/Carson Messenger Service;

_____ sending via Federal Express (or other overnight delivery service);

_____ depositing for mailing in the U.S. mail, with sufficient postage affixed thereto; or,

___X___ delivery via electronic means (fax, eflex, NEF, etc.) to:

    Katherine F. Parks, Esq.
    Thorndal Armstrong
    6590 S. McCarran Blvd. Suite B.
    Reno, NV 89509
    Attorney for the Defendant

**DATED** this Saturday, February 6, 2021

By:\_\_\_\_\_/s/ Luke A. Busby\_\_\_\_\_
LUKE BUSBY, ESQ.
NEVADA STATE BAR NO. 10319
316 CALIFORNIA AVE #82
RENO, NV 89509
775-453-0112
LUKE@LUKEANDREWBUSBYLTD.COM
*ATTORNEY FOR PLAINTIFF*

17