Katherine F. Parks, Esq. - State Bar No. 6227
Thorndal Armstrong Delk Balkenbush & Eisinger
6590 S. McCarran Blvd., Suite B
Reno, Nevada 89509
(775) 786-2882
kfp@thorndal.com
Attorneys for Defendants
CHURCHILL COUNTY AND
BENJAMIN TROTTER

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL ERWINE,<br><br>                                 Plaintiff,<br><br>vs.<br><br>CHURCHILL COUNTY, a political subdivision of the State of Nevada; CHURCHILL COUNTY SHERIFF BENJAMIN TROTTER; and DOES 1 through 10 inclusive,<br><br>                                 Defendants. | CASE NO.  3:18-cv-00461-RCJ-CSD<br><br>**DEFENDANTS' MOTIONS IN LIMINE** |

COME NOW Defendants, CHURCHILL COUNTY and BENJAMIN TROTTER, by and through their attorneys of record, Thorndal Armstrong Delk Balkenbush & Eisinger, and hereby request the Court's order in advance of trial as to the admissibility of evidence and/or testimony of witnesses as discussed herein.

## FACTS

Plaintiff Michael Erwine worked as a deputy sheriff at the Churchill County Sheriff's Office from December 9, 2015, until October 10, 2016, when he resigned in lieu of termination. Erwine was a probationary employee at the time of his separation from employment with Churchill County.  Following his separation from employment with Churchill County, Erwine worked as a security guard for Allied Universal from April 25, 2017, to January 18, 2018.

Thereafter, from January 8, 2018, through April 4, 2018, Erwine worked as a police officer with the Pyramid Lake Paiute Tribe. Erwine was terminated by the Pyramid Lake Paiute Tribe for failure to have passed his probationary period. Erwine was again employed as a security officer with a company called Triumph Protection Group from June 28, 2018, through October 27, 2019. In November of 2019, Erwine began working as a police officer with the Washoe Tribe of Nevada and California. *See,* Exhibit 1, deposition of Erwine, p. 18. At the time of his deposition on December 17, 2020, Erwine had completed his one year probationary period with the Washoe Tribe and was earning $25.85 per hour plus medical benefits. *Id.* at 19. During his deposition, Erwine admitted that his position with the Washoe Tribe is in the field (law enforcement) in which he desires to be employed. *Id.* at 23. Erwine also testified that, in his position as a police officer with the Washoe Tribe, his job duties include, "everything you can imagine a general law enforcement officer handles." *Id.* at 18. Although Erwine did not pass his probationary period with the Pyramid Lake Paiute Tribe, Erwine testified that his duties with that agency included the same duties he has currently with the Washoe Tribe. *Id.* at 42. He further testified that, with the Pyramid Lake Paiute Tribe, his job duties included, "everything from minor traffic enforcement to in-depth investigations of crimes." *Id.* at 42-43.

On March 11, 2021, current Churchill County Sheriff Richard Hickox offered Erwine a position as a deputy sheriff with Churchill County. *See,* Exhibit 2, Offer of Employment. In connection with this offer of employment, Erwine was advised that his employment would not be subject to completion of a 12 month probationary period and that his starting wage would be $27.30 (representing the current hourly wage for patrol deputies with like experience at the Churchill County Sheriff's Office). *Id.* The offer included additional terms concerning restoration of Erwine's sick leave and vacation time. Sheriff Hickox also advised Erwine that the Sheriff's Office was willing to work with him on a workable time frame for him to meet the

- 2 -

additional requirement of residing within a 25 minute response to time to the Sheriff's Office. Erwine rejected the County's offer of employment.[1]  This offer was not contingent upon Erwine dismissing or compromising any of his claims in the instant matter and is and was not a communication made for purposes of settlement negotiations.

Erwine contends in this case that he was constructively discharged from employment with the Churchill County Sheriff's Office by Ben Trotter based upon his alleged actions in monitoring and documenting "activities and/or misconduct by other officers" in the agency. Erwine was a probationary employee at the time of his separation from employment with the Sheriff's Office.  As such, he did not have a protected property interest in continued employment.  Erwine's federal claim in this case is limited to his allegation that he was deprived of a protected liberty interest by the actions of Ben Trotter in placing a memorandum in his personnel file which contained statements which Erwine claims are false and stigmatizing. Trotter's memorandum, a copy of which is attached as Exhibit 3, contains facts related to two incidents, one that occurred on October 8, 2016, and one that occurred on October 9, 2016.  *Id.* The first incident referenced in the memorandum pertained to inmate Andrew Beaulieu and the actions of Erwine in conducting his own investigation into the alleged mistreatment of Beaulieu by other law enforcement officers, rather than reporting the incident up through the chain of command.  *Id.*  The other incident involved Erwine's use of a taser relative to a trustee inmate during an incident in the booking cage at the Jail.  *Id.*

In his Amended Complaint, Erwine refers to a number of incidents in which he alleges to have observed inappropriate conduct by fellow officers which are referenced nowhere in the

---

[1] A review of Erwine's Amended Complaint reveals that he had problems with then Sergeant Shawn Summers and former Sheriff Ben Trotter.  Neither Summers nor Trotter are currently associated with the Churchill County Sheriff's Office and, as discussed above, Richard Hickox is now the commanding officer of same.

memorandum of October 10, 2016. Erwine contends that one such incident occurred "almost immediately after beginning his tenure with the County" on or about December 9, 2015, wherein a former Sheriff's Office employee allegedly pushed a squeegee into a holding cell causing urine to splash on an inmate named Jimmy Thomas. *See,* Amended Complaint, Doc. No. 63, p. 4-5, ¶13. It is undisputed that Erwine did not report this alleged incident involving Jimmy Thomas to Ben Trotter. *See,* Exhibit 1, p. 249-250. The incident is not referenced in Trotter's memorandum and the incident did not occur in proximity to Erwine's separation from employment with the County on October 10, 2016.

Another such alleged incident involved a female inmate named Lacy Habberstead. According to the allegations in the Amended Complaint, this individual approached Erwine on or about April 16, 2016, and reported her belief that another deputy had engaged in inappropriate conduct while at a local hospital (that he watched her as she used the bathroom). *See,* Amended Complaint, Doc. No. 63, p. 5-6, ¶15-16. That allegation was investigated by administration at the Sheriff's Office and substantial evidence was not found to corroborate the claim. *See,* Exhibit 4, deposition of Mike Matheson, p. 29-30. This incident is not a subject of Trotter's memorandum of October 10, 2016.

Another such alleged incident involved an individual named Samuel Davis whom Erwine alleges was subjected to an inappropriate use of force by former Sheriff's Office employee, Shawn Summers, on July 16, 2016. *See,* Amended Complaint, Doc. No. 63, p. 6, ¶17. That allegation was investigated by administration at the Sheriff's Office and the incident is not a subject of Trotter's memorandum of October 10, 2016.

Lastly, Erwine claims in his Amended Complaint that "on numerous occasions," he witnessed "deputies and sergeants look on cell phones of female inmates and view private pornographic photos." *See,* Amended Complaint, Doc. No. 63, p. 6-7, ¶18. When asked about

this allegation at his deposition, Erwine testified that he witnessed this behavior on two

occasions. *See,* Exhibit 1, p. 257. Further, and besides stating that he "believed Sergeant

Summers was present" during the incident(s), Erwine testified that he could not recall the names

of any other Churchill County Sheriff's employees who were present and/or participated in such

conduct. *Id.* at 259. Erwine further testified during his deposition that he never reported these

alleged incidents up the chain of command, including to Trotter. *Id.* at 259. Erwine does not

recall when during his employment with Churchill County these alleged incidents occurred. *Id.*

at 257. These alleged incidents are not a subject of Trotter's memorandum of October 10, 2016.

## LEGAL ANALYSIS

### I.     Any Testimony or Evidence Offered by Gilbert Coleman, Ph.d Should be Excluded.

Erwine intends to present Gilbert Coleman as an expert witness on the issue of Erwine's

alleged "economic damages suffered by Michael Erwine as a result of his termination from the

Churchill County Sheriff's Office." *See,* Exhibit 5, Gilbert Coleman Expert Report and Exhibit

6, Gilbert Coleman, Supplemental Report. Mr. Coleman must be excluded from offering any

such opinions or testifying at trial because there is no factual foundation whatsoever for his

opinions. Mr. Coleman's opinions as set forth in his initial and supplemental expert reports

consist of nothing but pure speculation that should not be permitted to be presented to the jury in

this case. *Elcock v. Kmart Corp.*, 233 F.3d 734, 754 (3rd Cir. 2000).

FRE 702 governs the use of expert testimony in federal courts. Rule 702 provides as

follows:

> "If scientific, technical, or other specialized knowledge will assist the trier of fact
> to understand the evidence or to determine a fact in issue, a witness qualified as
> an expert by knowledge, skill, experience, training, or education, may testify
> thereto in the form of an opinion or otherwise."

Rule 702 embodies three distinct substantive restrictions on the admission of expert testimony:

qualifications, reliability, and fit. *Id.* at 741. Expert testimony is admissible only if it is both

relevant and reliable. *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 141 (1999).  The

Federal Rules of Evidence, "assign to the trial judge the task of ensuring that an expert's

testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v.*

*Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).

"[A]lthough mathematical exactness is not required, [expert] testimony of post-injury

earning capacity must be based upon the proper factual foundation." *Elcock, supra.* at 755.  An

expert's testimony regarding future lost earnings must be accompanied by a sufficient factual

foundation before it can be submitted to the jury. *Gumbs v. International Harvester, Inc.*, 718

F.2d 88, 98 (3rd Cir. 1983).  As shall be discussed below, the assumptions made by Coleman,

absent any factual foundation for same, render his proposed expert testimony, a "castle made of

sand." *Benjamin v. Peter's Farm Condominium Owners Assoc.*, 820 F.2d 640, 643 (3rd Cir.

1987).

In his expert reports, Mr. Coleman claims to have engaged in a calculation of Erwine's

economic damages purportedly caused by the actions of Churchill County.  Even the most

cursory review of his opinions reveals this is not the case.  In his reports, Coleman states the

several assumptions on which his opinion is based.  First, Coleman identifies as his "basic loss

assumption" that Erwine would have replaced his employment with a job with the Las Vegas

Metropolitan Police Department.  *See,* Exhibit 5 and Exhibit 6.  Premised upon this "basic loss

assumption," Coleman then goes on to speculate that Erwine's lost earnings, both past and

future, are anywhere between $912,567.00 and $6,144,811.00.  *See,* Exhibit 6.  Coleman bases

these figures on further factually unsupported and wholly speculative assumptions as follows:

(1) that Erwine would have continued working for LVMPD for between 10 years and the end of

his work life expectancy (Erwine is currently 32 years of age); (2) Erwine would have been

promoted to the rank of sergeant with the LVMPD after 8 years and would have stayed in that

1
2
3

position for the remainder of the "loss period," or, alternatively, (3) Erwine would have been promoted to the position of lieutenant four years after his would-be promotion to sergeant and would have stayed in that position for the remainder of the "loss period." *Id.*

4
5
6

Coleman's opinions are based upon rank speculation, his "assumptions" have no factual foundation whatsoever, and he must be excluded from providing such testimony at trial.[2]

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

To prevail on his federal claim for relief, Erwine must prove that he was constructively discharged from his employment in conjunction with a stigmatizing statement. *Board of Regents v. Roth*, 408 U.S. 564, 573 (1982). One without the other is insufficient. *Id.* To be sufficiently stigmatizing, the statement must have impaired Erwine's reputation for honesty or morality and the statement must be substantially false. *See, Tippetts v. Kulongoski,* 567 F.3d 529, 535-536 (9th Cir. 2009). In addition, the statements must be so severe as to "effectively exclude the employee completely from [his] chosen profession." *Blantz v. California Dep't of Corr. Health Care Servs.*, 727 F.3d 917, 925 (9th Cir. 2013). As noted by this Court on September 7, 2021, stigmatizing statements that merely cause "reduced economic returns and diminished prestige, but not permanent exclusion from, or protracted interruption of, gainful employment within the trade or profession" do not constitute a deprivation of liberty." *Id.* In addition, the Ninth Circuit has, "consistently held that people do not have liberty interests in a specific employer." *Llamas v. Butte Cmty. Coll. Dist.*, 238 F.3d 1123, 1128 (9th Cir. 2001). Rather, the due process clause protects a generalized right to choose one's field of private employment. *Id.* at 1128 (quoting *Conn v. Gabbert*, 526 U.S. 286, 292 (1999)).

25
26
27

The uncontroverted evidence in this case is that Michael Erwine regained employment in his chosen profession of law enforcement on January 8, 2018, when he obtained employment

28

---

[2]Coleman has but one opinion according to his initial and supplemental reports. As such, he should be excluded from offering any testimony at trial.

- 7 -

with the Pyramid Lake Paiute Tribe where he was employed until his termination on April 4, 2018. *See,* Exhibit 1, p. 53. Thereafter, the uncontroverted evidence in this case is that Erwine obtained employment as a police officer with the Washoe Tribe of Nevada and California in November of 2019. *Id.* at 19. Erwine admitted during his deposition that his position with the Washoe Tribe is within the field in which he wishes to be employed. *Id.* at 23. At the time of his deposition in December of 2020, Erwine had completed his probationary period with the Washoe Tribe and was earning $25.85 (an amount in excess of what he was earning with the Churchill County Sheriff's Office) per hour plus benefits. *Id.* at 19. It is also uncontroverted that Erwine remains employed as a police officer with the Washoe Tribe at this time. Erwine was also offered employment with Churchill County on March 11, 2021. *See,* Exhibit  2, Offer of Employment.

Given the uncontroverted evidence regarding Erwine's re-employment in the field of law enforcement, there is zero factual foundation for Coleman's opinion and proposed testimony. His damage figures bear no relationship to the undisputed facts here and his opinions and testimony would be wholly misleading to the jury. Coleman has not, as he suggests in the first sentence of his reports, made calculations of the actual past or future lost earnings of Erwine following his separation from employment with Churchill County. His purported expert opinion is nothing more than a "castle made of sand" based upon wild and unsupported speculation as to the would-be career path of Erwine with one single law enforcement agency. As articulated by the Ninth Circuit, Erwine has no liberty interest in a specific employer such as LVMPD. *Llamas, supra.* at 1128. Rather, the due process clause protects a generalized right to choose one's field of private employment. *Id.* at 1128 (quoting *Conn v. Gabbert*, 526 U.S. 286, 292 (1999)). Erwine has re-gained employment in his chosen field. Thus, not only is there no factual foundation for the opinions of Coleman, his opinion and testimony is unreliable, irrelevant and

not on a subject that will assist the trier of fact to understand the evidence in this case or determine a fact in issue.  As such, Mr. Coleman should be excluded from offering any opinions or testimony at trial.

**II.**     <u>**Any Testimony or Evidence Offered by Michael Giurlani Should be Excluded.**</u>

Erwine also intends to offer expert testimony from Michael S. Giurlani, a purported expert on background investigations in the law enforcement arena.  *See,* Exhibit 7, Michael Giurlani Expert Report.  Based upon a review of Mr. Giurlani's curriculum vitae, it does not appear that he has ever testified in court or deposition as an expert.  He has not authored any publications on any subject matter.  He does not appear to have any scientific, technical or other specialized knowledge that would be helpful to the jury in this case. Rather, Mr. Giurlani appears to base his qualifications to testify as an expert on the fact that he conducted "over 100 background investigations for purposes of employment" on behalf of the Nevada Department of Public Safety.  *Id.* at p. 1.

In reality, Mr. Giurlani appears to be Mr. Erwine's friend and co-worker.  Mr. Giurlani provided Erwine with a letter of recommendation that he submitted to Churchill County with his application for employment with the Sheriff's Office (and, at a minimum, to the Washoe County Sheriff's Office).  *See,* Exhibit 8, letter of recommendation.  According to his resume, Giurlani was a "shift lead supervisor" at Triumph Protection Group from February 2, 2018, to September 2, 2018.  *See,* Exhibit 7, p. 11.  Erwine was employed at Triumph Protection Group from June 28, 2018, and October 27, 2019.  *See,* Exhibit 1, p. 25.  Erwine also listed Giurlani as a reference on numerous applications for law enforcement positions over the years, including that he submitted to the Churchill County Sheriff's Office.  *Id.* at 73.

Based upon a review of his report, Mr. Giurlani will purportedly offer the following opinions in this case:

(1)  Erwine was terminated by Trotter because he reported civil rights violations by other law enforcement officers;

(2)  The issues described in the October 10, 2016, memorandum should have been "verified" in an "internal affairs investigation;"

(3)  It was the October 10, 2016, memorandum which was the cause of Erwine's subsequent rejection from employment with every law enforcement agency to which he applied after October 10, 2016; and,

(4)  Erwine has been black-balled from employment in the future by every law enforcement agency to which he applied after October 10, 2016.

As noted above, there are three requirements for the admissibility of expert testimony pursuant to Rule 702:  qualification, reliability, and fit.  A qualified expert is required to have specialized knowledge in his area of testimony, which may be based in practical experience, as well as academic, training, and credentials.  *Elcock, supra.* at 741.  The specialized knowledge prong requires, at a minimum, that the proffered expert possess skill and knowledge greater than the average layman on the subject matter of his opinion.  *Id.*  While a proposed expert is not required to satisfy an overly narrow test of his own qualifications, his knowledge of the particular subject matter must be such that his opinion will assist the trier of fact to understand the evidence or to determine a fact in issue.  *See, Gardner v. General Motors Corp.*, 507 F.2d 525, 528 (10th Cir. 1974); *see also, Holmgren v. Massey-Ferguson, Inc.*, 516 F.2d 856, 858 (9th Cir. 1975).  Nothing about the experience described in Giurlani's curriculum vitae suggests that he has any specialized training or skill on the subject matter described in his report which will assist the jury here.  The jury does not need an expert to answer fact questions as to the underlying cause of Erwine's alleged constructive discharge from the Churchill County Sheriff's Office nor as to whether any or all of the law enforcement agencies to which Erwine applied

rejected his employment due to information obtained from Trotter or Churchill County.  Here, it appears that Erwine is attempting to use a friend and co-worker as an expert on ultimate legal issues.  This should not be permitted, especially given the aura of special reliability and trustworthiness which the jury might lend to an "expert."  *U.S. v. Amaral,* 488 F.2d 1148, 1152 (9th Cir. 1973).  As such, Giurlani should be excluded from testifying at trial on the grounds that he is unqualified.

The reliability prong requires that the expert's opinion must be based on the methods and procedures of science, rather than on the subjective belief or unsupported speculation of the proposed expert.  *Calhoun v. Yamaha Motor Corp, U.S.A.*, 350 F.3d 316, 321 (3rd Cir. 2003).  Here, Giurlani appears to have engaged in no "methods or procedures" with respect to the analysis he undertook to reach his conclusions.  Giurlani talked to Erwine (even before his separation from employment from Churchill County), reviewed his personnel file, reviewed two affidavits and one written statement from three different inmates (Thomas, Maes and Beaulieu) who were incarcerated in the jail on or about October 8, 2016, and reviewed seven letters from various law enforcement agencies.  From a review of these materials, he simply states his subjective beliefs regarding the reasons for Erwine's separation from employment and rejection from employment with other law enforcement agencies.  Giurlani wholly fails the reliability prong of FRE 702 and he should be excluded from testifying at trial.

The fit requirement means that the expert's testimony must "fit" under the facts of the case so that it will aid the trier of fact in resolving a factual dispute.  *Id.*  This element requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.  *Id.; see also, Daubert, supra.* at 591.  No such connection exists here and Giurlani's proposed testimony fails to meet the "fit" prong of the applicable test, as well.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In addition, Giurlani should not be permitted to testify to a legal conclusion which suggests the answer to an ultimate issue in the case.  While an expert witness can make factual conclusions that embrace an ultimate issue to be decided by the fact-finder, the expert cannot give testimony stating ultimate legal conclusions based upon those facts, nor can that testimony track the language of the statute or the law that the defendants are accused of violating.  *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2nd Cir. 1991)(the use of expert testimony must be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury or the role of the jury in applying that law to the facts before it).  Giurlani's opinions constitute pure legal conclusions on causation issues which are for the jury to decide.

Finally, Giurlani should be excluded on grounds of bias.  While questions related to bias generally go to the weight, rather than the admissibility of expert testimony, "where an expert becomes an advocate for a cause, he therefore departs from the ranks of an objective expert witness, and any resulting testimony would be unfairly prejudicial and misleading."  *United States v. Kelley,* 6 F. Supp.2d 1168, 1183 (D. Kan. 1998).  A proposed expert who has preconceived notions about a case before litigation commences cannot be considered objective. *Id.*

Here, Mr. Giurlani states in his report that he spoke with Michael Erwine *prior to* his separation from employment with Churchill County at which time he advised Erwine to "keep a journal" regarding alleged improper conduct Erwine claims to have witnessed at the Churchill County Jail and to "record such information to add corroboration to his verbal statements."  *See,* Exhibit 7, p. 1.  He further states in his report that he learned that Erwine "was being subject to discriminatory actions" by Churchill County *during* Erwine's employment.  *Id.* at p. 5.  In other words, years before Erwine filed the instant lawsuit and before Erwine even left employment

with the Churchill County Sheriff's Office, Mr. Giurlani counseled him to take the very actions upon which Erwine now claims he was unlawfully terminated.  Erwine confirmed during his deposition that he spoke with Giurlani more than once while he was employed with the Sheriff's Office about the very subject matter of this case because he was "looking for advice" about how to handle the situation from his "mentor."  *See,* Exhibit 1, p. 126-127.

Here, despite the lack of qualifications, reliable methodology, or foundation, Erwine proposes to have his friend and co-worker (or, in his words, his "mentor") testify as a would-be expert that Erwine was unlawfully terminated by Churchill County for engaging in the very actions which *this witness* counseled him to take *before* Erwine was allegedly constructively discharged. Mr. Giurlani is clearly *not* a proper expert witness and he should be excluded from testimony at trial for all of the reasons discussed herein, including the fact that he clearly entertained preconceived notions regarding this case before the litigation ever commenced.

### III.   Witnesses and Documents Disclosed After the Discovery Deadline Should be Excluded from Evidence in Accordance with FRCP 37(c)(1).

Federal Rule of Civil Procedure 37(c) speaks to the consequences of a party's failure to provide that information required by FRCP 26(a) to opposing parties.  Specifically, FRCP 37(c)(1) provides as follows:

> "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. . .

FRCP 26(a) requires a party, without awaiting a discovery request, to provide the other party with the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment. FRCP 26(e) requires a party to supplement such information.

The discovery deadline in this case expired on December 31, 2020. *See,* Stipulation and Order to Extend Discovery Deadlines, Doc. No. 74. By stipulation of the parties and order of the Court, the deadline for completion of depositions was extended to January 29, 2021. *See,* Stipulation and Order to Extend Time to Complete Depositions (First Request), Doc. No. 83. Thereafter, the deadline for completion of only the Defendants' expert witness was extended by stipulation and order to February 15, 2021. *See,* Stipulation and Order to Extend Time to Complete Depositions (Second Request), Doc. No. 92.

Erwine has indicated his intent to call several witnesses who were not disclosed prior to the expiration of the discovery deadline, including Leslie Hawley, who is identified as a member of the Human Resources Department at the Pyramid Lake Paiute Tribe. Ms. Hawley was not disclosed as a witness by Erwine until September 9, 2021, more than eight months after the close of discovery. *See,* Exhibit 9, Plaintiff's FRCP 26 Eighteenth Supplemental Disclosure. There is no justification for Erwine's failure to have timely disclosed this witness given that his dealings with Ms. Hawley date back to his employment with the Pyramid Lake Paiute Tribe which began on January 8, 2018. Ms. Hawley should be excluded from testifying as a witness at trial.

In addition, on September 27, 2021, beyond the deadline for close of discovery, Erwine disclosed additional documents pertaining to Ms. Hawley, including a declaration which he intends to offer as an exhibit at trial. *See,* Exhibit 10, Plaintiff's FRCP 26 21 Supplemental Disclosures. As is discussed below, this declaration is hearsay not within any exception and it should be excluded from evidence in accordance with FRE 802. Notwithstanding, this declaration was not produced before close of discovery and, as such, Erwine should be prevented for offering it as an exhibit at trial pursuant to FRCP 37(c)(1).

Erwine has also indicated his intent to offer Scott Olson of Las Vegas Metropolitan Police Department as a witness at trial. Mr. Olson is alleged to have conducted a background

- 14 -

investigation of Erwine following his application for employment with that agency.  Mr. Olson was not timely disclosed as a witness in this matter.  Mr. Olson was not disclosed as a witness until September 14, 2021, 8 ½ months after the close of discovery.  *See,* Exhibit 11, Plaintiff's FRCP 26 Nineteenth Supplemental Disclosures.  Erwine was certainly aware of the individual with LVMPD with whom he communicated following his application for employment with that agency and there is no justification for Erwine's exceedingly late disclosure of same.  This witness should be excluded from testifying at trial.

Erwine has also indicated his intent to offer evidence in the form of a declaration of Jimmy Thomas and a declaration of Casey Ryan as evidence at trial.  *See, respectively,* Exhibit 12, Plaintiff's FRCP 26 Sixteenth Supplemental Disclosures and Exhibit 13, Plaintiff's FRCP 26 20th Supplemental Disclosures.  Both documents are unexcepted hearsay which should be excluded pursuant to FRE 802.  Notwithstanding, these declarations should be excluded in accordance with FRCP 37(c)(1) for failure of Erwine to timely disclose same.

**IV.     All Declarations and/or Affidavits Expected to be Offered as Evidence by Erwine at Trial Should be Excluded as Inadmissible Hearsay.**

Erwine has included numerous declarations and affidavits among the exhibits he intends to offer as evidence at trial.  All constitute inadmissible hearsay under FRE 802.  These proposed exhibits include the affidavit of Matthew Maes, a copy of which is attached as Exhibit 14, the affidavit of Andrew Beaulieu, attached as Exhibit 15, the declaration of Jimmy Thomas, attached as Exhibit 16, the declaration of Casey Ryan, attached as Exhibit 17, and the declaration of Ms. Hawley, discussed above and attached as Exhibit 18.

All of these affidavits and declarations, regardless of the differing subject matter, constitute out of court statements offered to prove the truth of the matters asserted therein.  All are inadmissible pursuant to FRE 802 as hearsay not within any exception and these exhibits should be excluded at trial.

In addition, Erwine has indicated his intent to offer as evidence a trial a letter purportedly written by inmate Jimmy Thomas about an incident that allegedly occurred within days of Erwine's employment with the Sheriff's Office on December 9, 2015, a copy of which is attached as Exhibit 19.  As is true with the declaration of Jimmy Thomas discussed above, this letter is hearsay not within any exception and it should be excluded from evidence at trial.

**V.   Testimony and Evidence Pertaining to the Alleged Jimmy Thomas Incident Should be Excluded at Trial.**

As noted above, Erwine refers to a number of incidents in his Amended Complaint in which he claims to have observed inappropriate conduct by fellow officers which are not mentioned in the October 10, 2016, memorandum and about which there is no evidence that Trotter communicated with any other law enforcement agency or prospective employer of Michael Erwine.  For instance, Erwine refers to an incident in which Shawn Summers allegedly pushed a squeegee into a holding cell causing urine to splash on inmate Jimmy Thomas.  *See,* Amended Complaint, Doc. No. 63, p. 4-5, ¶13.  This incident in not referenced in the October 10, 2016, memorandum.  It allegedly occurred "almost immediately after" Erwine's commencement of employment with the Sheriff's Office in early December of 2015.  *Id.*  Erwine did not report this alleged incident to Sheriff Trotter.  *See,* Exhibit 1, p. 249-250.

Federal Rule of Evidence 402 et. seq. governs relevancy as related to proposed evidence. FRE 401 provides that evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.  Evidence pertaining to the alleged Jimmy Thomas incident is not relevant.  Erwine's allegations in this matter focus on his claim that his constructive discharge from employment with Churchill County was in violation of a liberty interest protected by the due process clause of the Fourteenth Amendment of the United States Constitution.  As discussed above, in order to prevail on such a claim, Erwine must demonstrate that he was discharged from employment in

- 16 -

conjunction with a false stigmatizing statement that impaired his reputation for honesty or morality.  *See, Roth, supra.* at 573 and *Tippetts, supra.* at 535-536.  Erwine must further demonstrate that the statements were so severe as to have effectively excluded him completely from his chosen field.  *Blantz, supra.* at 925.  Erwine's state law claims (if any) are focused on the same legal argument; i.e. that he was defamed by Trotter with respect to the October 10, 2016, memorandum and that Trotter interfered with Erwine's prospective employment with respect to statements in the memorandum.  Erwine's state constitutional tort claim is indistinguishable from his federal claim in terms of the legal analysis to be applied to same.

Whether Shawn Summers committed the acts attributed to him by Erwine some time at the beginning of Erwine's employment with the Sheriff's Office is not relevant in this matter. There is no evidence, nor even an allegation, that Trotter made any false statements about Erwine which relate to this incident and the memorandum of October 10, 2016, is devoid of reference to it.  This incident did not occur in proximity to Erwine's separation from employment with the Sheriff's Office.  As such, this evidence should be excluded as irrelevant to the claims at issue.

Testimony and documentary evidence related to the alleged Jimmy Thomas incident should also be excluded in accordance with FRE 403 which provides that the Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  Here, several justifications exist for exclusion of this evidence. First, the danger of unfair prejudice to the Defendants far outweighs any marginal relevance. The alleged incident occurred more than six years ago.  Shawn Summers is not a defendant in this case and Jimmy Thomas never made a complaint or filed suit against Churchill County or anyone associated with Churchill County or the Churchill County Sheriff's Office.  Allowing

evidence on this subject matter will require the Defendants to put on a mini-trial within a trial on alleged wrongful conduct which has no bearing on Erwine's separation from employment or the elements of his causes of action, thereby causing undue delay in the trial.  Evidence on this subject poses the real danger of confusing the issues in this case by allowing the jury to hear evidence of purported wrongful conduct on the part of Summers where that conduct bears no relevance to Erwine's claims.  This evidence is misleading and prejudicial and should be excluded in accordance with FRE 403.

**VI.** **Testimony and Evidence Pertaining to the Alleged Lacy Habberstead Incident Should be Excluded at Trial.**

Identical justification exists for the exclusion from evidence of the alleged incident involving Lacy Habberstead.  As discussed above, Erwine claims that, in April of 2016, this inmate made a report to him that another deputy had behaved inappropriately while at a local hospital.  *See,* Amended Complaint, Doc. No. 63, p. 5-6, ¶15-16.  The employee whom Erwine implicated in this alleged incident is not a defendant in this case.  The incident did not occur in proximity to Erwine's separation from employment with the Sheriff's Office.  Neither Churchill County, the Churchill County Sheriff's Office nor any individual associated with the Sheriff's Office was ever sued in connection with this alleged incident.  There is no evidence, nor even an allegation, that Trotter communicated with anyone regarding Erwine's involvement in any such incident and it is not referenced in the October 10, 2016, memorandum.  As with the incident discussed above, allowing evidence of this type will require the Defendants to put on a mini-trial within the trial and defend themselves against allegations about conduct that occurred almost six years ago.  This evidence does not have a tendency to make a fact at issue in this case more or less probable than it would be without the evidence nor is it evidence pertaining to a fact that is of consequence in determining the action in terms of Erwine's causes of action.  It is irrelevant evidence which should be excluded pursuant to FRE 403.

Even if such evidence were marginally relevant, any relevance is outweighed by the danger of unfair prejudice to the Defendants and allowing such evidence to be presented would result in needless and undue delay in terms of the length of the trial.  As such, all evidence as to this subject matter should be excluded at trial.

**VII.   Testimony and Evidence Pertaining to the Alleged Samuel Davis Incident Should be Excluded from Trial.**

The same legal arguments compel the exclusion of any evidence related to the alleged Samuel Davis incident.  Erwine contends that Davis, an inmate, was subjected to an improper use of force by Summers in July of 2016.  Summers is not a defendant in this case.  This alleged conduct took place three months prior to Erwine's separation from employment.  Neither Churchill County, the Churchill County Sheriff's Office nor any individual associated with the Sheriff's Office was ever sued in connection with this alleged incident.  There is no evidence, nor even an allegation, that Trotter communicated with anyone regarding Erwine's involvement in any such incident and it is not referenced in the October 10, 2016, memorandum.  The Defendants should not be forced, considering the irrelevancy of this evidence, to put on a mini-trial within a trial by having to defend against purported constitutional violations that occurred in July of 2016.  The evidence is not relevant.  Even if marginally relevant, any relevance is outweighed by the danger of unfair prejudice to the Defendants and confusion of the issues in the case.  Further, allowing such evidence to be presented would result in needless and undue delay in terms of the length of the trial.  As such, all evidence as to this subject matter should be excluded at trial.

**VIII.   Testimony and Evidence to the Effect that Members of the Churchill County Sheriff's Office Looked at Private Photographs of Female Inmates Should be Excluded from Trial.**

Any evidence pertaining to the alleged actions of Summers and unidentified officers with the Sheriff's Office looking at "pornographic" photographs on the cell phones of female inmates

booked into the jail should be excluded on the same relevancy and prejudice grounds.  Other than Summers, who is not a defendant in this case, Erwine could identify no other employees of the Sheriff's Office who allegedly engaged in this conduct.  *See,* Exhibit 1p. 257, 259.  Erwine also admitted during his deposition that he never reported this alleged conduct up the chain of command, including to Trotter.  *Id.* at 259.  Erwine does not recall when during his employment with the Sheriff's Office this alleged conduct took place.  *Id.* at 257.  This alleged conduct is not referenced in Trotter's memorandum and there is no evidence, nor even an allegation, that Trotter communicated any information to a third party regarding Erwine's involvement in any such incidents.  Evidence on this subject matter is not relevant to any fact of consequence in this action and should be excluded.  Further, this evidence is highly prejudicial and even any marginal relevance is outweighed by the danger of unfair prejudice and confusion of the issues to be determined by the jury.  Further, allowing such evidence to be presented would require the Defendants to put on a mini-trial within a trial on this subject and defend themselves against purported civil rights violations despite the fact that neither Churchill County, the Churchill County Sheriff's Office nor anyone employed by the Sheriff's Office was ever sued over such purported conduct.  Allowing such evidence to be presented would result in needless and undue delay in terms of the length of the trial.  As such, this evidence should be excluded from trial pursuant to FRE 403.

DATED this 28th day of January, 2022.

THORNDAL ARMSTRONG
DELK BALKENBUSH & EISINGER

By: /s/  Katherine F. Parks
    Katherine F. Parks, Esq.
    Attorneys for Defendants
    Churchill County and
    Benjamin Trotter

## **CERTIFICATION**

Counsel for the Defendants certifies that she met and conferred with counsel for Michael Erwine regarding the subject matter of these motions in limine and that counsel were unable to resolve these issues without court action.

DATED this 28th day of January, 2022.

THORNDAL ARMSTRONG
DELK BALKENBUSH & EISINGER

By: _/s/  **Katherine F. Parks**_
     Katherine F. Parks, Esq.
     Attorneys for Defendants
     Churchill County and
     Benjamin Trotter

### <u>CERTIFICATE OF SERVICE</u>

Pursuant to FRCP 5(b), I certify that I am an employee of THORNDAL ARMSTRONG DELK

BALKENBUSH & EISINGER, and that on this date I caused the foregoing **DEFENDANTS'**

**MOTIONS IN LIMINE** to be served on all parties to this action by:

_____ placing an original or true copy thereof in a sealed, postage prepaid, envelope in the

United States mail at Reno, Nevada.

__✓__ United States District Court, District of Nevada CM/ ECF (Electronic Case Filing)

_____ personal delivery

_____ facsimile (fax)

_____ Federal Express/UPS or other overnight delivery

fully addressed as follows:

**Luke Busby, Esq.**
**316 California Ave., #82**
**Reno, NV 89509**
***Attorney for Plaintiff***

DATED this 28th day of January, 2022.

_/s/  Sam Baker_____
An employee of THORNDAL ARMSTRONG
DELK BALKENBUSH & EISINGER

1

## **INDEX OF EXHIBITS**

2

| EXHIBIT | DESCRIPTION | NO. OF PAGES |
|---|---|---|
| 1 | Deposition of Michael Erwine | 19 |
| 2 | Offer of Employment | 2 |
| 3 | Memorandum dated October 10, 2016 | 4 |
| 4 | Deposition of Mike Matheson | 6 |
| 5 | Gilbert Coleman Initial Expert Report | 6 |
| 6 | Gilbert Coleman Supplemental Expert Report | 7 |
| 7 | Michael Giurlani Expert Report | 9 |
| 8 | Letter of Recommendation from Michael Giurlani | 1 |
| 9 | Plaintiff's FRC P26 Eighteenth Supplemental Disclosure | 4 |
| 10 | Plaintiff's FRCP 26 Twenty-First Supplemental Disclosure | 6 |
| 11 | Plaintiff's FRCP 26 Nineteenth Supplemental Disclosure | 4 |
| 12 | Plaintiff's FRCP 26 Sixteenth Supplemental Disclosure | 5 |
| 13 | Plaintiff's FRCP 26 Twentieth Supplemental Disclosure | 5 |
| 14 | Affidavit of Matthew Maes | 3 |
| 15 | Affidavit of Andrew Beaulieu | 3 |
| 16 | Declaration of Jimmy Thomas | 2 |
| 17 | Declaration of Casey Ryan | 2 |
| 18 | Declaration of Lesley Hawley | 2 |
| 19 | Letter Purportedly written by inmate Jimmy Thomas | 5 |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28