1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

MICHAEL ERWINE,

     Plaintiff,     Case No.: 3:18-cv-00461-RCJ CSD

vs.

CHURCHILL COUNTY, a political
subdivision of the State of Nevada,   **PRETRIAL ORDER**
CHURCHILL COUNTY SHERIFF
BENJAMIN TROTTER, and DOES 1
through 10 inclusive;

     Defendants.
_____/

  After pretrial proceedings in this case,

  IT IS ORDERED:

 I.**This is an action for**

  Plaintiff MICHAEL ERWINE has filed claims against CHURCHILL COUNTY, a political subdivision of the State of Nevada and former CHURCHILL COUNTY SHERIFF BENJAMIN TROTTER herein for violation of his liberty interest due process rights under the Nevada and US Constitutions, tortious discharge, defamation, defamation per se, and intentional interference with prospective employment. On April 29, 2021, the parties filed a stipulation for dismissal of Erwine's procedural due process property interest claim and the Court dismissed this claim accordingly. See ECF #114.  Erwine is also pursuing a *Monell* claim against Churchill County because Sheriff Trotter was the official with final policy making authority at the Churchill County

Sheriff's Office.  Erwine contends that was discharged without any due process and contrary to law by Defendants Churchill County and Sheriff Benjamin Trotter in response to his documentation of the misconduct of his fellow employees at the Churchill County Jail and that subsequent to his discharge, defamatory and stigmatizing information placed in his personal file without his knowledge was published to other law enforcement agencies to which he applied for employment.

**II. Statement of jurisdiction**:

This action arises primarily under 42 U.S.C. Section 1983. This Court has jurisdiction of this action pursuant to 28 U.S.C. Sections 1331, 1343, 1367, 2201 and 42 U.S.C. Sections 1983 and 1988, as the Plaintiff's claim arises under Federal Law. The Court has personal jurisdiction over the Defendants because the alleged incident described below occurred within this District. Venue is proper pursuant to 28 U.S.C. Section 1391 in the Northern District of Nevada because the acts giving rise to the Plaintiff's claims occurred in this District.

**III. The following facts are admitted by the parties and require no proof:**

1.      From December 9, 2015 until October 10, 2016, Plaintiff was employed as a Deputy Sheriff for the Churchill County Sheriff's Office.

2.      Churchill County employed Erwine in the capacity of Detention Deputy at the County Jail.

3.      On Sunday, October 9, 2016, Deputy Jolie Jabines knocked over a can containing tools and screws while removing inmate property from the booking cage.

4.      Erwine was provided with no written notice that he had been accused misconduct before Erwine executed the Letter of Separation on October 10, 2016 (See RFA No.1).

5.      A memorandum dated October 10, 2016, was placed in Erwine's personnel file.

6.     Statements from CCSO employees Thompson, Summers and Jabines were placed in Erwine's personnel file.

7.     Erwine was not afforded a hearing before Erwine executed the Letter of Separation on October 10, 2016 (RFA No. 2).

8.     Sheriff Trotter authored the October 10, 2016 Memorandum (RFA No. 4); Sheriff Trotter placed the October 10, 2016 Memorandum into Erwine's personnel file (RFA No. 5).

9.     The October 10, 2016 Memorandum was not provided to Erwine before the Letter of Separation on October 10, 2016 was executed by Erwine.

10.     The October 10, 2016 Memorandum was never shown to Erwine such that he may have read and initialed the document before it was placed in his personnel file (RFA No. 8).

11.     The October 10, 2016 Memorandum contains no notation to the effect that the document was shown to Erwine and that Erwine refused to initial the document (RFA No. 9).

12.     The accuracy of the charges against Erwine in the October 10, 2016 Memorandum are contested.

13.     Sheriff Trotter was the head official with policy making authority over decisions of the Churchill County Sheriff's Office at all times relevant to this case.

14.     Michael Erwine was employed as a security officer for Allied Universal from April 25, 2017, to January 18, 2018.

15.     Michael Erwine was employed as a police officer with the Pyramid Lake Paiute Tribe from January 8, 2018, through April 4, 2018.

16.     Michael Erwine was employed as a security officer for Triumph Protection Group from June 28, 2018, through October 27, 2019.

17.     Michael Erwine commenced employment as a police officer for the Washoe Tribe of Nevada and California in November of 2019.

18.	Michael Erwine is currently employed as a police officer for the Washoe Tribe of Nevada and California.

19.	The Defendants never sent Erwine's personnel file to the Pyramid Lake Paiute Tribe.

20.	The Defendants never sent Erwine's personnel file to the Washoe Tribe of California and Nevada.

**IV.  The following facts, though not admitted, will not be contested at trial by evidence to the contrary:**

21.	On October 8, 2016, Erwine went in for the day shift and began checking cells. Erwine was informed that an inmate, Andrew Beaulieu ("Beaulieu") was in the security cell and needed to be booked.

22.	When Erwine arrived at Beaulieu' s security cell he noticed blood on the walls and asked the grave shift deputy what the blood was from.

23.	At the meeting with Sheriff Trotter on October 10, 2016, Erwine was informed that he would receive his vacation pay/sick pay if he chose to resign rather than be terminated, but that he would be terminated in either case.

**V. The following are the issues of fact to be tried and determined at trial:**

**(a) Plaintiff's Issues of Fact to be Tried and Determined Upon Trial**

24.	On October 8, 2016, Erwine was informed by the inmate and later confirmed during review of surveillance footage that every time Beaulieu would request water, the grave shift deputy would flush the drain in Beaulieu's cell making Beaulieu's request inaudible over the flushing noise.

25.	The grave shift deputy informed Erwine that Beaulieu had come in with a cut on his hand and that it ripped open while in the cell.

26.	After investigating the circumstances, Erwine discovered Beaulieu had been requesting water for hours.

27.    Erwine provided Beaulieu with water pursuant to his essential job functions to provide inmates with food and explained to Beaulieu what the rest of the booking process would look like.

28.    During this time, Beaulieu expressed to Erwine that the grave shift deputies were "assholes", and he would be filing a lawsuit against them.

29.    Erwine continued to conduct his rounds in the jail. While Erwine was conducting his rounds, other inmates asked Erwine what had happened to the "guy in the security cell" the previous night and explained what the grave shift did "was messed up."

30.    Erwine reviewed surveillance footage of the grave shift's interaction with Beaulieu before he removed him for booking, mainly to be aware of any safety concerns with Beaulieu before removing him from the security cell.

31.    Erwine did not note any alarming actions by Beaulieu wherein Erwine would need to be concerned, however, he did note concerning inappropriate acts of the grave shift deputy that he believed needed to be brought to his sergeant's attention.

32.    Inmate Zachary White even filed a grievance request to Captain Matheson regarding the treatment of Beaulieu.

33.    Since the concerns were not an immediate threat, and the sergeant did not work on weekends, Erwine chose to log the events on his computer so he could follow up with his sergeant on Monday, October 10, 2016, when his sergeant returned to work.

34.    On October 9, 2016, Deputy Jabines did not want to pick up items herself, so she asked an inmate to come into the booking cage and pick them up for her. Bringing in an inmate to pick up the sharp inmates created a dangerous situation for everyone involved.

35.     Erwine did not feel it was appropriate for Deputy Jabines to have an inmate, Matthew Maes, come into the booking cage to pick up items which could be easily used as weapons.

36.     Erwine questioned Deputy Jabines about this but her only response was "Senior Deputy" which Erwine understood as to mean he did not have a say in the matter.

37.     When the Maes came into the cage, Erwine positioned himself between Maes and the control panel of the facility.

38.     Erwine was in an uncomfortable position with Maes being only a few feet away from Erwine and backed into a corner. Erwine removed his taser from its holster and held it in his hand with the taser pointed to the ground.

39.     Erwine removed the cartridge from the taser due to the close proximity of inmate Maes to both Erwine and Deputy Jabines. Maes cleaned up the items and left the cage without incident.

40.     Near the end of Erwine's shift on October 10, 2016, Erwine was confronted by Captain Matheson and Sheriff Trotter.

41.     Sheriff Trotter informed Erwine that he was aware of the booking that took place over the weekend with Beaulieu and that Erwine was intentionally trying to harm the Department. Erwine began to speak about the Beaulieu Incident as he had originally intended to do from the beginning of his shift that day, however, Erwine was not afforded any opportunity to explain what he had witnessed or discovered, nor was he provided with any notice of the meeting or that we was to be terminated at the meeting.

42.     On October 10, 2016, Erwine was advised that he could resign or he would be terminated.

43.     Erwine's financial situation was not secure, and he had moved to Churchill County and signed a lease so that he could work as a deputy there.

44.     The job at Churchill County was Erwine's first position in law enforcement after graduating from the academy, and a termination would have been catastrophic on his future career prospects.

45.     Erwine was forced to make a snap decision under financial duress and Erwine signed a Letter of Separation on October 10, 2016.

46.     Sheriff Trotter's October 10, 2016 Memorandum is riddled with stigmatizing allegations against Mr. Erwine as it alleges that Erwine "failure to follow proper chain of command," engaged in "conduct unbecoming a deputy and unjustifiable use of force," that created "liability" for the agency, was "unprofessional," or violated the "taser and use of force" policy as well as "behavioral standards."

47.     The allegations in the October 10, 2016 Memorandum involve questions of Mr. Erwine's honesty and morality.

48.     Despite initially denying that the October 10, 2016 Memorandum and personnel file was shared with any outside law enforcement agency the Defendants later admitted that the October 10, 2016 Memorandum, in addition to Mr. Erwine's entire personnel file, was shared with the Washoe County Sheriff's Office, after Washoe County provided a response to a subpoena in which it was clear that Erwine's entire employee file was sent to the Washoe County Sheriff's Office.

49.     Upon requesting and receiving his employee file from Churchill County on April 13, 2018, Erwine discovered the existence of the October 10, 2016 Memorandum and the statements regarding the incidents with Maes and Beaulieu were placed in his employment file.

50.     Churchill County failed to allow Erwine an opportunity to refute the veracity of the charges by Sheriff Trotter.

51.     Subsequent to Erwine's departure from the Churchill County Sheriff's Office, after Erwine sought other law enforcement jobs, Erwine was rejected from multiple police agencies for failing to pass background investigations.

52.     On January 17, 2017, Erwine received a letter from the Washoe County Sheriff informing him that, "…the Sheriff's Office has determined that you do not meet the established standards for a position as Deputy Sheriff and therefore you have not been selected at this time."

53.     On February 7, 2017, Erwine received an email from Las Vegas Metropolitan Police in response to his application for employment informing him, "…based on review of your background history, you will no longer be considered for the position(s) of Police Recruit C 16-001 November with the Las Vegas Metropolitan Police Department. Candidate does not meet LVMPD hiring standards based on Employment History" and "You are not eligible to apply with LVMPD for any position indefinitely."

54.     On September 8, 2017, Erwine received a letter from the Carson City Department of Alternative Sentencing informing him that he is, "…no longer being considered in the current recruitment due to failing on or more portions of the selection process" which included the Background Investigation and Chiefs Review, and "Based on our recruitment standards you are precluded from reapplying with our agency in the future."

55.     On September 12, 2017, Erwine received from Douglas County Sheriff a letter informing him that he, "…did not successfully complete the background evaluation/testing and therefore are no longer considered an eligible applicant for employment.... "

56.     On November 14, 2017, Erwine received a letter from North Las Vegas Police informing him he was "...ineligible to continue in the employment process for the position of Police Officer ... " for character Issues and his employment history," and "You are disqualified indefinitely.

57.    On March 1, 2018, Erwine received a letter from Reno Police Department informing him that his, " ... application for employment with the Reno Police Department for [Police Recruit] was rejected, based on your pre-employment background investigation."

58.    On February 8, 2021, the undersigned counsel received the Plaintiff's background file from the Las Vegas Metropolitan Police Department ("LVMPD"), which was sought by the Defendant pursuant to a subpoena issued by the Defendants. Included in LVMPD's response is a note from the background investigator Scott Olsen indicating that Olsen had a telephone conversation with Sheriff Trotter regarding Plaintiff Mr. Erwine's employment with Churchill County.

59.    Sheriff Trotter indicated to Mr. Olsen that Mr. Erwine was terminated because he initiated an unauthorized investigation that was beyond his duties and that Mr. Erwine was sympathetic to an inmate who was looking to file a lawsuit against Churchill County.

60.    Mr. Olsen also indicates that Sheriff Trotter indicated that an investigation was conducted, presumably of the incident involving Mr. Beaulieu.

61.    There has been a public disclosure of the stigmatizing charge made by Sheriff Trotter against Erwine.

62.    The charge was made in connection with Mr. Erwine's termination from Churchill County.

63.    At all times relevant to this case, Sheriff Trotter and Churchill County were acting under color of state law.

64.    Sheriff Trotter and Churchill County deprived the Plaintiff of his rights under the laws of the State of Nevada and the United States Constitution.

65.    Sheriff Trotter and Churchill County terminated Erwine's employment.

66.    Sheriff Trotter and Churchill County impaired Erwine's reputation for honesty and morality.

67.     Erwine was effectively excluded, or suffered a prolonged interruption of, employment in the law enforcement field because of the actions of Sheriff Trotter and Churchill County.

68.     Sheriff Trotter and Churchill County made a false and defamatory statement concerning plaintiff and his professional abilities;

69.     Sheriff Trotter and Churchill County made unprivileged publication of the statement was made to a third person;

70.     Sheriff Trotter and Churchill County were at least negligent in making the statement.

71.     Erwine sustained actual damages as a result of the statement.

72.     Sheriff Trotter and Churchill County statements tend to disparage the plaintiff's professional ability

73.     Erwine's resignation was induced by an action and conditions that violate public policy

74.     A reasonable person in Erwine's position at the time of the resignation would have also resigned because of the aggravated and intolerable employment action and conditions.

75.     Churchill County and Sheriff Trotter had actual or constructive knowledge of the intolerable actions and conditions and their impact on Erwine.

76.     Churchill County and Sheriff Trotter could have been remedied Erwine's employment conditions.

**b.      Defendants' Issues of Fact to be Tried and Determined Upon Trial**

77.     As a law enforcement officer with the Pyramid Lake Paiute Tribe, Michael Erwine performed the general duties of a law enforcement officer from traffic enforcement to in-depth investigations.

78.     As a law enforcement officer with the Washoe Tribe of Nevada and California, Michael Erwine's duties included everything a general law enforcement officer would handle.

79.     Michael Erwine regained employment in his chosen field of law enforcement on January 8, 2018, when he commenced employment with the Pyramid Lake Paiute Tribe, and again in November of 2019, when he commenced employment with the Washoe Tribe of Nevada and California.

80.     On October 8, 2016, Michael Erwine conducted an unauthorized investigation relating to inmate Andrew Beaulieu.

81.     Between October 8, 2016, and October 10, 2016, Michael Erwine did not report alleged concerns related to Andrew Beaulieu to his supervisor or up the chain of command at the Churchill County Sheriff's Office.

82.     On October 9, 2016, Michael Erwine was involved in a use of force incident in connection with use of his taser in the booking room at the Jail while in the presence of trustee inmate Michael Maes.

83.     Whether Michael Erwine was constructively discharged from employment in conjunction with a false, stigmatizing statement.

84.     Whether stigmatizing statements in the October 10, 2016, memorandum were so severe as to effectively exclude Michael Erwine completely from his chosen profession of law enforcement.

85.     Whether the stigmatizing statements in the October 10, 2016, memorandum merely caused Michael Erwine reduced economic returns and diminished prestige, but not permanent exclusion from, or protracted interruption of, gainful employment within his trade or profession of law enforcement.

86.     Whether the statements in the memorandum of October 10, 2016, were substantially false.

87.     Whether Michael Erwine sought to refute the veracity of the charges after October 10, 2016, before filing suit in the United States District Court on September 28, 2018.

88.     Whether Ben Trotter's statements impair Michael Erwine's reputation for honesty or morality.

89.     Whether, and to what extent, Ben Trotter's statements were publically disclosed.

90.     Whether, in making the statements at issue, Ben Trotter's conduct was malicious, oppressive, or in reckless disregard of Michael Erwine's rights.

91.     Michael Erwine was offered employment as a deputy sheriff with the Churchill County Sheriff's Office on March 11, 2021.

92.     Michael Erwine rejected Churchill County's March 11, 2021, offer of employment with the Churchill County Sheriff's Office.

93.     The present value of Erwine's future damages, if any.

94.     Whether Michael Erwine had a prospective employment relationship with a third party about which Ben Trotter had knowledge.

95.     Whether Ben Trotter engaged in acts or conduct with the intent to interfere with or disrupt a prospective employment relationship of Michael Erwine's with a third party.

96.     Whether Ben Trotter's conduct with respect to a prospective employment relationship of Michael Erwine's caused damages to him.

97.     Whether Ben Trotter made an unprivileged publication of a false and defamatory statement concerning Michael Erwine.

98.     Whether Ben Trotter's actions were privileged or justified.

99.     Whether Ben Trotter's statement was statement of opinion, not fact.

100.    Whether Ben Trotter's statement was made with knowledge of its falsity or reckless disregard for its truth.

101.    Whether Michael Erwine sustained actual or special damages as a result of an unprivileged publication by Ben Trotter of a false and defamatory statement.

102.   Whether Michael Erwine's resignation was induced by action and conditions that were in violation of public policy of the State of Nevada

103.   Whether a reasonable person in Michael Erwine's position at the time of resignation would have also resigned because of aggravated and intolerable employment action and conditions.

104.   Whether Ben Trotter had knowledge of Erwine's alleged intolerable conditions of employment and the situation could have been remedied.

105.   Whether Michael Erwine sustained lost wages caused by false, stigmatizing statements made by Ben Trotter.

106.   Whether Michael Erwine sustained damage to his reputation caused by false, stigmatizing statements made by Ben Trotter.

**VI.  The following are the issues of law to be to be tried and determined at trial.**

**(a)  Plaintiff's Statement of Issue of Law to be tried and determined at trial:**

1.   Whether Benjamin Trotter and Churchill County violated Mr. Erwine's Due Process rights under the 14th Amendment and the Nevada Constitution to a name clearing hearing before placing stigmatizing information in his employee file and publishing the information to at least one third party.  At the close of evidence both parties intend to move under Rule 50 for judgment as a matter of law.

2.   Whether Mr. Erwine should be permitted to call an adverse witness, use leading questions, and limit the testimony of witness to the scope of Plaintiff's direct examination.

3.   Whether the admitted disclosure of Erwine's personnel file to Washoe County by Churchill County pursuant to the provisions of NRS 239B.020 constitutes public disclosure under the test in *Mustafa v. Clark County Sch. Dist*., 157 F.3d 1169, 1179 (9th Cir. 1998).

4.      Whether total deprivation of Erwine's due process rights of peace officers provided in NRS 289.020 et. seq also constitutes a violation of the right to due process provided in Article 1. Sec. 8(2) of the Nevada Constitution.

**(b) Defendants' Statement of Issues of Law to be tried and determined at trial:**

1.      Whether Ben Trotter and/or Churchill County deprived Erwine of a constitutionally protected liberty interest without adequate process in violation of the Fourteenth Amendment of the United States Constitution and/or Article I, Section 8(5) of the Nevada Constitution.

2.      Whether Michael Erwine sustained compensable damages as a result of the deprivation of a constitutionally protected liberty interest.

3.      Whether Michael Erwine is entitled to equitable relief from the Court in the form of back pay or front pay as a result of the alleged deprivation of a protected liberty interest.

4.      Whether Ben Trotter is immune from suit based upon qualified immunity.

5.      Whether Michael Erwine failed to mitigate his damages.

6.      Whether the conduct attributed to Ben Trotter was privileged.

7.      Whether Michael Erwine is entitled to seek damages for lost wages, including back pay and front pay, after January 8, 2018, and his commencement of employment with the Pyramid Lake Paiute Tribe.

8.      In the alternative, whether Michael Erwine is entitled to damages for lost wages, including back pay and front pay, after November of 2019, and his commencement of employment with the Washoe Tribe of Nevada and California.

9.      In the alternative, whether Michael Erwine is entitled to seek damages for lost wages, including back pay and front pay, after March 11, 2021, following his rejection of Churchill County's offer of employment.

10.     Whether the Defendants are entitled to discretionary act immunity pursuant to NRS 41.032(2).

11.     Any damages recovered by Michael Erwine under claims based upon state law, including Article I, Section 8(5) of the Nevada Constitution, are capped at $100,000 total pursuant to NRS 41.035.

12.     Whether, by a preponderance of the evidence, Ben Trotter and Churchill County defamed Michael Erwine.

13.     Whether, by a preponderance of the evidence, Michael Erwine was constructively discharged from the employment of Churchill County in violation of public policy.

14.     Whether, by a preponderance of the evidence, Ben Trotter and Churchill County intentionally interfered with Michael Erwine's prospective employment relationship.

**VII. Exhibits**

**(a)     The following exhibits are stipulated into evidence in this case and may be so marked by the clerk:**

**i.Plaintiff's Exhibits**

1.     Employment Application submitted by M. Erwine to Churchill County for Deputy Sheriff Position - ERW0005-ERW0008

2.     Letter from Churchill County re: offer of employment for position of Detention Deputy at $21.44 per hour - ERW0009

3.     Code of Ethical Standards Acknowledgement - ERW011

4.     Job Description for Deputy Sheriff Detention with Churchill County signed M. Erwine – ERW0019-ERW0022

5.     Official Oath (Churchill County Sheriff's Office appointment of M. Erwine to serve as Deputy Sheriff) Doc #450497 - ERW0023-ERW0026

6.     Employee Evaluation Report (rating period from 12/9/15-3/9/16) from Churchill County Sheriff's Office re: M. Erwine - ERW0029-ERW0032

7.      Booking Sheet for Inmate # J16-1148 from Churchill County Sheriff's Office re: Andrew Allen Beaulieu (SSN Redacted) - ERW0037;

8.      Letter from Deputy Thompson to Sheriff Trotter re Inmate Beaulieu and Deputy Erwine - ERW0039-ERW0040

9.      Letter from Sgt Summers to Sheriff Trotter re Andrew Beuliiu and Dep Erwine - ERW0041-ERW0042

10.     Narrative report re Andrew Beaulieu - ERW0043

11.     Security Unit Observation Sheet - ERW0044

12.     Word document from Erwine's computer with notes from Beaulieu's incident - ERW0045-ERW0046

13.     Incident Report from Deputy Jabines re taser with Maes - ERW0047

14.     Taser Report - ERW0048-ERW0050

15.     Employee Action Notice re: M. Erwine's resignation effective 10/10/2016 - ERW0051

16.     Letter of Separation from Churchill County Sheriff's Office - ERW0052

17.     Memo to Personnel File re- Failure to Follow proper chain of 10/10/16 command - ERW0053-ERW0055

18.     Fax from Washoe County Sheriff to Churchill County Sheriff's Office requesting information regarding preemployment background check for M. Erwine (SSN Redacted) - ERW0064-ERW0065

19.     Chap 3.380 - Use of Force - ERW0409-ERW0412

20.     Chap 4.047 - Ethics (Detention) - ERW0466-ERW0467

21.     Chap 4.193 - Use of Force (Jail) - ERW0531-ERW0534

22.     CONFIDENTIAL Washoe County Supp Response to Subpoena: WC 0001-0130

23.     Washoe County Privilege Log – 688-689

24.      CONFIDENTIAL LVMPD Subpoena Response – ERWINE 001601-001603; ERWINE 001604-001678; ERWINE 001681-001729;

25.     Email from Trotter - DEF 00230

**ii.  Defendant's Exhibits**

500.    Daily Observation Reports bate-stamp numbered DEF00001-DEF00126;

501.    Letter of Recommendation from Michael Sean Giurlani bate-stamp numbered DEF00187;

502.    Supervisor's Comment dated August 11, 2016, bate-stamp numbered DEF00195;

503.    Counseling Note dated October 7, 2016, bate-stamp numbered DEF00194;

504.    CONFIDENTIAL Erwine's 2016 Income Tax Records bate-stamp numbered ERWINE001344-00135;

505.    CONFIDENTIAL Erwine's 2017 Income Tax Records bate-stamp numbered ERWINE001420;

506.    CONFIDENTIAL Erwine's 2018 Income Tax Records bate-stamp numbered  ERWINE001497-001498;

507.    CONFIDENTIAL Erwine's 2019 Income Tax Records bate-stamp numbered ERWINE001596-01598;

**(b)     As to the following exhibits, the party against whom the same will be offered objects to their admission on the grounds stated:**

**i. Plaintiff's exhibits and objections to them:**

26.     Incident Report From Z. White re: mistreatment of man that was booked in blueroom - ERW0038; Hearsay (FRE 802)

27.     Letter from Washoe County Sheriff's Office to Erwine withholding offer of employment because of disqualification - ERW0066; Hearsay (FRE 802)

28.     Email from Las Vegas Metro Police Department indefinitely disqualified from eligibility based of employment history -ERW0067; Hearsay (FRE 802);

29.     Letter from Carson City Department of Alternative Sentencing disqualifying eligibility for employment - ERW0068; Hearsay (FRE 802)

30.    Letter from Douglas County Sheriff's Office unsuccessful background evaluations - ERW0069; Hearsay (FRE 802)

31.    Letter to Mark A. Wright from Mark Wright re: letter of recommendation for M. Erwine - ERW0070; Relevance (FRE 402); Hearsay (FRE 802)

32.    Letter North Las Vegas to M. Erwine ineligible to continue in the employment process - ERW0071; Hearsay (FRE 802)

33.    Letter from Reno Police Department to M. Erwine rejected application - ERW0072; Hearsay (FRE 802)

34.    Letter from DPS Rejecting Erwine from Employment – ERW0620; Hearsay (FRE 802)

35.     Chap 7 Investigations Division - ERW0590; Relevance (FRE 402)

36.    Affidavit of Matthew Maes - ERW0616-ERW0617; Hearsay (FRE 802);

37.    Affidavit of Andrew Allen Beaulieu - ERW0618-ERW0619; Hearsay (FRE 802)

38.    Recording of St. Summers threatening Erwine after incident involving Samuel Davis; Relevance (402); Prejudicial (FRE 403) ; Prior Bad Acts (FRE 404);

39.    Certification of Records from Fallon PD: 687; Relevance (FRE 402); Prejudicial (FRE 403); Prior Bad Acts (FRE 404);

40.    Video and Documents in Response to Subpoena to Fallon PD; Relevance (FRE 402); Prejudicial (FRE 403); Prior Bad Acts (FRE 404);

41.    PLPT Background Letter: 690; Hearsay (FRE 802);

42.    Timmons Texts - 696-705; Relevance (FRE 402); self-serving statements of Plaintiff Erwine;

43.    Letter from Jimmy Thomas - 1338-1341; Relevance (FRE 402); Prejudicial (FRE 403); Prior Bad Acts (FRE 404); Hearsay (FRE 802);

44.    LVMPD Emails re Ranking - 1342-1343; Hearsay (FRE 802);

45.     Jimmy Thomas Declaration -1599; Relevance (FRE 402); Prejudicial (FRE 403); Relevance (FRE 402); Prejudicial (FRE 403); Prior Bad Acts (FRE 404); Hearsay (FRE 802);

46.     CONFIDENTIAL LVMPD Subpoena Response - 1600-1731; Defendants object to those portions of this Exhibit bate-stamp numbered ERWINE 001602-001603; 001679-001680 AND 001730-001731 on hearsay and double hearsay grounds (FRE 802)

47.     Declaration of Casey Ryan: 1732; Hearsay (FRE 802); late-disclosed documents (FRCP 37(c)(1);

48.     Declaration of Leslie Hawley: 1733; Hearsay (FRE 802); late-disclosed documents (FRCP 37(c)(1);

49.     Certified Copy of City of Reno Rejection Letter: 1734; Hearsay (FRE 802);

50.     Churchill County's November 25, 2021 Responses to Plaintiff's First Request for Admission; Object to those portions of Churchill County's November 25, 2021, responses to requests for admissions which contain objections being admitted as evidence;

51.     Churchill County's First Supplemental Responses to Plaintiff's First Requests for Admission; Object to those portions of Churchill County's November 25, 2021, responses to requests for admissions which contain objections being admitted as evidence;

**ii. Defendant's exhibits and objections to them.**

508.    Letter of Recommendation from Don Gibson bate-stamp numbered DEF00188; OBJECTION – DUI Inadmissible as prejudicial and irrelevant per FRE 403, 609, and for a conviction occurring more than 10 years ago per NRS 50.095.

509.    Background Investigation Materials, Churchill County Sheriff's Office, bate-stamp numbered DEF00267-DEF00297; OBJECTION – DUI Inadmissible

as prejudicial and irrelevant per FRE 403, 609, and for a conviction occurring more than 10 years ago per NRS 50.095.

510.  Letter from Washoe Tribe of Nevada and California dated July 10, 2019, bate-stamp numbered ERWINE 000621; OBJECTION – FRE 403 irrelevant and prejudicial FRE 803 Hearsay

511.  Offer of Employment to Michael Erwine from Sheriff Richard Hickox dated March 11, 2021; OBJECTION – Settlement communication under FRE 408, Hearsay (FRE 802); late-disclosed documents FRCP 37(c)(1).

**(c) Electronic evidence:**

i. January 25, 2021 Video Deposition of Matthew Maes.

ii. February 9, 2021 Video Deposition of Aubrey Corwin.

Defendants do not intend to present electronic evidence for purposes of jury deliberations.

**(d) Depositions:**

**i. Plaintiff will offer the following depositions:**

1.      January 25, 2021 Video Deposition of Matthew Maes.  Mr. Maes is currently residing in Washington State, more than 100 miles from the place of trial in this matter.  See FRCP 32(a)(4)(B).

2.      February 9, 2021 Video Deposition of Aubrey Corwin. Ms. Corwin is currently residing in Colorado, more than 100 miles from the place of trial in this matter.  See FRCP 32(a)(4)(B).

**ii. Defendant will offer the following depositions:**  Other than the potential use of deposition testimony for impeachment purposes, none

**(e) Objections to depositions:**

**i. Defendant objects to plaintiff's depositions as follows:**

1.      Defendants do not object to the use of deposition testimony in the event the witness in question is located more than 100 miles from the place of trial.

In so doing, the Defendants do not waive any objections made to the testimony of any such witnesses during the depositions.

ii. **Plaintiff objects to defendant's depositions as follows:**

**VIII. The following witnesses may be called by the parties at trial:**

**(a) Plaintiff's Lay Witnesses:**

1.      Michael Erwine – c/o Luke Andrew Busby, Ltd. 316 California Ave, Reno NV 89509 – Mr. Erwine Is the plaintiff in this matter and may testify as to his knowledge of the facts in this case, including but not limited to, the circumstances surrounding his termination from the Churchill County Sheriff's Office and the impact on his career as a result of the statements of Sheriff Trotter.

2.      Former Sheriff Benjamin Trotter, c/o Katherine F. Parks, Esq., Thorndal Armstrong, 6590 S. McCarran Blvd. Suite B., Reno, NV 89509.  Sheriff Trotter is the defendant in this matter and may testify as to his knowledge of the facts in this case, including but not limited to his statements about Mr. Erwine in his October 20, 2016 Memorandum.

3.      Matthew Maes, Contact Information Unknown – Mr. Maes was an inmate at the Churchill County Jail during the time that Mr. Erwine worked there, and may testify as to his knowledge of the facts in this case, including but not limited to the treatment of inmate Beulieu and the incident involving Maes.

4.      Zachary White. Contact Information Unknown – Mr. White was an inmate at the Churchill County Jail during the time that Mr. Erwine worked there, and may testify as to his knowledge of the facts in this case, including but not limited to the treatment of inmate Beulieu.

5.      Andrew Allen Beaulieu, P.O. Box 1102, Fallon, Nevada, 89407, (775) 301-9103. Mr. Beaulieu was an inmate at the Churchill County Jail during the time that Mr. Erwine worked there, and may testify as to his knowledge of the facts in this case, including but not limited to his treatment at the Jail.

6.      Don Gibson – (redacted address in public court filings: See NRS 289.025) Mr. Gibson was Erwine's instructor at the police academy and may testify as to his knowledge of the facts in this case, including but not limited to Erwine's performance as a police officer.

7.      Deputy Matt Timmons – Mr. Timmons was a Deputy at the Churchill County Sheriff's Office during the time that Mr. Erwine worked there, and may testify as to his knowledge of the facts in this case, including but not limited to Erwine's performance as a police officer.

8.      Terry Bernard – Las Vegas Metropolitan Police Department 400 S. Martin L. King Boulevard, Las Vegas, Nevada, 89106, 702-828-3111. Mr. Bernard was a background investigator at LVMPD, and may testify as to his knowledge of the facts in this case, including but not limited to Mr. Erwine's application for employment at LVMPD, the background investigation into Mr. Erwine, and LVMPD's reasons for not hiring Mr. Erwine.

9.      Jerry Baldridge – Washoe County Sheriff's Office, 911 Parr Blvd. Reno, NV 89512, 775-382-3001.  Mr. Baldridge authored the letter dated January 17, 2017 rejecting Erwine from being considered for employment at the WCSO and may testify as to his knowledge of the facts in this case, including the reasons for Erwine's rejection from WCSO.

10.     Tad Fletcher, Carson City Department of Alternative Sentencing, 885 E Musser St, Carson City, NV 89701 (775) 887-2528.  Mr. Fletcher authored the letter dated September 8, 2017 rejecting Erwine from being considered for employment at CCDAS and may testify as to his knowledge of the facts in this case, including the reasons for Erwine's rejection from CCDAS.

11.     Paul T. Howell, Douglas County Sheriff's Office, PO Box 218, Minden, Nevada, 89423. 775-782-9900. Mr. Howell authored the letter dated September 12, 2017 rejecting Erwine from being considered for employment at DCSO and

may testify as to his knowledge of the facts in this case, including the reasons for Erwine's rejection from DCSO.

12.     Officer L. Lee #11848, North Las Vegas Police Department. 2332 N. Las Vegas Blvd, North Las Vegas, NV 89030. 702-633-9111.  Mr. Lee authored the letter dated November 14, 2017 rejecting Erwine from being considered for employment at NLVPO and may testify as to his knowledge of the facts in this case, including the reasons for Erwine's rejection from NLVPO.

13.     Detective Bowden, Reno Police Department, PO Box 1900, Reno, NV 89505, 775-334-2121.  Mr. Bowden authored the letter dated March 1, 2018 rejecting Erwine from being considered for employment at RPD and may testify as to his knowledge of the facts in this case, including the reasons for Erwine's rejection from RPD.

14.     Officer Jessica Zamora – Officer Jessica Zamora, Fallon Police Department, 55 W Williams Ave., Fallon, Nevada 89406-2999, 775-423-2111. Officer Zamora filed a complaint against St. Summers with the Fallon police department and may testify as to her knowledge of the facts in this case.

15.     Deputy Mike Davis - c/o Katherine F. Parks, Esq., Thorndal Armstrong, 6590 S. McCarran Blvd. Suite B., Reno, NV 89509. Deputy Davis was a field training officer who trained Erwine and may testify as to his knowledge of the facts in this case

16.     Sergeant Summers – c/o Katherine F. Parks, Esq., Thorndal Armstrong, 6590 S. McCarran Blvd. Suite B., Reno, NV 89509 Testify as to conversations with Erwine surrounding his termination – authenticate his own voice on recording

17.     Captain Matheson – c/o Katherine F. Parks, Esq., Thorndal Armstrong, 6590 S. McCarran Blvd. Suite B., Reno, NV 89509. Captain Matheson conducted "investigation" into Beaulieu incident and may testify as to his

knowledge of the facts in this case, including but not limited to the circumstances surrounding Mr. Erwine's termination from Churchill County.

18.    Jimmy Thomas - Jimmy Thomas, Inmate #55004 1721 Snyder Ave. Carson City, NV 89701, Mr. Thomas can testify to his knowledge of the facts in this case, including but not limited to, his treatment at the Churchill County Jail as described in Mr. Erwine's Amended Complaint.

19.    Jessee Nuckolls – c/o Katherine F. Parks, Esq., Thorndal Armstrong, 6590 S. McCarran Blvd. Suite B., Reno, NV 89509. Mr. Nuckolls was Mr. Erwine's supervisor at the Churchill County Jail, and may testify as to his knowledge of the facts in this case, including but not limited to Mr. Erwine's performance at the Jail.

20.    Jolie Jabines/Roat – c/o Katherine F. Parks, Esq., Thorndal Armstrong, 6590 S. McCarran Blvd. Suite B., Reno, NV 89509.  Ms. Jabines authored the statement in Mr. Erwine's employee file at ERW0047, and may testify as to her knowledge of the facts in this case, including but not limited to, the incident involving Matthew Maes that occurred on October 9, 2016.

21.    Darren Thompson – c/o Katherine F. Parks, Esq., Thorndal Armstrong, 6590 S. McCarran Blvd. Suite B., Reno, NV 89509.  Mr. Thompson authored the statement in Mr. Erwine's employee file at ERW0039, and may testify as to his knowledge of the facts in this case, including but not limited to, the incident involving Andrew Beaulieu that occurred on October 8, 2016.

22.    Mark Write, 3404 Imperial Way Apt. E, Carson City, Nevada, 89706, (775) 430-0886. Write is a former supervisor of Erwine who authored a reference letter contained in Erwine's employee file, and may testify as to his knowledge of the facts in this case, including but not limited to Erwine's professionalism and performance in the law enforcement/ security field.

23.    Casey Ryan, 950 US Highway 395 South, Gardnerville, NV 89410, 1 775-265-7540. Mr. Ryan is a Sergeant at Washoe Tribe Police Department. Mr. Ryan

was Mr. Erwine's background investigator during the hiring process. Mr. Ryan can testify to his knowledge of Mr. Erwine's background investigation.

24.     Leslie Hawley, Human Resources Department, Pyramid Lake Paiute Tribe, PO Box 256, Nixon, Nevada 89424. 775-574-1000. Ms. Hawley is a human resources manager at the Pyramid Lake Paiute Tribe and authored the letter disclosed at ERW 690. Ms. Hawley conducted Mr. Erwine's background investigation during his hiring process. Ms. Hawley can testify to her knowledge of the facts in this case, including but not limited to Mr. Erwine's background investigation.

25.     Scott Olson, Las Vegas Metropolitan Police Department 400 S. Martin L. King Boulevard, Las Vegas, Nevada, 89106, 702-828-3111. Mr. Olson is a background investigator at LVMPD. Mr. Olson conducted Mr. Erwine's background investigation during his hiring process. Mr. Olson can testify to his knowledge of the facts in this case, including but not limited to Mr. Erwine's background investigation.

26.     Zack Westbrook, 950 US Highway 395 South, Gardnerville, NV 89410, 775-265-7540. Mr. Westbrook is Chief of Police Washoe Tribe Police Department. Mr. Westbrook can testify to his knowledge of the facts in this case, including but not limited to Mr. Erwine's overall performance as an officer as well as to the background that was conducted prior to Mr. Erwine's employment.

**Plaintiff's Expert Witnesses**

1.     Gilbert Coleman, Ph.d. Pine View Court Reno, NV 89511 Phone: 775-852-3252 Mr. Coleman is an economist who will testify as to his opinions in this case as to Mr. Erwine's economic damages, as further described in his report and associated expert witness disclosures.

2.     Michael S. Giurlani, (redacted address in public court filings: See NRS 289.025). Mr. Giurlani is a retired peace officer who will testify as to his opinions

in this case as to employment practices for peace officers in the State of Nevada and Mr. Erwine's allegations that his reputation and career prospects were injured by the actions of the Defendants, as further described in his report and associated expert witness disclosures.

3.      Ronald Dreher, PO Box 40502 Reno, Nevada 89504 775-830-8877 Mr. Dreher is a police practices expert who will testify as to his rebuttal opinions in this case in response to the Defendant's expert Aubrey Corwin, as further described in Mr. Dreher's report and associated expert witness disclosures.

**(b) Defendant's witnesses:**

1.  Michael Erwine, c/o Luke Busby, 316 California Avenue, 82, Reno, Nevada, 89509; (775) 453-0112;

2.  Ben Trotter, c/o Katherine Parks, 6590 S. McCarran Blvd, Suite B, Reno, Nevada, 89509, (775) 786-2882;

3.  Shawn Summers, Post Office Box 1781, Fallon, Nevada, 89407, (775) 427-5736;

4.  Michael Matheson, 456 Ranchland Way, Fallon, Nevada, 89406, (775) 427-5225;

5.  Jolie Roat, c/o Katherine Parks, 6590 S. McCarran Blvd, Suite B, Reno, Nevada, 89509, (775) 786-2882;

6.  Mike Davis, c/o Katherine Parks, 6590 S. McCarran Blvd, Suite B, Reno, Nevada, 89509, (775) 786-2882;

7.  Lee Orozco, c/o Katherine Parks, 6590 S. McCarran Blvd, Suite B, Reno, Nevada, 89509, (775) 786-2882;

8.  Darren Thompson, 315 E. Main Street Unit 1155, Fernley, Nevada, 89408, (775) 287-7145,

9.  Samuel White, c/o Katherine Parks, 6590 S. McCarran Blvd, Suite B, Reno, Nevada, 89509, (775) 786-2882;

10. Brian Miller, c/o Katherine Parks, 6590 S. McCarran Blvd, Suite B, Reno, Nevada, 89509, (775) 786-2882;

11. Chris Burton, c/o Katherine Parks, 6590 S. McCarran Blvd, Suite B, Reno, Nevada, 89509, (775) 786-2882;

12. Geoff Stark, c/o Katherine Parks, 6590 S. McCarran Blvd, Suite B, Reno, Nevada, 89509, (775) 786-2882;

13. Jesse Nuckolls, c/o Katherine Parks, 6590 S. McCarran Blvd, Suite B, Reno, Nevada, 89509, (775) 786-2882;

**Defendants' Expert Witnesses**

1.      Aubrey Corwin, Vocational Diagnostics, Inc., 2828 N. Central Ave., Suite 1031, Phoenix, AZ, 85004

**IX. The attorneys or parties have met and jointly offer these three trial dates:** The trial in this matter is scheduled to commence on February 28, 2022. Calendar call is set for February 7, 2022.

**Plaintiff's Motions in Limine**

3.      Exclude Erwine's Criminal History

4.      Exclude Erwine's Employment History Prior to Churchill County

5.      Limit Testimony of Defendant's Expert and Exclude Legal Opinions

**Defendants' Motions in Limine:**

1.      Exclude testimony of Gilbert Coleman;

2.      Exclude testimony of Michael Giurlani;

3.      Exclude witnesses and documents disclosed after the expiration of the discovery deadline;

4.      Exclude affidavits and declarations offered by Erwine

5.      Exclude all evidence and/or testimony related to Jimmy Thomas incident;

6.      Exclude all evidence and/or testimony related to Lacy Habberstead incident;

7.      Exclude all evidence and/or testimony related to Samuel Davis incident;

8.      Exclude all evidence and/or testimony related to incident(s) involving allegations that Sheriff's Office employees improperly searched cell phones of female inmates

**X.  It is estimated that the trial will take a total of 10-14 days:**

APPROVED AS TO FORM AND CONTENT:

**DATED** this <u>Friday, January 28, 2022</u>

By:  <u>Katherine F. Parks, Esq.</u>
KATHERINE F. PARKS, ESQ.
THORNDAL ARMSTRONG
6590 S. MCCARRAN BLVD. SUITE B.
RENO, NV 89509
*ATTORNEY FOR THE DEFENDANT*

By:  <u>Luke Busby, Esq.</u>
LUKE BUSBY, ESQ.
NEVADA STATE BAR NO. 10319
316 CALIFORNIA AVE #82
RENO, NV 89509
775-453-0112
LUKE@LUKEANDREWBUSBYLTD.COM
*ATTORNEY FOR PLAINTIFF*

1

2                        **XI. ACTION BY THE COURT**

3      This case is set for court/jury trial on the fixed/stacked calendar on Monday,

4      February 28, 2022, Calendar call will be held on Monday, February 7, 2022.

5

6          DATED: February 3, 2022.

7                                               _____
                                                ROBERT C. JONES
8                                               UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28