1    Katherine F. Parks, Esq. - State Bar No. 6227
2    Thorndal Armstrong Delk Balkenbush & Eisinger
    6590 S. McCarran Blvd., Suite B
3    Reno, Nevada 89509
    (775) 786-2882
4    kfp@thorndal.com
5    Attorneys for Defendants
    CHURCHILL COUNTY AND
6    BENJAMIN TROTTER

7

## UNITED STATES DISTRICT COURT

8

## DISTRICT OF NEVADA

9

| | |
|---|---|
| 10   MICHAEL ERWINE, | CASE NO.  3:18-cv-00461-RCJ-CSD |
| 11            Plaintiff, | **DEFENDANTS' TRIAL BRIEF** |
| 12   vs. | |
| 13   CHURCHILL COUNTY, a political subdivision | |
| 14   of the State of Nevada; CHURCHILL COUNTY SHERIFF BENJAMIN TROTTER; and DOES 1 | |
| 15   through 10 inclusive, | |
| 16            Defendants. | |

17

18       COME NOW Defendants, CHURCHILL COUNTY and BENJAMIN TROTTER, by and

19 through their attorneys of record, Thorndal Armstrong Delk Balkenbush & Eisinger, and

20 pursuant to the Court's Amended Order Regarding Trial (Doc. No. 143) hereby submit their

21 Trial Brief.

22

23                          **I**

24                 **Introduction**

25       This is an employment case arising out of the alleged constructive discharge from

26 employment of Michael Erwine from the Churchill County Sheriff's Office on October 10, 2016.

27 Erwine filed his complaint on September 28, 2018, and an amended complaint on August 6,

28 2020.  The amended complaint contains a claim premised upon 42 U.S.C. §1983 and the

Fourteenth Amendment of the United States Constitution and Article 1, §8(5) of the Nevada Constitution based upon the alleged violation of a liberty interest without adequate process. Erwine seeks damages against both Ben Trotter, former Sheriff of Churchill County, and Churchill County under this particular liberty interest theory of relief. Mr. Trotter is sued individually for his participation in the alleged constitutional violation and Churchill County is sued on the basis of Mr. Trotter's position as a policy-making official for Churchill County at the time of the alleged violation. Erwine also seeks damages under several state tort claims, including defamation, intentional interference with prospective employment opportunities, and tortious discharge.

## II

### Underlying Facts

Erwine worked as a deputy sheriff at the Churchill County Sheriff's Office from December 9, 2015, until October 10, 2016, when he resigned in lieu of termination. Erwine was a probationary employee at the time of his separation from employment with Churchill County. Following Erwine's separation from employment, Trotter prepared a memorandum dated October 10, 2016, concerning the reasons for his decision to terminate Erwine's employment during his probationary period. The memorandum was placed in Erwine's personnel file but was not shown to Erwine. Erwine claims that the statements in the memorandum are false and defamatory. Mr. Trotter and the County deny Erwine's allegations in this regard. In December of 2016, Churchill County received a request from the Washoe County Sheriff's Office for a copy of Erwine's personnel file, accompanied by an authorization for release of the information to WCSO signed by Erwine. Churchill County complied with the request.

Following his separation from employment with Churchill County, Erwine worked as a security guard for Allied Universal from April 25, 2017, to January 18, 2018. Thereafter, from

January 8, 2018, through April 4, 2018, Erwine worked as a police officer with the Pyramid Lake Paiute Tribe.  Erwine was terminated by the Pyramid Lake Paiute Tribe for failure to have passed his probationary period.  Erwine was again employed as a security officer with a company called Triumph Protection Group from June 28, 2018, through October 27, 2019.  In November of 2019, Erwine began working as a police officer with the Washoe Tribe of Nevada and California.  At the time of his deposition on December 17, 2020, Erwine had completed his one year probationary period with the Washoe Tribe and was earning $25.85 per hour plus medical benefits.  During his deposition, Erwine admitted that his position with the Washoe Tribe is in the field (law enforcement) in which he desires to be employed.  *See,* Exhibit 1, deposition of Michael Erwine, p. 23.  Erwine also testified that, in his position as a police officer with the Washoe Tribe, his job duties include, "everything you can imagine a general law enforcement officer handles."  *Id.* at 18.  Although Erwine did not pass his probationary period with the Pyramid Lake Paiute Tribe, Erwine testified that his duties with that agency included the same duties he has currently with the Washoe Tribe.  *Id.* at 42.  He further testified that, with the Pyramid Lake Paiute Tribe, his job duties included, "everything from minor traffic enforcement to in-depth investigations of crimes."  *Id.* at 42-43.

Erwine was convicted of driving under the influence in June of 2011.  Prior to being hired by the Churchill County Sheriff's Office, Erwine applied for, and was rejected from, law enforcement positions with the Washoe County Sheriff's Office, the Sparks Police Department, the Lyon County Sheriff's Office, the Fallon Tribal Police, and the Washoe Tribal Police.

On March 11, 2021, current Churchill County Sheriff Richard Hickox offered Erwine a position as a deputy sheriff with Churchill County.  *See,* Exhibit 2, Offer of Employment.  In connection with this offer of employment, Erwine was advised that his employment would not be subject to completion of a 12 month probationary period and that his starting wage would be

$27.30 (representing the current hourly wage for patrol deputies with like experience at the Churchill County Sheriff's Office). *Id.* The offer included additional terms concerning restoration of Erwine's sick leave and vacation time. Sheriff Hickox also advised Erwine that the Sheriff's Office was willing to work with him on a mutually agreeable time frame for him to meet the additional requirement of residing within a 25 minute response to time to the Sheriff's Office. Erwine rejected the County's offer of employment.[1] This offer was not contingent upon Erwine dismissing or compromising any of his claims in the instant matter and is and was not a communication made for purposes of settlement negotiations.

As this case goes to trial, Erwine remains employed as a law enforcement officer with the Washoe Tribe.

## III

## Legal Issues

**I.**   **Erwine's Liberty Interest Claim Premised Upon the Fourteenth Amendment of the United States Constitution and Article 1, Section 8(5) of the Nevada Constitution will be Subject to a Motion for Directed Verdict.**

Erwine's §1983 claim, whether pled against Trotter individually or Churchill County under a *Monell* theory, is one for violation of an alleged liberty interest protected by the Fourteenth Amendment. Erwine was a probationary employee at the time of his resignation from employment with the County and had no protected property interest in continued employment. As a result, Erwine's only avenue for recovery is under the very specific "stigma plus" test carved out by the Courts in particular circumstances. As fully articulated by the Court in its order denying Erwine's motion for summary judgment on the federal claim, in order to

---

[1] A review of Erwine's Amended Complaint reveals that he had problems with then Sergeant Shawn Summers and former Sheriff Ben Trotter. Neither Summers nor Trotter are currently associated with the Churchill County Sheriff's Office and, as discussed above, Richard Hickox is now the commanding officer of same.

- 4 -

make out a prima facie case under this legal theory, Erwine must show that the Defendants deprived him of a protected liberty interest without adequate process. In the public employment context, Erwine must show that he was terminated from his employment in conjunction with a stigmatizing statement. *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972). Erwine must prove both of these elements and, in addition, must show that the statement was false and, to be sufficiently stigmatizing, that it impaired his reputation for honesty or morality. *Tibbetts v. Kulongoski,* 567 F.3d 529, 535-36 (9th Cir. 2009); *see also, Brady v. Gebbie,* 859 F.2d 1543, 1552 (9th Cir. 1988).

Further, the statements must be so severe as to, "effectively exclude the employee completely from [his] chosen profession." *Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.,* 727 F.3d 917, 925 (9th Cir. 2013). As also pointed out by this Court, stigmatizing statements that merely cause, "reduced economic returns and diminished prestige, but not permanent exclusion from, or protracted interruption of, gainful employment within the trade or profession," do not constitute a deprivation of liberty." *Id.* The Ninth Circuit Court of Appeals has, "consistently held that people do not have liberty interests in a specific employer." *Llamas v. Butte Cmty. Coll. Dist.,* 238 F.3d 1123, 1128 (9th Cir. 2001). Rather, the due process clause protects a generalized right to choose one's field of private employment. *Id.* at 1128 (quoting *Conn v. Gabbert*, 526 U.S. 286, 292 (1999)).

Without conceding that Erwine was terminated from Churchill County's employ in connection with false, stigmatizing statements, the evidence at trial will be uncontroverted that Erwine obtained employment as a law enforcement officer with the Pyramid Lake Paiute Tribe on January 8, 2018, and, in fact, the parties have so stipulated for purposes of trial. Erwine was terminated from the Pyramid Lake Paiute Tribe during his probationary period effective April 4, 2018. Thereafter, in November of 2019, Erwine began working as a law enforcement officer for

the Washoe Tribe of Nevada and California, a law enforcement agency for which Erwine

continues to work at the present time. Erwine testified during his deposition that, in both of

these positions, he performed all of the duties of a law enforcement officer. In terms of his

current position, Erwine testified that his job duties include, "[e]verything you can imagine a

general law enforcement officer handles." *See,* Exhibit 1, p. 18. Erwine further testified that,

while not the "most desirable position" to him, his job with the Washoe Tribe "is a job in the

field that I wish to work in." *Id.* at 23. Erwine testified during his deposition that he could not

recall when he applied for a law enforcement position with the Paiute Tribe. However, he

estimated it was six to eight months prior to his hire date of January 8, 2018. *Id.* at 31-32.

According to Erwine's testimony, the hiring process in the law enforcement field generally takes

that amount of time to be completed. *Id.* at 32. Erwine did not sustain a protracted interruption

of employment in law enforcement as a result of any actions of Churchill County. Rather,

according to Erwine's own testimony, the hiring process in the field of law enforcement is fairly

lengthy as a rule.

These admissions are fatal to Erwine's §1983 claim against Trotter, as well as his §1983

claim against Churchill County premised upon the actions of Trotter as a final policy-making

official. The Defendants expect to move for judgment in their favor as a matter of law upon

conclusion of Erwine's case-in-chief on Erwine's §1983 claim.[2]

It is apparent that Erwine intends to argue at trial, and to the Court, that he is entitled to

judgment in his favor of his §1983 claim because the memorandum of October 10, 2016, was

placed in Erwine's file in violation of NRS 289.040. Erwine clearly believes that certain

admissions by the Defendants concerning treatment of the memorandum as related to several

---

[2]Should the Court grant judgment in the Defendants' favor under FRCP 50 of the federal claims for relief, the Defendants will move for dismissal of the state law claims on jurisdictional grounds so that those claims may be tried in Churchill County in accordance with NRS 13.020.

sections of Chapter 289 *compel* judgment in his favor. In other words, Erwine intends to argue that a violation of Chapter 289 equates to a violation of his due process rights under the Fourteenth Amendment. This is not the law.

While Chapter 289 does set forth procedural requirements applicable to law enforcement officers, these procedural requirements are not ends in themselves protected by the due process clause. *See, Olim v. Wakinekona*, 461 U.S. 238, 251 (1983). In enacting Chapter 289, the legislature provided for a specific remedy available to law enforcement officers aggrieved by an action of an employer for a violation of same. NRS 289.120 provides that, after exhausting any applicable internal or collectively bargained-for grievance procedures, an officer who believes his rights under Chapter 289 are violated may apply to the district court for judicial relief. This remedy also empowers the district court with authority to order appropriate injunctive or other extraordinary relief (such as, for example, a name-clearing hearing) to prevent further violation of Chapter 289's provision or any retaliatory conduct by the employer on account of an employee's actions in exercising his rights under same. *See,* NRS 289.120.

Erwine elected *not* to pursue such a remedy and, instead filed a due process claim in this Court under §1983. Erwine had no protected property interest in his job with Churchill County. As such, Erwine is limited to pursuing his due process claim as a liberty interest violation. Erwine cannot make out a prima facie liberty interest claim here based upon (among other things) the uncontroverted evidence the Erwine has not been effectively excluded completely from his career as a law enforcement officer.

The due process clause set forth at Article I, §8(5) of the Nevada Constitution is identical to that set forth in the United States Constitution and it must be analyzed at trial in the same manner as is Erwine's §1983 claim premised upon the Fourteenth Amendment. *See, Rodriguez v. Dist. Ct.*, 120 Nev. 798, 102 P.3d 41, 48, n. 22 (2004).

Nothing in the language of the statute suggests that the Nevada legislature intended to create due process rights greater than those protected by the Fourteenth Amendment in enacting the relevant provisions of Chapter 289 and the Nevada Supreme Court has never so held. Having elected not to proceed with an action authorized by NRS 289.120, Erwine must prove those elements required of a stigma-plus type liberty interest claim whether analyzed under the United States Constitution or Article 1, §8(5) of the Nevada Constitution. The uncontroverted evidence demonstrates that he cannot make out a prima facie case on this legal theory.

Erwine's §1983 claim against Churchill County is premised solely upon the fact that Trotter was a final policy-making official for Churchill County at the time of the events in question. As such, it is indistinguishable from a legal analysis standpoint from his claim against Trotter individually.

## II.   **Erwine's State Tort Claims**

### A. Defamation

In order to establish his claim for defamation, Erwine must demonstrate that Trotter made a false and defamatory statement of fact, that there was an unprivileged publication of the statement to a third person, that Trotter made the statement with knowledge of its falsity or reckless disregard for its truth, and that he sustained actual damages as a result. As a police officer, Erwine is considered a public figure. *See, Posadas v. City of Reno,* 109 Nev. 448, 851 P.2d 438, 442 (1993). As such, he must prove that Trotter entertained serious doubts as to the truth of the statements in the memorandum or had a high degree of awareness of the statements' probable falsity. Here, the Defendants will prove at trial that the statements in the October 10, 2016, memorandum are substantially true and that Trotter was not reckless with respect to same. Further, the statements set forth in the memorandum were made as required by NRS 239B.020 which mandates the provision of information to public safety agencies thereby implicating

- 8 -

privilege issues.  Defendants will also demonstrate at trial that Erwine did not suffer actual

damages as caused by the October 10, 2016, memorandum.

### B. Tortious Constructive Discharge

In order to establish his claim for tortious constructive discharge, Erwine must

demonstrate that his resignation was induced by an action and conditions that violate public

policy.  Erwine premises this claim on the notion that he was terminated because he reported

improper conduct of other officers to Trotter.  The evidence which will be established at trial will

not support Erwine's claim in this regard.  Rather, the evidence will demonstrate that the

decision made by Trotter with respect to Erwine's employment with the Churchill County

Sheriff's Office was based on Erwine's job performance.  Despite the manner in which Erwine

attempts to frame the circumstances surrounding his separation from employment with the

County, Erwine did, in fact, fail to report what he perceived as mistreatment of inmate Beaulieu

to superior officers and began conducting his own investigation into the conduct of other

employees of the Sheriff's Office.  Similarly, while Erwine has an opinion as to why his actions

in unholstering his taser during the Maes' incident was proper, it will be undisputed at trial that

he did engage in such action with respect to a trustee inmate who was kneeling on the ground

and posed no safety threat at the time.  The evidence at trial will not demonstrate that Erwine

was subjected to aggravated and intolerable conditions which would have led a reasonable

person to resign or that Trotter had knowledge, either actual or constructive, of any intolerable

conditions.  As a probationary employee, Erwine was subject to dismissal without cause.  He was

given the option to resign.  He took that option.  The evidence to be presented at trial will not

support that Erwine was terminated in violation of public policy of the State of Nevada.

/ / /

## C. Interference with Prospective Economic Advantage

In order to prove a claim of interference with prospective economic advantage, Erwine must show the existence of a prospective contractual relationship between Erwine and a third party of which the Defendants were aware, that the Defendants intended to harm Erwine by preventing the relationship, the absence of privilege and actual harm. Churchill County provided the October 10, 2016, memorandum to the Washoe County Sheriff's Office pursuant to that agency's request as required by NRS 239B.020. There will be no evidence at trial that Trotter intended to harm Erwine with respect to the memorandum or that Erwine suffered actual harm as a direct result of the memorandum.

## III.   Damages

### A.   State Tort Claims

Before turning to Erwine's claimed damages generally, any damages awarded to Erwine by the jury under his state tort claims, including his claim premised upon the due process clause set forth in the Nevada Constitution, are subject to the statutory cap on damages set forth at NRS 41.035. Under the state law tort cap, Erwine cannot recover more than $100,000.00 total under his state law claims and punitive damages are prohibited. As such, if the jury awards Erwine damages under any state law claim, the Defendants will request that they be reduced by the Court in accordance with NRS 41.035.

### B.   Damages

There is no evidence in this case to support inclusion of back pay or front pay on any jury instruction or verdict form in this case. Erwine has based his economic damage claim entirely on the proposed testimony of Gilbert Coleman. The Defendants have moved to exclude Coleman's testimony based upon the utter lack of foundation for same. More specifically, Coleman's opinion is focused solely on the Las Vegas Metropolitan Police Department and his opinion that

- 10 -

Erwine sustained between $912,567.00 and $6,144,811.00 in lost wages as a result of not being hired by that agency. In rendering this opinion, Coleman makes unfounded assumptions that Erwine would have been employed by LVMPD for 10, 15 and/or his entire work life expectancy but for the actions of the Defendants and that he would have been promoted up the ranks to sergeant and lieutenant. An expert's testimony regarding future lost earnings must be accompanied by a sufficient factual foundation before it can be submitted to the jury. *See, Gumbs v. International Harvester, Inc.*, 718 F.2d 88, 98 (3rd Cir. 1983). Here, there is no foundation whatsoever for this opinion and it is not helpful given that the Ninth Circuit has clearly held that a plaintiff does not have a liberty interest in a specific employer. *See, Llamas v. Butte Cmty. Coll. Dist.*, 238 F.3d 1123, 1128 (9th Cir. 2001).

When asked during discovery to provide all facts upon which he bases his claim for lost earnings, including the amount he claims to have lost in salary, compensation and/or income, Erwine responded in answers to written interrogatories as follows: "Objection. The question calls for a professional opinion from a lay witness; consequently the question is oppressive, harassing, and without a foundational showing of competency. I am seeking the amounts of compensation as disclosed in the Expert Report of Gilbert Coleman, Ph.D." *See,* Exhibit 3, Plaintiff's answer to Defendants' Interrogatory No. 8. At no time during discovery did Erwine supplement his responses to Defendants' interrogatories. Should the Court exclude Coleman's testimony on Defendants' motion in limine (denied by the Court without prejudice on February 7, 2022), Erwine cannot be permitted to ask for economic damages in the form of lost wages.

In the event Erwine is permitted to seek damages for lost wages, he should be precluded from asking for front pay beyond, at the very latest, November of 2019, when he gained employment as a law enforcement officer with the Washoe Tribe of Nevada and California. Further, it is uncontroverted that Churchill County offered to reinstate Erwine on March 11,

- 11 -

1    2021, and he should not be permitted to ask for damages in the form of front pay beyond that

2    date.

3        DATED this _16th_ day of February, 2022.

4

5                                    THORNDAL ARMSTRONG
                                     DELK BALKENBUSH & EISINGER

6                                    By: _____

7                                    Katherine F. Parks, Esq.
                                     State Bar No. 6227

8                                    6590 S. McCarran Blvd., Suite B
                                     Reno, Nevada 89509

9                                    (775) 786-2882

10                                   kfp@thorndal.com
                                     Attorneys for Defendants

11                                   Churchill County and
                                      Benjamin Trotter

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of THORNDAL ARMSTRONG DELK BALKENBUSH & EISINGER, and that on this date I caused the foregoing **DEFENDANTS' TRIAL BRIEF** to be served on all parties to this action by:

\_\_\_\_\_   placing an original or true copy thereof in a sealed, postage prepaid, envelope in the

United States mail at Reno, Nevada.

\_\_✓\_\_   United States District Court, District of Nevada CM/ ECF (Electronic Case Filing)

\_\_\_\_\_   personal delivery

\_\_\_\_   facsimile (fax)

\_\_\_\_\_   Federal Express/UPS or other overnight delivery

fully addressed as follows:

> **Luke Busby, Esq.**
> **316 California Ave., #82**
> **Reno, NV 89509**
> *Attorney for Plaintiff*

DATED this _10_ day of February, 2022.

_____

An employee of THORNDAL ARMSTRONG DELK BALKENBUSH & EISINGER