# EXHIBIT 1 –
# "Deposition of Michael Erwine"

# EXHIBIT 1 –
# "Deposition of Michael Erwine"

```
1                UNITED STATES DISTRICT COURT

2                      DISTRICT OF NEVADA

3

4    MICHAEL ERWINE, an            )
     individual,                   )
5                                  )
                 Plaintiff,        )
6                                  )
         vs.                       )   CASE NO.
7                                  )   3:18-cv-00461
     CHURCHILL COUNTY, a political )   RCJ-WGC
8    subdivision of the State of   )
     Nevada; CHURCHILL COUNTY SHERIFF)
9    BENJAMIN TROTTER; and DOES    )
     1 through 10, inclusive,      )
10                                 )
                 Defendants.       )
11   _____)

12

13

14              REMOTE VIDEOCONFERENCE
           DEPOSITION OF MICHAEL ANDREW ERWINE
15

16         Taken on Thursday, December 17, 2020

17                    At 8:59 a.m.

18

19                    Reno, Nevada

20

21

22

23

24   Job No. 688466

25   Reported by:  Sherry L. Graham, CCR #378
```

Page 18

1  Q. When did you first obtain employment after
2  you received your criminal justice Associate's
3  degree?
4  A. That would have been -- I believe my first
5  employment after I received that degree would have
6  been with a company called Allied Barton Security
7  Services. They were a security firm. I believe now
8  they are referred to as Allied Universal.
9  Q. How long have you been employed at the
10 Washoe Tribe?
11 A. Since November of last year.
12 Q. And what is your position?
13 A. Police officer.
14 Q. Are you a probationary officer or have you
15 completed any probationary period, if there was one?
16 A. I completed my one-year probation.
17 Q. What are your current duties?
18 A. I always have difficulty answering that.
19 Just general police duties. Everything you can
20 imagine a general law enforcement officer handles.
21 We are a fairly small department, so we don't have
22 other units to do in-depth investigations or
23 anything like that. So depending upon the incident,
24 the officer will pretty much handle it from
25 beginning to end no matter the severity.

1    Q.   What shift do you currently work in your
2  job with the Washoe Tribe?
3    A.   We rotate quite frequently.  My schedule
4  currently is Saturday -- I'm sorry.  Friday through
5  Monday from 7:00 a.m. to 5:00 p.m.
6    Q.   Since going to work for the Washoe Tribe in
7  November of 2019, have you applied to any other law
8  enforcement agencies?
9    A.   No.
10   Q.   Do you enjoy your position with the Washoe
11 Tribe?
12   A.   It's not the most desirable position for
13 me, but it is a job in the field that I wish to work
14 in.
15   Q.   Prior to working for the Washoe Tribe,
16 where were you employed?
17   A.   I was employed by Triumph Protection Group.
18 They were a private security contractor based out of
19 California.
20   Q.   Mr. Erwine, I would like you to take a look
21 at, and these are -- this is an exhibit from the
22 documents that I forwarded to everyone yesterday.
23 That is a document from Triumph Protection Group
24 Bates stamp Erwine 000620, So the number's in the
25 bottom right-hand corner.  It is a one-page document

Page 31

1  **Mr. Erwine, as our next exhibit a one-page letter**
2  **that says Pyramid Lake Paiute Tribe at the top.**
3  **It's dated December 5, 2017.  Erwine 000690.**
4      A.   Do you know what the title is as far as PDF
5  goes?
6      **Q.   I do not.  I do not.  It should state**
7  **something like Pyramid Lake Paiute Tribe.**
8      A.   Okay.  Bear with me while I go through
9  these.
10     **Q.   Certainly.**
11          MR. BUSBY:  Mike, it's the file that starts
12 with 12/5/17.
13          THE WITNESS:  Okay.  Got it.  All right.
14 BY MS. PARKS:
15     **Q.   Do you see that in front of you?**
16     A.   Yes.
17     **Q.   Do you recognize what's been marked as**
18 **Exhibit Number 3?**
19     A.   Yes.
20     **Q.   What is Exhibit Number 3?**
21     A.   This was a letter I received from the human
22 resources department of the Pyramid Lake Paiute
23 Tribe prior to my employment there.
24     **Q.   And when did you apply for employment at**
25 **the Pyramid Lake Paiute Tribe?**

Page 32

1    A.   I definitely would be estimating on that.
2  Just from my recollection, knowing how long the
3  hiring process is in law enforcement, I would say
4  six, eight months prior.
5    **Q.   How did you become aware of an opening with**
6  **the Pyramid Lake Paiute Tribe?**
7    A.   Actively looking for a job in law
8  enforcement for the last couple years, I would
9  routinely -- I know of a lot of law enforcement
10 agencies in Northern Nevada, so I would routinely
11 check agencies for openings.  This is one I never
12 applied to before.  I checked for an opening and
13 they happened to have one, so I just applied.
14   **Q.   Did you fill out a written application in**
15 **connection with your desire to go to work at the**
16 **Pyramid Lake Paiute Tribe?**
17   A.   On this one, I don't recall if it was
18 written or on the computer.
19   **Q.   So maybe something that you typed up and**
20 **then submitted online?**
21   A.   Yeah.  It would have either been that or an
22 actual written on paper.  I don't recall for this
23 one specifically.
24   **Q.   When you applied for the Pyramid Lake**
25 **Paiute Tribe, were you asked to include information**

Page 42

1  agencies, you are basically graded everyday for
2  approximately three months.  Those are pictures that
3  the program -- that they use there for grading was
4  actually electronic.  That was, that was the first
5  time I have seen such a thing.  Normally, they are
6  on paper.  They use theirs electronically on the
7  computer.  Those are broken down into dates with
8  numbers associated with -- some numbers are better
9  than others.  There were different categories, but
10 that is basically a picture of those daily reviews,
11 if you will, and its associated numbers.
12      Q.   Are these photographs that you took with
13 your phone or some other device?
14      A.   Yes.
15      Q.   So these are basically photographs that you
16 took on your phone?
17      A.   That's a picture of the computer screen,
18 yes.
19      Q.   How much was your salary or your hourly
20 rate of pay at the Paiute Tribe?
21      A.   $19.44 an hour.
22      Q.   What were your duties there?
23      A.   Same duties as I have right now, general
24 police officer duties.  Everything from minor
25 traffic enforcement to in-depth investigations of

Page 43

1  crimes.
2  Q.  Did the Paiute -- does the Paiute Tribe
3  have a detention division or were you a patrol
4  officer or both?
5  A.  No, it didn't have a detention division.  I
6  was just a patrol officer.
7  Q.  Where are the offices of the Paiute Tribe
8  located?
9  A.  Their administrative office and police
10 department are located in Nixon, Nevada.  It's just
11 south Pyramid Lake outside of Wadsworth.
12 Q.  Is that where you reported for duty?
13 A.  That was our office.  We didn't always go
14 there to report for duty.  Basically, when we hit
15 inside of our jurisdiction, that would be us
16 reporting for duty.  Me being a trainee and always
17 having a training officer, I essentially drove to
18 their house every morning and we left from their
19 house, is where I had to report personally.
20 Q.  How many members or officers did the Paiute
21 Tribe have at the time that you worked there?
22 A.  I don't recall specifically, but I do
23 believe it was even less than the department I have
24 now, so I would say less than ten.
25 Q.  Your answers to interrogatories, written

Page 283

1  CERTIFICATE OF REPORTER

2

3  STATE OF NEVADA )
                   ) ss.
4  COUNTY OF CLARK )

5

6       I, Sherry L. Graham, CCR No. 378, do hereby
   certify:  That I reported the remote videoconference
7  deposition of MICHAEL ERWINE, commencing on
   Thursday, December 17, 2020, at 8:59 a.m.
8
        That prior to being deposed, the witness was
9  duly sworn by me to testify to the truth, the whole
   truth and nothing but the truth.  That I thereafter
10 transcribed my said shorthand notes into typewritten
   form, and that the typewritten transcript of said
11 remote videoconference deposition is a complete,
   true and accurate transcription of my said shorthand
12 notes.  That prior to the conclusion of the
   proceedings, pursuant to NRCP 30(e) the reading and
13 signing of the transcript was requested by the
   witness or a party.
14      I further certify that I am not a relative or
   employee of counsel of any of the parties, nor a
15 relative or employee of the parties involved in said
   action, nor a person financially interested in said
16 action.
        IN WITNESS WHEREOF, I have set my hand in my
17 office in the county of Clark, State of Nevada, this
   29th day of December, 2020.
18

19

20

21                              _____
                                Sherry L. Graham, CCR No. 378
22

23

24

25

# EXHIBIT 2 -
# "Offer of Employment"

# EXHIBIT 2 -
# "Offer of Employment"



**Richard Hickox**
*Sheriff*

March 11, 2021

**Hand Delivered**
Michael Erwine

Dear Mr. Erwine:

On behalf of the Churchill County Sheriff's Office, I am pleased to offer you employment as a deputy sheriff with the Churchill County Sheriff's Office effective immediately. Your employment will not be subject to completion of a 12 month probationary period. Your assignment will initially be in the detention center and the starting wage will be $27.30, not including any additional benefits to which you will be entitled as an employee of Churchill County and/or the Churchill County Sheriff's Office. Additionally, you will be restored your sick leave balance of 77.65 hours and your annual leave accrual rate will be set at 12 hours per month. As a condition of your employment, you are required to reside within a 25 minute response time to the Sheriff's Office and we are willing to work with you on a workable time frame for the accomplishment of this requirement.

If you agree to these terms and conditions of employment, sign where indicated below and return this letter to my attention

I look forward to you becoming a valued member of our agency.

_____
Richard Hickox, Sheriff
Churchill County

_____
Michael Erwine

Churchill County, Nevada, a political subdivision of the State of Nevada, is an equal opportunity provider and employer

**Churchill County Sheriff's Office • (775) 423-3116 • Fax (775) 423-3298**
180 West A Street • Fallon, Nevada 89406
www.churchillcounty.org/sheriff

# EXHIBIT 3 -
"Plaintiff's Answer to Defendants' Interrogatory No. 8"

# EXHIBIT 3 -
"Plaintiff's Answer to Defendants' Interrogatory No. 8"

```
1  LUKE A. BUSBY, ESQ
   Nevada Bar No. 10319
2  LUKE ANDREW BUSBY, LTD.
   316 California Ave 82
3  Reno, Nevada 89509
   775-453-0112
4  luke@lukeandrewbusbyltd.com
   Attorney for the Plaintiff
5
```

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| MICHAEL ERWINE, | |
| Plaintiff, | Case No.: 3:18-cv-00461-RCJ WGC |
| vs. | |
| CHURCHILL COUNTY, a political subdivision of the State of Nevada; CHURCHILL COUNTY SHERIFF BENJAMIN TROTTER; and DOES 1 through 10 inclusive; | **PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST INTERROGATORIES** |
| Defendants. | |

**INTERROGATORY NO. 1**: State the names of all law enforcement agencies with whom you have ever submitted an application for employment as a law enforcement officer, or in any other capacity, from October 10, 2016, to the present.

**RESPONSE**: Washoe County Sheriff's Office, Nevada Department of Public Safety, Reno Police Department, Las Vegas Metropolitan Police Department, North Las Vegas Police Department, Sparks Justice Court, Carson City Department of Alternative Sentencing, Douglas County Sheriff's Office, Pyramid Lake Paiute Tribe, Reno-Sparks Indian Colony, Washoe Tribe of Nevada and California.

**INTERROGATORY NO. 2**: State the names of all law enforcement agencies with whom you ever submitted an application for employment as a law enforcement officer, or in any other capacity, from January 1, 2011, to October 10, 2016.

1

INTERROGATORY NO. 8: Do you claim to have lost any salary, income or compensation as a result of the incident or circumstances described in your First Amended Complaint? If so, state the amount you have lost in salary, compensation or income and/or the date you returned to work.

OBJECTION: The question calls for a professional opinion from a lay witness; consequently the question is oppressive, harassing, and without a foundational showing of competency.

RESPONSE: I am seeking the amounts of compensation as disclosed in the Expert Report of Gilbert Coleman, Ph.D.

INTERROGATORY NO. 9: Describe with specificity the circumstances surrounding your separation from employment from the Pyramid Lake Piute Tribe, including a description of why you failed to complete the Field Training (FTO) program and all performance deficiencies reported to you by any member of the Pyramid Lake Piute Tribe.

OBJECTION: This request is not relevant and is unreasonably cumulative, duplicative, or unnecessarily burdensome in light of any benefit. 8 Wright, Miller & Marcus, Federal Practice and Procedure Civil 2d § 2008 (cited by Jackson v. Montgomery Ward & Co., 173 F.R.D. 524, 526 (D. Nev. 1997)). Mr. Erwine's employment with PLPT is not relevant to any issue in this case.

RESPONSE: I was employed with the Pyramid Lake Paiute Tribe (PLPT) from January 8th, 2018 to April 4th, 2018. On my last day of employment, I was notified that I did not successfully complete the field training program and was being released from employment. The events leading up to this are as follows: In late 2017 I applied for a position as a Police Officer with PLPT. Prior to my employment, I underwent and

6