1   Katherine F. Parks, Esq. - State Bar No. 6227
2   Thorndal Armstrong Delk Balkenbush & Eisinger
    6590 S. McCarran Blvd., Suite B
3   Reno, Nevada 89509
    (775) 786-2882
4   kfp@thorndal.com
5   Attorneys for Defendants
    CHURCHILL COUNTY AND
6   BENJAMIN TROTTER

7                    **UNITED STATES DISTRICT COURT**

8                          **DISTRICT OF NEVADA**

9

10  MICHAEL ERWINE,                          CASE NO.  3:18-cv-00461-RCJ-CSD

11                        Plaintiff,
                                            **REPLY MEMORANDUM OF POINTS**
12  vs.                                     **AND AUTHORITIES IN SUPPORT OF**
                                            **DEFENDANTS' EMERGENCY**
13  CHURCHILL COUNTY, a political subdivision **MOTION FOR CONTINUANCE OF**
14  of the State of Nevada; CHURCHILL COUNTY **TRIAL AND SANCTIONS PURSUANT**
    SHERIFF BENJAMIN TROTTER; and DOES 1    **TO FRCP 37**
15  through 10 inclusive,

16                        Defendants.

17

18          COME NOW Defendants, CHURCHILL COUNTY and BENJAMIN TROTTER, by and

19  through their attorneys of record, Thorndal Armstrong Delk Balkenbush & Eisinger, and submit

20  their memorandum of points and authorities in support of their emergency motion for

21  continuance of trial and for sanctions pursuant to LR 7-4 and FRCP 37.  Defendants have

22  endeavored to be brief in this submission and to address only those arguments made by Plaintiff

23  in his response.

24          The Defendants' motion involves the failure of Plaintiff to disclose highly relevant

25  documents that do damage to his case until February 11, 2022, after the parties filed the joint

26  pre-trial order and on the day that all other pre-trial motions and submissions were due.  This is

27  not, as Plaintiff's counsel argues, a discovery dispute that is capable of being resolved informally

28

                                    - 1 -

between the parties.  The Defendants did not, as is argued by Plaintiff, fail to meet and confer with his attorney prior to filing the instant motion (an action which the Defendants do not take lightly and in which their attorney takes no pleasure).  Plaintiff's counsel's argument that the Defendants did not properly meet and confer with him is belied by email communications and by counsel's own declaration which describes several phone calls between counsel on the subject matter of this motion.  At page 7 of his response, Plaintiff suggests that he attempted to informally resolve these issues but that the Defendants insisted on "immediately filing the motion" without allowing him to "discover" additional information from the office of Plaintiff's first attorney, Jason Guinasso.  That is not the case.  The Defendants initially contacted counsel on February 14th to initiate a meet and confer conference. *See,* Exhibit 16, email from Parks to Busby dated February 14, 2022.  Counsel then discussed the issues several times by phone as is noted in the email communication attached to Defendants' motion as Exhibit 10.  On Wednesday, February 16, 2022, the undersigned corresponded again with Plaintiff's counsel and asked if had any further information relevant to the motion. *See,* Exhibit 17, email from Parks to Busby dated February 16, 2022.  The undersigned noted that, given the impending trial date, she had no time to further delay bringing these issues to the attention of the Court. *Id.*  The Defendants have met any and all requirements to meet and confer with Plaintiff on these issues.

In his response, Plaintiff's counsel suggests that the Court should deny the instant motion because the Defendants were aware of the existence of the subpoenas to other law enforcement agencies and the fact that "at least some" responses existed; i.e. that Plaintiff had produced a response from LVMPD and WCSO.  Counsel further requests that the Court be critical of the Defendants' discovery efforts in this case by suggesting that she should have served subpoenas on other law enforcement agencies with which the Plaintiff applied following his separation from employment with Churchill County.  He does so with the knowledge that the *only* authorization

for the release of information made confidential by NRS 239B.020 he agreed to provide to the Defendants was one directed to LVMPD, despite the Defendants' request for such authorizations. *See,* Exhibit 18, emails between counsel concerning authorizations. Because the Defendants had already served Plaintiff with a demand for production of all documents obtained by subpoenas to non-parties, the Defendants did not create a discovery dispute out of the refusal of Erwine to sign authorizations for the release of records from other agencies.

Plaintiff next argues that, because the Defendants were aware of the existence of subpoenas served on law enforcement agencies by Jason Guinasso, it should have known that Plaintiff's response to Defendants' requests for production of documents "made no sense" and should have brought the subject to counsel's attention. In so doing, counsel references' statements he made in Court on May 14, 2019, and his disclosure of documents from WCSO responsive to a subpoena disclosed on October 20, 2020. These events preceded the date on which Defendants served Plaintiff with their requests for production of all documents obtained by Plaintiff in connection with his subpoenas to non-parties. Notwithstanding, FRCP 26(g) provides that an attorney's signature certifies that the lawyer has made a reasonable inquiry to assure that discovery responses are complete. As set forth in his response to the instant motion, Plaintiff's counsel has been in possession of the documents in question since shortly after his motion for substitution was granted on March 29, 2019. It cannot seriously be argued that the burden shifted to the Defendants to bring to Plaintiff's attention that his own response to the requests for production of documents "made no sense."

Plaintiff's claim that the Defendants' motion is a "hail mary" brought to "reclaim lost time" for discovery is both puzzling and without merit. In so arguing, Plaintiff makes reference to the fact that the Defendants did not depose his experts or serve any subpoenas on non-parties other than LVMPD. First, as noted above, Plaintiff refused to sign authorizations for the release

- 3 -

of confidential information from any law enforcement agency other than LVMPD. Second, nowhere in the Defendants' motion did they mention additional discovery in the form of depositions of Plaintiff's expert witnesses (although the Court should not foreclose such action given the nature of the documents disclosed on February 11, 2022).

As to discovery issues generally, the Defendants made calculated decisions during the discovery period in this case which would have been different had they been in possession of the documents Plaintiff failed to disclose until February 11, 2022. The Defendants certainly were not going to pursue discovery (including depositions) from WCSO representatives, given that it was known that the Trotter memorandum was provided to that agency at its request. Mr. Trotter testified that he could not recall speaking with anyone from another law enforcement agency about Erwine (as of the date of Trotter's deposition, more than four years had passed since Erwine's separation from employment with Churchill County). The documents produced by Erwine in response to the subpoena to LVMPD, although hearsay, suggest that Trotter's recollection was not accurate. Given this fact, defense counsel made a tactical decision to proceed more cautiously (especially where Plaintiff bears the burden of proof) given that they had already made a demand in the form of requests for production of documents to Plaintiff for all responses to subpoenas served on non-parties. Rather than more aggressively pursuing such information (at the risk of helping Plaintiff make his case), the Defendants decided to take a more cautious approach. Had the Defendants been in possession of responses from RPD and North Las Vegas Police Department indicating that they had not received any records from Churchill County, different decisions would have been made as to what discovery to pursue and whether to do so more aggressively.

At page 9 of his response, Plaintiff quotes from the Defendants' emergency motion wherein the Defendants stated that Plaintiff's actions in failing to produce the documents in

1    question until February 11, 2022, deprived them of discoverable evidence that could have been

2    used to support a motion for summary judgment.  He then states, "[h]owever, no such motion

3    was ever filed by the Defendants."  *See,* Doc. No. 167, p. 9, lines 1-4.  In this statement, Plaintiff

4    makes the Defendants' point for them.

5
        Regardless of whether the failure of the Plaintiff to disclose the documents at issue here

6    was inadvertent, Defendants' believe that the documents from the North Las Vegas Police

7
    Department and the Reno Police Department indicating that they have no documents responsive

8
    to Plaintiff's subpoena duces tecum (i.e. they have no documents provided to them by Churchill

9
    County in connection with any application for employment submitted by Erwine) are dispositive

10
    and that the Defendants should be permitted to file a motion for summary judgment.

11

12        In order to make out his prima facie case under his 42 U.S.C. §1983 claim, Plaintiff must

13

14    show that he was terminated from employment by Churchill County in conjunction with a

15    stigmatizing statement that was so severe as to, "effectively exclude the employee completely

16    from [his] chosen profession."  *Blantz v. California Dep't of Corr. & Rehab., Civ. Of Corr.*

17
    *Health Care Servs.*, 727 F.3d 917, 925 (9th Ci8r. 2013).  The Ninth Circuit Court of Appeals has

18

19    made clear that, "people do not have liberty interests in a specific employer."  *Llamas v. Butte*

20    *Comty. Coll. Dist.*, 238 F.3d 1123, 1128 (9th Cir. 2001).  Rather, the due process clause protects a

21    generalized right to choose one's field of private employment.  *Id.* at 1128.

22
        While the Defendants believe that the facts now admitted by Plaintiff for purposes of trial

23

24    that he regained employment as a law enforcement officer with two tribal police agencies, first in

25    January of 2018, and again in November of 2019, support judgment in Defendants' favor as a

26    matter of law, the evidence which Plaintiff failed to produce until after the Joint Pre-Trial Order

27    was filed and on the day all other pre-trial motions were due demonstrates that he *was not*

28
    effectively excluded from his chosen profession with non-tribal law enforcements agencies

- 5 -

*because of* the Trotter memorandum. Thus, there need be no debate as to whether employment as a tribal police officer is somehow subpar or constitutes employment outside of Erwine's chosen field. The Defendants should be permitted to file a motion for summary judgment given the failure of Plaintiff to have produced documents which demonstrate that a least two of the non-tribal law enforcement agencies to which he submitted applications for employment after his separation from Churchill County did not receive the Trotter memorandum or any other documents from Churchill County. The evidence which Plaintiff failed to disclose until February 11, 2022, while he continued to rely heavily on rejection letters from both the Reno Police Department and North Las Vegas Police Department (and others) to support his theory (and motion for partial summary judgment at Doc. No. 115, Exhibit 12) that he was blacklisted from desirable positions in law enforcement, warrants allowing the Defendants to move for summary judgment despite the procedural posture of this case.

The remedies suggested by Plaintiff in his response are inadequate under the circumstances and the Defendants should not be limited to simply using the documents at trial or settling for a jury instruction concerning the Plaintiff's failure to timely disclose the documents and Plaintiff is sorely mistaken in regard to his argument that the Defendants have not been prejudiced by the acts and/or omissions at issue. Plaintiff's offer to allow the Defendants to depose his expert (Giurlani) even though the Defendants, in Plaintiff's words, "failed" to depose him during discovery is no remedy at all. For all of the reasons set forth in the Defendants' motions in limine (Doc. No. 136), Defendants believe that Giurlani is grossly unqualified and that his opinions lack any foundation. Defendants did not request, as part of their proposed remedies here, that the Court order Giulani to sit for a deposition. As such, Plaintiff's would-be concession in this regard is irrelevant.

1    Based upon all of the foregoing, the March 15, 2022, trial date should be vacated,

2  discovery should be re-opened for the Defendants, and the Defendants should be permitted to

3  fully consider and file a motion for summary judgment.  If this matter were to proceed to trial,

4  Giulani should not be permitted to testify.  In addition, sanctions should be awarded to the

5
   Defendants in the form of the attorney's fees incurred in having had to bring the instant motion.
6

7    DATED this 19th day of February, 2022.

8

9                                        THORNDAL ARMSTRONG
                                         DELK BALKENBUSH & EISINGER
10
                                         By: _____
11                                           Katherine F. Parks, Esq.
                                             State Bar No. 6227
12                                           6590 S. McCarran Blvd., Suite B
                                             Reno, Nevada 89509
13                                           (775) 786-2882
                                             kfp@thorndal.com
14                                           Attorneys for Defendants
                                             Churchill County and
15                                            Benjamin Trotter

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2       Pursuant to FRCP 5(b), I certify that I am an employee of THORNDAL ARMSTRONG DELK

3 BALKENBUSH & EISINGER, and that on this date I caused the foregoing **REPLY**

4 **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'**

5

6 **EMERGENCY MOTION FOR CONTINUANCE OF TRIAL AND SANCTIONS**

7 **PURSUANT TO FRCP 37** to be served on all parties to this action by:

8 \_\_\_\_ placing an original or true copy thereof in a sealed, postage prepaid, envelope in the

9            United States mail at Reno, Nevada.

10

11   ✓   United States District Court, District of Nevada CM/ ECF (Electronic Case Filing)

12 \_\_\_\_ personal delivery

13 \_\_\_\_ facsimile (fax)

14 \_\_\_\_ Federal Express/UPS or other overnight delivery

15 fully addressed as follows:

16

17                         **Luke Busby, Esq.**

                 **316 California Ave., #82**

18                        **Reno, NV 89509**

                 *Attorney for Plaintiff*

19

20     DATED this 19th day of February, 2022.

21

22                An employee of THORNDAL ARMSTRONG

               DELK BALKENBUSH & EISINGER

23

24

25

26

27

28

*Erwine v. Churchill County, et al.*                    *Case No:  3:18-cv-00461-RCJ-CSD*

## **INDEX OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| 16 | Email from Katherine Parks to Luke Busby dated February 14, 2022 |
| 17 | Email from Katherine Parks to Luke Busby dated February 16, 2022 |
| 18 | Email exchange between counsel regarding authorizations |