Katherine F. Parks, Esq. - State Bar No. 6227
Thorndal Armstrong Delk Balkenbush & Eisinger
6590 S. McCarran Blvd., Suite B
Reno, Nevada 89509
(775) 786-2882
kfp@thorndal.com
Attorneys for Defendants
CHURCHILL COUNTY AND
BENJAMIN TROTTER

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MICHAEL ERWINE,<br><br>Plaintiff,<br><br>vs.<br><br>CHURCHILL COUNTY, a political subdivision of the State of Nevada; CHURCHILL COUNTY SHERIFF BENJAMIN TROTTER; and DOES 1 through 10 inclusive,<br><br>Defendants. | CASE NO.  3:18-cv-00461-RCJ-CSD<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

COME NOW Defendants, CHURCHILL COUNTY and BENJAMIN TROTTER, by and through their attorneys of record, Thorndal Armstrong Delk Balkenbush & Eisinger, and pursuant to FRCP 56 and the Court's ruling at the hearing held on February 23, 2022, hereby move the Court for its order granting summary judgment in their favor as there are no genuine issues of material fact and the Defendants are entitled to judgment as a matter of law.

/ / /

- 1 -

This motion is made and based upon the memorandum of points and authorities filed herewith, the exhibits attached hereto and all pleadings and papers on file herein.

DATED this 24th day of February, 2022.

> THORNDAL ARMSTRONG
> DELK BALKENBUSH & EISINGER
>
> By: /s/ **Katherine F. Parks**
> Katherine F. Parks, Esq.
> State Bar No. 6227
> 6590 S. McCarran Blvd., Suite B
> Reno, Nevada 89509
> (775) 786-2882
> kfp@thorndal.com
> Attorneys for Defendants
> CHURCHILL COUNTY AND
> BENJAMIN TROTTER

1  Katherine F. Parks, Esq. - State Bar No. 6227
2  Thorndal Armstrong Delk Balkenbush & Eisinger
   6590 S. McCarran Blvd., Suite B
3  Reno, Nevada 89509
   (775) 786-2882
4  kfp@thorndal.com
5  Attorneys for Defendants
   CHURCHILL COUNTY AND
6  BENJAMIN TROTTER

7

8  **UNITED STATES DISTRICT COURT**

9  **DISTRICT OF NEVADA**

| MICHAEL ERWINE, | CASE NO. 3:18-cv-00461-RCJ-CSD |
|---|---|
| Plaintiff, | |
| vs. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| CHURCHILL COUNTY, a political subdivision of the State of Nevada; CHURCHILL COUNTY SHERIFF BENJAMIN TROTTER; and DOES 1 through 10 inclusive, | |
| Defendants. | |

**I**

**Introduction**

This is an employment case arising out of the alleged constructive discharge from employment of Michael Erwine from the Churchill County Sheriff's Office on October 10, 2016. Erwine filed his complaint on September 28, 2018, and an amended complaint on August 6, 2020. The amended complaint contains a claim premised upon 42 U.S.C. §1983 and the Fourteenth Amendment of the United States Constitution and Article 1, §8(5) of the Nevada Constitution based upon the alleged violation of a liberty interest without adequate process. Erwine seeks damages against both Ben Trotter, former Sheriff of Churchill County, and Churchill County under this particular liberty interest theory of relief. Mr. Trotter is sued

1 individually for his participation in the alleged constitutional violation and Churchill County is
2 sued on the basis of Mr. Trotter's position as a policy-making official for Churchill County at the
3 time of the alleged violation.  Erwine also seeks damages under several state tort claims,
4 including defamation, intentional interference with prospective employment opportunities, and
5 tortious constructive discharge.

## II

### Underlying Facts

The facts which form the basis of the Defendants' Motion for Summary Judgment are uncontested and, in fact, many of the facts discussed herein have been deemed admitted by the parties as set forth in the Pretrial Order (Doc. No. 142).  These uncontested facts support the entry of judgment in favor of the Defendants on Plaintiff's constitutional claims as a matter of law.

Erwine worked as a deputy sheriff at the Churchill County Sheriff's Office from December 9, 2015, until October 10, 2016, when he resigned in lieu of termination.  *See,* Pretrial Order, Doc. No. 142, p. 2, Admitted Fact No. 1.  Erwine was a probationary employee at the time of his separation from employment with Churchill County.[1]  Following Erwine's separation from employment, Trotter prepared a memorandum dated October 10, 2016, concerning the reasons for his decision to terminate Erwine's employment during his probationary period.  The memorandum was placed in Erwine's personnel file but was not shown to Erwine.  *See,* Pretrial Order, Doc. No. 142, p. 2, Admitted Fact No. 5 and p. 3, Admitted Fact No. 9.  Erwine claims that the statements in the memorandum are false and defamatory.  Mr. Trotter and the County deny Erwine's allegations in this regard.  In December of 2016, Churchill County received a request from the Washoe County Sheriff's Office for a copy of Erwine's personnel file, accompanied by an authorization for release of the information to WCSO signed by Erwine, and Churchill County complied with the request.

---

[1] Erwine dismissed his due process claim based upon an alleged protected property interest on April 29, 2021, because of his status as a probationary employee at the time of his separation from employment with Churchill County.  *See,* Stipulation for Dismissal of 42 U.S.C. 1983 Due Process Property Interest Claim, Doc. No. 113.

- 4 -

1          Following his separation from employment with Churchill County, Erwine worked as a
2  security guard for Allied Universal from April 25, 2017, to January 18, 2018.  *Id.* at 65.
3  Thereafter, from January 8, 2018, through April 4, 2018, Erwine worked as a police officer with
4  the Pyramid Lake Paiute Tribe.  *Id.* at 44.  Erwine was terminated by the Pyramid Lake Paiute
5  Tribe for failure to have passed his probationary period on or about April 4, 2018.  *Id.* at 44 and
6  53.  Erwine was again employed as a security officer with a company called Triumph Protection
7  Group from June 28, 2018, through October 27, 2019.  *See*, Pretrial Order, Doc. No. 142, p. 3,
8  Admitted Fact No. 16.  In November of 2019, Erwine began working as a police officer with the
9  Washoe Tribe of Nevada and California at an hourly rate of 25.00 per hour (a job he was offered
10 on July 10, 2019).  *Id.* at 25 and 28.

11         At the time of his deposition on December 17, 2020, Erwine had completed his one-year
12 probationary period with the Washoe Tribe and was earning $25.85 per hour plus medical
13 benefits.  *Id.* at 18-19.[2]  During his deposition, Erwine admitted that his position with the
14 Washoe Tribe is in the field (law enforcement) in which he desires to be employed.  *Id.* at 23.
15 Erwine also testified that, in his position as a police officer with the Washoe Tribe, his job duties
16 include, "everything you can imagine a general law enforcement officer handles."  *Id.* at 18.
17 Although Erwine did not pass his probationary period with the Pyramid Lake Paiute Tribe,
18 Erwine testified that his duties with that agency included the same duties he has currently with
19 the Washoe Tribe.  *Id.* at 42.  He further testified that, with the Pyramid Lake Paiute Tribe, his
20 job duties included, "everything from minor traffic enforcement to in-depth investigations of
21 crimes."  *Id.* at 42-43.

22         Erwine was convicted of driving under the influence in June of 2011.  *Id.* at 77.  Prior to
23 being hired by the Churchill County Sheriff's Office, Erwine applied for, and was rejected from,
24 law enforcement positions with the Washoe County Sheriff's Office, the Sparks Police
25 Department, the Lyon County Sheriff's Office, the Fallon Tribal Police, and the Washoe Tribal
26 Police.  *Id.* at 72, 75-80.

---

[2] Erwine was earning more with the Washoe Tribe of Nevada and California than he was earning as a detention deputy with the Churchill County Sheriff's Office.  *See,* Exhibit 1, p. 112.

- 5 -

1         Following his separation from employment with Churchill County, Erwine applied to
2 several other law enforcement agencies besides the two tribal agencies with which he gained
3 employment, including the Reno Police Department and the North Las Vegas Police Department.
4 Despite what is alleged in his Amended Complaint, neither of these agencies received the Trotter
5 memorandum.  *See,* Exhibit 2, letter from Reno City Attorney's Office in response to subpoena
6 duces tecum and subpoena duces tecum; *see also,* Exhibit 3, response of North Las Vegas Police
7 Department to subpoena duces tecum and subpoena duces tecum.  Thus, the only evidence that
8 has been adduced in this case is that the Washoe County Sheriff's Office received the Trotter
9 memorandum and that Ben Trotter may have spoken to someone associated with the Las Vegas
10 Metropolitan Police Department (although there is no evidence that LVMPD received the Trotter
11 memorandum).  There is no evidence that any of the other non-tribal agencies with which Erwine
12 applied ever received the Trotter memorandum or any other information from Churchill County.
13 Plaintiff cannot make out a prima facie case under the specific liberty interest claim pled in this
14 case (and which constitutes the only avenue for Plaintiff's recovery given that he was a
15 probationary employee who had no protected property interest in continued employment), as he
16 cannot, as a matter of law, demonstrate that he has been effectively excluded from his chosen
17 profession by any allegedly stigmatizing statements attributed to, or made by, Ben Trotter. In
18 other words, Plaintiff cannot, nearly three and a half years after he filed his complaint, prove the
19 element of causation that is a prima facie element of his constitutional claims for relief and upon
20 which the Plaintiff bears the burden of proof by a preponderance of the evidence.  Plaintiff
21 cannot rely upon the argument that he was effectively excluded from employment in his chosen
22 field as a result of conduct by the Defendants with reference to evidence that only two agencies
23 who rejected him from employment after October 10, 2016, received *any* information from
24 Churchill County and/or Ben Trotter (and without meaningful evidence that these agencies
25 rejected him as a result of the Trotter memorandum or statements allegedly made by Trotter).
26  As such, and for the reasons set forth herein, summary judgment must be entered in favor of the
27 Defendants on Plaintiff's liberty interest claims.
28 / / /

## III

## Legal Analysis

I. **STANDARD OF REVIEW**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is always proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issues as to any material fact and the moving party is entitled to a judgment as a matter of law." A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis of its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. Further, the opposing party cannot rest on mere allegations of facts without "any significant probative evidence tending to support the complaint." *Id.*, 477 U.S. at 249. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Id.*, at 249-50. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in favor of that party. *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S., 253, 288-289, 88 S. Ct. 1575, 1592 (1968). Speculation, unsupported by facts, is manifestly inadequate to stave off summary judgment. *See, Trahan v. Wayfair Maine, LLC.,* 957 F.3d 54, 62 (1st Cir. 2020). "A party cannot ward off summary judgment with proffers that depend on arrant speculation, optimistic surmise or farfetched inference." *See, Lang v. Wal-Mart Stores East, L.P.,* 813 F.3d 447, 460 (1st Cir. 2016)(internal citation omitted).

/ / /

1 　　　　Here, the undisputed evidence demonstrates that there is no genuine issue of material fact
2 on the Plaintiff's constitutional claims and Plaintiff's constitutional claims in this case are based
3 upon pure speculation not supported by evidence.  Plaintiff simply cannot, on the facts adduced
4 in this case, prove that he was effectively excluded from his chosen field as a causal result of the
5 actions of the Defendants.  Absent such evidence, there are no genuine issues of material fact for
6 the jury on Plaintiff's constitutional claims.

7 **II.    PLAINTIFF CANNOT MAKE OUT A PRIMA FACIE CASE UNDER 42 U.S.C.**
8 **　　　§1983 UNDER EITHER THE FOURTEENTH AMENDMENT OR ARTICLE 1,**
  **　　　§8(5) OF THE NEVADA CONSTITUTION BASED UPON AN ALLEGED**
9 **　　　VIOLATION OF A LIBERTY INTEREST.**

10 　　　　Erwine's §1983 claim, whether pled against Trotter individually or Churchill County
11 under a *Monell* theory, is one for violation of an alleged liberty interest protected by the
12 Fourteenth Amendment.  Erwine was a probationary employee at the time of his resignation
13 from employment with the County and he had no protected property interest in continued
14 employment.  As a result, Erwine's only avenue for recovery is under the very specific "stigma
15 plus" test carved out by the Courts in particular circumstances.  As fully articulated by the Court
16 in its order denying Erwine's motion for summary judgment on the federal claim, in order to
17 make out a prima facie case under this legal theory, Erwine must show that the Defendants
18 deprived him of a protected liberty interest without adequate process.  In the public employment
19 context, Erwine must show that he was terminated from his employment in conjunction with a
20 stigmatizing statement.  *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972).  Erwine must prove
21 both of these elements and, in addition, must show that the statement was false and, to be
22 sufficiently stigmatizing, that it impaired his reputation for honesty or morality.  *Tibbetts v.*
23 *Kulongoski,* 567 F.3d 529, 535-36 (9th Cir. 2009); *see also, Brady v. Gebbie,* 859 F.2d 1543,
24 1552 (9th Cir. 1988).

25 　　　　Further, the statements must be so severe as to, "effectively exclude the employee
26 completely from [his] chosen profession." *Blantz v. California Dep't of Corr. & Rehab., Div. of*
27 *Corr. Health Care Servs.,* 727 F.3d 917, 925 (9th Cir. 2013).  As also pointed out by this Court,
28 stigmatizing statements that merely cause, "reduced economic returns and diminished prestige,

but not permanent exclusion from, or protracted interruption of, gainful employment within the trade or profession," do not constitute a deprivation of liberty." *Id.* The Ninth Circuit Court of Appeals has, "consistently held that people do not have liberty interests in a specific employer." *Llamas v. Butte Cmty. Coll. Dist.,* 238 F.3d 1123, 1128 (9th Cir. 2001). Rather, the due process clause protects a generalized right to choose one's field of private employment. *Id.* at 1128 (quoting *Conn v. Gabbert*, 526 U.S. 286, 292 (1999)).

Without conceding that Erwine was terminated from Churchill County's employ in connection with false, stigmatizing statements, the undisputed evidence demonstrates that Erwine obtained employment as a law enforcement officer with the Pyramid Lake Paiute Tribe on January 8, 2018, and, in fact, the parties have so stipulated in this case. *See,* Pretrial Order, Doc. No. 142, p. 2. Admitted Fact No. 15. Erwine was terminated from the Pyramid Lake Paiute Tribe during his probationary period effective April 4, 2018. *See,* Exhibit 1, p. 53. Thereafter, in November of 2019, Erwine began working as a law enforcement officer for the Washoe Tribe of Nevada and California, a law enforcement agency for which Erwine continues to work at the present time. *Id.* at 18-19. Erwine testified during his deposition that, in both of these positions, he performed all of the duties of a law enforcement officer. In terms of his current position, Erwine testified that his job duties include, "[e]verything you can imagine a general law enforcement officer handles." *Id.* at 18. Erwine further testified that, while not the "most desirable position" to him, his job with the Washoe Tribe "is a job in the field that I wish to work in." *Id.* at 23. Erwine testified during his deposition that he could not recall when he applied for a law enforcement position with the Paiute Tribe. However, he estimated it was six to eight months prior to his hire date of January 8, 2018. *Id.* at 31-32. According to Erwine's testimony, the hiring process in the law enforcement field generally takes that amount of time to be completed. *Id.* at 32. Erwine did not sustain a protracted interruption of employment in law enforcement as a result of any actions of Churchill County. Rather, according to Erwine's own testimony, the hiring process in the field of law enforcement is fairly lengthy as a rule.

In addition, Erwine has no evidence to support his claim that all other *non-tribal* law enforcement agencies to which he applied rejected him from employment because of the Trotter

1  memorandum or any information provided to them by the Defendants. In fact, recently disclosed
2  evidence (evidence disclosed by the Plaintiff on February 11, 2022) indicates that at least two
3  non-tribal agencies, including the Reno Police Department and the North Las Vegas Police
4  Department, did not receive the Trotter memorandum or any other information from Churchill
5  County in connection with Erwine's applications for employment with those agencies. *See,*
6  Exhibit 2 and Exhibit 3.  Thus, there need be no debate on the issue of whether employment as a
7  law enforcement officer with a tribal agency is somehow *not* employment in the Plaintiff's
8  chosen field (although Defendants believe the opposite is true).  The law does not guarantee the
9  Plaintiff a right to work in his chosen field for a *specific employer* and the Ninth Circuit has
10 made this point of law clear. *See, Llamas, supra* at 1128.  Rather, the due process clause protects
11 a generalized right to choose one's field of private employment. *Id.* at 1128.  Plaintiff *is*
12 *employed* in his field of private employment and has been since he commenced working for the
13 Pyramid Lake Paiute Tribe.  Further, there is no evidence to support Plaintiff's mere assumption
14 that all other non-tribal agencies rejected him from employment because of any actions of
15 Churchill County or Ben Trotter.  The fact that one of the seven law enforcement agencies with
16 which Erwine applied after his separation from employment (WCSO) received the Trotter
17 memorandum (without any evidence that the Trotter memorandum was the *reason* for Plaintiff's
18 rejection from employment with same, especially given the fact that Plaintiff had applied with,
19 and been rejected by, WCSO in 2015 before his employment with Churchill County) does not
20 prove that the Plaintiff was effectively excluded from his chosen profession.  The fact that an
21 employee of one other law enforcement agency (LVMPD) may have had a conversation with
22 Trotter regarding Erwine after October 10, 2016, does not prove that the Plaintiff was effectively
23 excluded from his chosen profession.  The Plaintiff is, in fact, working in his chosen profession.
24 Further, the evidence indicates that at least two other agencies, Reno Police Department and
25 North Las Vegas Police Department, did not receive the Trotter memorandum or any other
26 information from Churchill County and still rejected Plaintiff's applications for employment.
27       These admissions are fatal to Erwine's §1983 claim against Trotter, as well as his §1983
28 claim against Churchill County premised upon the actions of Trotter as a final policy-making
   official.

1     As for Plaintiff's claim premised upon the Nevada Constitution, the due process clause
2 set forth at Article I, §8(5) of the Nevada Constitution is identical to that set forth in the United
3 States Constitution and it must be analyzed in the same manner as is Erwine's §1983 claim
4 premised upon the Fourteenth Amendment. *See, Rodriguez v. Dist. Ct.*, 120 Nev. 798, 102 P.3d
5 41, 48, n. 22 (2004). The Nevada Supreme Court has held that the state constitutional due
6 process clause may give rise to liability under the *Roth* stigma-plus test. *Id.* The analysis of this
7 claim does not differ from that to be applied to Plaintiff's Fourteenth Amendment claim and
8 summary judgment must be entered in favor of the Defendants as discussed above.
9     It is apparent that Erwine intends to argue that he is entitled to judgment in his favor of
10 his §1983 claim because the memorandum of October 10, 2016, was placed in Erwine's file in
11 violation of NRS 289.040. Erwine clearly believes that certain admissions by the Defendants
12 concerning treatment of the memorandum as related to several sections of Chapter 289 compel
13 judgment in his favor. In other words, Erwine intends to argue that a violation of Chapter 289
14 equates to a per se violation of his due process rights under the Fourteenth Amendment and
15 Article 1, §8(5) of the Nevada Constitution. This is not the law.
16     While Chapter 289 does set forth procedural requirements applicable to law enforcement
17 officers, these procedural requirements are not ends in themselves protected by the due process
18 clause. *See, Olim v. Wakinekona*, 461 U.S. 238, 251 (1983); *see also, Town of Castle Rock,*
19 *Colo. v. Gonzales*, 545 U.S. 748, 771 (2005). Procedural requirements such as those described in
20 Chapter 289 of the Nevada Revised Statutes, "even if mandatory, do not raise a constitutionally
21 cognizable liberty interest." *Toussaint v. McCarthy,* 801 F.2d 1080, 1098 (9th Cir. 1986)
22 *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472, 482-83 (1995).
23     In enacting Chapter 289, the legislature provided for a specific remedy available to law
24 enforcement officers aggrieved by an action of an employer for a violation of same. NRS
25 289.120 provides that, after exhausting any applicable internal or collectively bargained-for
26 grievance procedures, an officer who believes his rights under Chapter 289 are violated may
27 apply to the district court for judicial relief. This remedy also empowers the district court with
28 authority to order appropriate injunctive or other extraordinary relief (such as, for example, a

name-clearing hearing) to prevent further violation of Chapter 289's provision or any retaliatory conduct by the employer on account of an employee's actions in exercising his rights under same. *See,* NRS 289.120.

Erwine elected *not* to pursue such a remedy and, instead filed a due process claim in this Court under §1983.³ Erwine had no protected property interest in his job with Churchill County. As such, Erwine is limited to pursuing his due process claim as a liberty interest violation. Erwine cannot make out a prima facie liberty interest claim here based upon (among other things) the uncontroverted evidence the Erwine has not been effectively excluded completely from his career as a law enforcement officer as a result of the actions of Trotter. Having elected his remedy in the form of a federal civil rights case premised upon a liberty interest, Plaintiff must meet the prima facie elements of his Fourteenth Amendment and state constitutional claims for relief and he cannot do so for the reasons set forth herein.

Nothing in the language of the statute suggests that the Nevada legislature intended to create due process rights greater than those protected by the Fourteenth Amendment in enacting the relevant provisions of Chapter 289 and the Nevada Supreme Court has never so held. Given the allegations in his amended complaint, Erwine must prove those elements required of a stigma-plus type liberty interest claim (as it is pled in the amended complaint) whether analyzed under the Fourteenth Amendment of the United States Constitution or Article 1, §8(5) of the Nevada Constitution. The uncontroverted evidence demonstrates that he cannot make out a prima facie case on this legal theory and the procedural requirements pertaining to law enforcement officers do not create a liberty interest in and of themselves protected by the due process clause.

Erwine's §1983 claim against Churchill County under a *Monell* theory is premised solely upon the fact that Trotter was a final policy-making official for Churchill County at the time of the events in question. As such, it is indistinguishable from a legal analysis standpoint from his

---

³Even before Erwine's separation from employment with Churchill County, he was consulting with Michael Giurlani, his alleged expert on all things related to Chapter 289 of the Nevada Revised Statutes, regarding the circumstances of his employment because he was "looking for advice." *See,* Exhibit 1, p. 126-127.

- 12 -

claim against Trotter individually and this claim too must be dismissed and judgment entered in Defendants' favor as a matter of law.

### III. PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED ON JURISDICTIONAL GROUNDS.

28 U.S.C. §1367(a) allows the federal court to exercise supplemental jurisdiction over a plaintiff's claims arising out of state law where said claims form part of the same case or controversy as do the federal questions at issue. The court may decline, however, to exercise supplemental jurisdiction over state law claims if the court determines that the federal claims warrant dismissal. *See,* 28 U.S.C. §1367(c)(3).

The exercise of supplemental, or pendent jurisdiction, "is a doctrine of discretion, not of plaintiff's right." *See, United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). "If the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. *Id.* Issues of "judicial economy, convenience and fairness to litigants" are relevant when considering the exercise of jurisdiction under §1367(a).

Should the Court find in favor of Defendants in regard to Plaintiff's claims arising under §1983, Plaintiff's state tort claims for defamation, tortious constructive discharge, and intentional interference with prospective employment opportunities should be dismissed, as well, and those claims allowed to proceed in Churchill County in accordance with NRS 13.030(actions against a county may be commenced in the district court of the judicial court embracing the county).

### IV
### Conclusion

Given all that has transpired in this case, including the production of documents made on February 11, 2022, that contradict allegations in the amended complaint that Plaintiff was effectively denied employment as a law enforcement officer because of the Trotter memorandum, no genuine issues of material fact remain as to Plaintiff's liberty interest claim, whether based on the Fourteenth Amendment of the United States Constitution or its identical

1  state constitutional counterpart set forth at Article 1, §8(5), and summary judgment should be
2  granted in favor of the Defendants.  The Court should further exercise its discretion to dismiss
3  the remaining state law claims pursuant to 28 U.S.C. §1367(c)(3).

   DATED this 24th day of February, 2022.

>                            THORNDAL ARMSTRONG
>                            DELK BALKENBUSH & EISINGER
>
>                            By: */s/ Katherine F. Parks*
>                                Katherine F. Parks, Esq.
>                                State Bar No. 6227
>                                6590 S. McCarran Blvd., Suite B
>                                Reno, Nevada 89509
>                                (775) 786-2882
>                                kfp@thorndal.com
>                                Attorneys for Defendants
>                                CHURCHILL COUNTY AND
>                                BENJAMIN TROTTER

- 14 -

# CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of THORNDAL ARMSTRONG DELK BALKENBUSH & EISINGER, and that on this date I caused the foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** to be served on all parties to this action by:

____ placing an original or true copy thereof in a sealed, postage prepaid, envelope in the United States mail at Reno, Nevada.

__✓__ United States District Court, District of Nevada CM/ ECF (Electronic Case Filing)

____ personal delivery

____ facsimile (fax)

____ Federal Express/UPS or other overnight delivery

fully addressed as follows:

**Luke Busby, Esq.**
**316 California Ave., #82**
**Reno, NV 89509**
*Attorney for Plaintiff*

DATED this 24th day of February, 2022.

*/s/ Rachel L. Atchley*
An employee of THORNDAL ARMSTRONG
DELK BALKENBUSH & EISINGER

- 15 -

*Erwine v. Churchill County, et al.*                                  Case No: *3:18-cv-00461-RCJ-CSD*

## **INDEX OF EXHIBITS**

| Exhibit No. | Description | No. of Pages |
|---|---|---|
| 1 | Excerpts from Deposition of Michael Erwine | 23 |
| 2 | Subpoena Duces Tecum to Reno Police Department and Response from Reno City Attorney | 4 |
| 3 | Subpoena Duces Tecum to North Las Vegas Police Department and Response from Custodian of Records of North Las Vegas Police Department | 4 |