# Exhibit 3

# Exhibit 3

MEMORANDUM

DATE: October 10, 2016

TO: Personnel File

FROM: Benjamin D. Trotter, Sheriff

REF: Deputy Michael Erwine

**Failure to Follow Proper Chain of Command**
On October 7, 2016 I met with Deputy Michael Erwine to counsel him. (See Administrative Note in Spillman)

At 1420 hours on October 8, 2016 I received the following text from Sgt. Shawn Summers (not verbatim):

*Intoxicated male in security cell beating on walls and screaming obscenities at deputies. Was placed there by grave shift with an incident report. I was told today that Dep Erwine went over all the video footage of the inmate and started his own hidden Word document on the incident. Erwine appeared to be upset that the inmate was not given a drink of water. Thompson checked this same inmate at 0515 when he came on shift and was told to go fuck himself by the inmate.*

The inmate was Andrew Beaulieu and he had been book into our facility by Fallon Police Department at 0332 hours on October 8th. His security cell watch sheet was started at 0340 hours and it is attached.

I texted Sgt. Summers back after we had a short telephone conversation that we needed Thompson to write what he saw Erwine doing. Deputy Thompson's incident is attached as is Sgt. Summers's incident report.

I had Sgt. Jesse Nuckolls, who performs IT details for our agency, come into work on his day off and attempt to find this "hidden Word document" on the jail desktop computers. He was able to locate a document which appears to be the document in question. He had to log into Erwine's passworded system (each member of the agency has a unique password that allows them into the system) to find the document. The document is attached.

In reviewing this document, I note that the author, presumed to be Erwine, notes that the inmate had asked for water at 0350 hours but had not received water until Erwine gave it to him at 0551 hours. Erwine's document does not once detail the actions and behavior of the inmate but solely focuses on the fact that the inmate was not given water for two hours after he asked for it.

In Dep. Thompson's incident report he states that even Erwine contact the inmate and asked if he wanted water and was told by the inmate to "fuck off" several times. Erwine seemed to develop some rapport with the inmate. Thompson then indicates that Erwine spent 30-40 minutes reviewing the video tape. He allegedly told Thompson that if the inmate had been given water when he asked for it he would not have been an issue and his rights would not have been violated. Thompson told Erwine that if an inmate in the security cell is not compliant we do not open the cell and offer them items but wait until they become compliant. Thompson then indicates that around 1016 Erwine brought out the inmate for booking. The inmate whispered that he wanted to talk to Erwine so Erwine took the inmate to the kitchen area and they talked for several moments. Erwine also fingerprints the inmate during which they were alone and able to communicate secretly. At 1158 the inmate was released from custody after posting bail. When Sgt. Summers came on shift around 1400 hours, Thompson told him about Erwine's actions.

1

Sgt. Summer's incident report echoes Thompsons for a portion but then Summers mentions a phone call. At 1715 hours Summers took a call from the Mr. Beaulieu. Mr. Beaulieu told Summers he was upset at how he was treated. Per Summers, his primary complaint was not being offered water when in the security cell. Eventually, Beaulieu told Summers that Erwine had reviewed all the video and had spoken to him several times and indicated a lawsuit was winnable. "He said I'm not going to tell you that he told me; but I was told by his facial expressions that I have a good case against the jail."

Items of Concern:

- Beaulieu first asked for water at 0350, ten minutes after he was placed in the security cell for being uncooperative. According to the observation sheet he was checked on visually or verbally within the expectations of the 15-30 minute check requirement. He remained uncooperative and, therefore, was not given water.
- Deputy Erwine is a probationary employee and does not have the authority to conduct his own personnel investigations. As of the time of my writing this (October 10, 2016 at 1122 hours), Deputy Erwine has never brought his concerns to a supervisor or attempted to present his "investigative findings".
- His "investigative report" mentions nothing about the behavior of Beaulieu, even that which was initially directed toward him. It is as if Erwine is siding with the inmate against his own agency or, possibly, encouraging civil action against his own agency.
- I also find substantial concern that Deputy Erwine's investigation seems to have found and confirmed what Beaulieu alleged – that grave shift would flush the floor toilet and laugh when Beaulieu would yell for water. This will be investigated further and separately from this topic.

The proper thing for Erwine to have done would have been to report his concerns to a supervisor and, if this did not seem right or a valid avenue, to report these concerns to an administrator.

**Conduct Unbecoming a Deputy and Unjustifiable Use of Force**
On October 9, 2016 at about 0939 I received a text from Sgt. Summers (not verbatim):

*Received a call from the jail, Roat (Deputy Jolie Jabines) dropped some crap on the cage floor and called trustee in to pick up the stuff that slid under the counter; Erwine pulled his Taser and pointed it at inmate, pulled cartridge off, pointed it again at inmate and discharged it while laughing. Can I go into work and just send him home over this incident. Don't want him accidentally blinding our trustee.*

I asked when this happened and he indicated just before he texted me. I requested an incident from Deputy J. Jabines. I inquired about possible video showing this. I called Dispatcher Jerilyn Whitaker and asked if she had heard a Taser being deployed in the cage. She had not.

At 1613 hours, Summers texted me:

*Had Dep. (Mike) Davis check camera footage; he said at 0904 it showed Erwine light up his Taser with the trustee in the cage. Could not tell on the video if it was discharged; just see the red aiming light (laser).*

On 10/10/2016 I requested our senior Taser instructor, Sgt. Lee Orozco, pull the Tasers at the jail and download their recent usage. He did so and the Taser assigned to the jail bearing serial #X00298141 showed a "Fire" for one second at 09:04:06 hours. The other two Tasers currently at the jail did not show a test fire anytime near this time.

I read an incident report that J. Jabines had completed on the incident. She indicates Inmate Maes, who is acting as the kitchen trustee, complied with her request to come into the cage and help her reach some items she had

2

dropped. Erwine was standing at the north end of the cage, leaning on the counter. Erwine "without notice, verbal command or need: drew his ECD (Electronic Control Device a.k.a. Taser) and aimed it at Inmate Maes who was, at the time kneeling on the floor. J. Jabines indicates she noticed the red laser light on the floor and looked up at Erwine who "snickered". The laser indicated the Taser was activated and J. Jabines indicates the cartridge was still attached. Erwine was still leaning against the counter so, evidently, not feeling threatened. J. Jabines states that Erwine turned off the ECD, removed the cartridge, reactivated the ECD and pulled the trigger "making a loud noise while sparking". The ECD was still aimed at Inmate Maes who was still on the floor. Erwine then deactivated the ECD, replaced the cartridge and reholstered it.

J. Jabines rightly indicates great concern about this incident. Tasers have been known, on occasion, to spontaneously discharge the cartridge when in an activated position. This could have injured both the inmate and J. Jabines. She also rightly notes the liability that this simple action creates for our agency as either real or perceived unnecessary and/or excessive force.

Items of Concern:

- This is unprofessional behavior.
- This creates liability for this agency now or for some time into the future should Inmate Maes elect to pursue civil action.
- This discredits our agency and our profession.
- In a time when scrutiny is high on all of us in law enforcement, this type of play is inexcusable.
- Deputy Erwine clearly violated our policies on Tasers and Use of Force, as well as, behavior standards.

Following my recent positive and encouraging counseling session with Deputy Erwine, this short series of behaviors from him is extremely disturbing and disappointing. The totality of concerns, of which these actions are only a part, lead me to believe that the cohesion of our Detention Division is being jeopardized by Deputy Erwine's continued employment here. It also appears that Deputy's Erwine's voiced concerns about "getting through probation" are as much a warning to me as a relief; I can only anticipate that his behavior, once he is not longer in an "at will" status, will continue to decline.

Deputy Michael Erwine will be terminated today for failing to satisfactorily complete his probation.

ERW0055